**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ELLIOT MCGUCKEN, an individual, | Civil Action No.: 1:19-cv-09617-KPF |
| Plaintiff, | **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** |
| v. | |
| NEWSWEEK LLC, a New York Limited Liability Company; and DOES 1-10, inclusive, | |
| Defendants. | |

i

# <u>TABLE OF CONTENTS</u>

I.   THE MOTION FAILS. .......................................................................................... 1

II.   LEGAL STANDARD .......................................................................................... 3

III.   ARGUMENT ...................................................................................................... 4

A.   McGucken sufficiently alleged willful infringement. ......................................... 4

B.   Instagram's policies do not authorize third parties to exploit content belonging to
Instagram users. .................................................................................................. 7

  1.   *Instagram's ability to sublicense is limited under its own policies and existing case law.*7

  2.   *Instagram instructs brands to obtain permission from content owners before using their*
  *material.* ....................................................................................................... 10

C.   Fair use is inapplicable and in any event cannot be decided at this stage. ..................... 14

D.   Newsweek cannot prevail on a fair use claim. .............................................. 15

  1.   *The "purpose and character" of the use militates against a finding of fair use.* ........... 15

    i.   Newsweek used the Photograph for precisely
        the same purpose as McGucken sought. ...................................................... 15

    ii.   Illustrative aids are not transformative and do not support the first fair use factor. .... 17

    iii.   Newsweek's bad faith weighs against the first factor.................................. 18

    iv.   Newsweek's commercial use undermines the first factor........................... 19

  2.   *The creative nature of the Photograph favors McGucken.* ............................. 20

  3.   *Newsweek exploited McGucken's entire work,*
  *which does not support a finding of fair use.* .................................................. 21

  4.   *McGucken will be able to prove market harm.* .......................................... 21

E.   McGucken's vicarious and contributory copyright infringement claims are well-plead. .. 22

IV.     LEAVE TO AMEND SHOULD BE GRANTED. ............................................................. 23

V.      THIS MOTION FAILS.......................................................................................................... 24

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

# **TABLE OF AUTHORITIES**

Cases

*APL Microscopic, LLC v. United States*, 144 Fed. Cl. 489 (2019)..............................5, 6

*Arista Records LLC v. Lime Grp. LLC*, 784 F. Supp. 2d 398 (S.D.N.Y. 2011) .........................22

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009)....................................3, 4

*Authors Guild v. Google, Inc.*, 804 F.3d 202 (2d Cir. 2015) ........................................16

*Baraban v. Time Warner, Inc.*, No. 99 CIV. 1569 (JSM), 2000 WL 358375

   (S.D.N.Y. Apr. 6, 2000) ..........................................................................20

*Barcroft Media, Ltd. v. Coed Media Grp., LLC*, 297 F. Supp. 3d 339 (S.D.N.Y. 2017) .............17

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007)..................................4

*BWP Media USA, Inc. v. Gossip Cop Media, Inc.*,

   196 F. Supp. 3d 395 (S.D.N.Y. 2016) ..................................................15, 17, 21

*Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 114 S. Ct. 1164 (1994)...............................21

*Castle Rock Entm't, Inc. v. Carol Pub. Grp., Inc.*, 150 F.3d 132 (2d Cir. 1998)..........................17

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002) .........................................2

*Chen v. Major League Baseball Props., Inc.*, 798 F.3d 72 (2d Cir. 2015)....................................3

*Ferdman v. CBS Interactive Inc.*, 342 F. Supp. 3d 515 (S.D.N.Y. 2018)....................................17

*Fox News Network, LLC v. Tveyes, Inc.*, 883 F.3d 169 (2d Cir. 2018) ........................................16

*Free Speech Sys., LLC v. Menzel*, 390 F. Supp. 3d 1162 (N.D. Cal. 2019) ..............................14

*Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1180 (9th Cir. 2016).......................................23

*Gardner v. Nike, Inc.*, 279 F.3d 774 (9th Cir. 2002) ...................................................13

*Gershwin Pub. Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159 (2d Cir. 1971)...............22

*Goldman v. Breitbart News Network, LLC*, 302 F.Supp.3d 585 (S.D.N.Y. 2018)....................5, 6

*Graham v. Prince*, 265 F. Supp. 3d 366 (S.D.N.Y. 2017)...............................................4

*Hamil Am. Inc. v. GFI*, 193 F.3d 92 (2d Cir. 1999)........................................................ 4

*Harper & Row Publishers, Inc. v. Nation Enters.*,

    471 U.S. 539, 105 S.Ct. 2218 (1985) ................................................... 14, 18, 19, 21

*Harris v. Emus Records Corp.*, 734 F.2d 1329 (9th Cir. 1984)................................................. 13

*In re Patient Educ. Media, Inc.*, 210 B.R. 237 (Bankr. S.D.N.Y. 1997) ........................................ 9

*Infinity Broad. Corp. v. Kirkwood*, 150 F.3d 104 (2d Cir.1998) .................................................. 21

*Leader's Inst., LLC v. Jackson*, No. 3:14-CV-3572-B,

    2017 WL 5629514 (N.D. Tex. Nov. 22, 2017) ........................................................... 6

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,

    545 U.S. 913, 125 S.Ct. 2764 (2005) ..................................................................... 23

*Nicosia v. Amazon.com, Inc.*, 834 F.3d 220 (2d Cir. 2016).................................................... 3

*Nunez v. Caribbean Int'l News Corp.*, 235 F.3d 18 (1st Cir. 2000) ............................................. 16

*Otto v. Hearst Commc'ns, Inc.*, 345 F. Supp. 412 (S.D.N.Y. 2018)........................................... 17

*Peter Pan Fabrics, Inc. v. Dan River Mills, Inc.*,

    295 F.Supp. 1366 (S.D.N.Y.1969) *aff'd* 415 F.2d 1007 (2d Cir.1969) .................................... 9

*Press Publishing Co., v. Monroe*, 73 F. 196 (2d Cir.1896) ..................................................... 9

*Robinson v. Random House, Inc.*, 877 F. Supp. 830 (S.D.N.Y. 1995)........................................ 18

*Ronzani v. Sanofi S.A.*, 899 F.2d 195 (2d Cir. 1990) ..................................................... 24

*Schatt v. Curtis Mgmt. Grp., Inc.*, 764 F. Supp. 902 (S.D.N.Y. 1991).......................................... 9

*Sheldon v. Metro–Goldwyn Pictures Corp.*, 81 F.2d 49 (2d Cir.1936) ........................................ 19

*Sony Corp. of Am. v. Universal City Studios*, Inc.,

    464 U.S. 417, 104 S. Ct. 774 (1984) ..................................................................... 19

*Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17 (2d Cir. 2002)............................................ 14

*TCA Television Corp. v. McCollum*, 839 F.3d 168 (2d Cir. 2016).......................................... 4, 21

v

*Ward v. Nat'l Geographic Soc.*, 208 F. Supp. 2d 429 (S.D.N.Y. 2002) ...................................... 13

*Weissmann v. Freeman*, 868 F.2d 1313 (2d Cir.1989) ................................................................ 19

*Worldwide Church of God v. Philadelphia Church of God, Inc.*,

    227 F.3d 1110 (9th Cir. 2000) .................................................................................................. 19

*Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101 (2d Cir. 2001) ................................................... 3

<u>Statutes</u>

17 U.S.C. § 101 .............................................................................................................................. 6

17 U.S.C. § 106 .............................................................................................................................. 5

Fed. R. Civ. P. 12(b)(6) ................................................................................................................. 3

Fed. R. Civ. P. 8(a)(2) ................................................................................................................... 3

Fed. R. Civ. P. 15 ........................................................................................................................ 23

<u>Other Authorities</u>

INSTAGRAM,*About Instagram Ads,* https://help.instagram.com/478880589321969,

    last visited Mar. 20, 2020 ....................................................................................................... 10

INSTAGRAM *Community Guidelines*, https://help.instagram.com/477434105621119/,

    last visited Apr. 13, 2020 ...................................................................................................... 7, 12

INSTAGRAM, *Help Center, Intellectual Property*,

    https://www.facebook.com/help/instagram/535503073130320,

    last visited Mar. 20, 2020 ....................................................................................................... 10

INSTAGRAM, *Platform Policy*, https://www.instagram.com/about/legal/terms/api/, last visited

    Apr. 13, 2020 .......................................................................................................................... 7, 9

INSTAGRAM, *Terms of Use*, https://help.instagram.com/478745558852511,

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

last visited Apr. 13, 2020 ......................................................................................... 7, 8, 9

Daniel Tovrov, *Dropshipping journalism*, COLUMBIA JOURNALISM REVIEW, Oct. 23, 2019,

https://www.cjr.org/special_report/newsweek.php ..........................................................................1

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

## MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION

**I.      The motion fails.**

Defendant Newsweek LLC ("Newsweek")'s Motion to Dismiss ("Motion") lacks merit and must be denied. Newsweek, the once-proud weekly that used to employ accomplished reporters to investigate important news stories, has today been reduced to nothing more than a hollow clickbait site. See Daniel Tovrov, *Dropshipping journalism*, COLUMBIA JOURNALISM REVIEW, Oct. 23, 2019,  https://www.cjr.org/special_report/newsweek.php.  ("Article", Burroughs Decl. ¶ 3, Ex. 1). Further devaluing its legacy, it now advances a frivolous and debunked legal theory that, if accepted, would strip photojournalists of rights in their work and allow Newsweek to copy and profit from any photograph posted on social media sites. Newsweek, which, as noted in the Article, now does little actual reporting and instead "repurpos[es] the work of others...and package[es] it as its own[,]" would, of course, experience a windfall if this were allowed. Id. But, this position is not supported by the facts or law.

Plaintiff Dr. Elliot McGucken ("McGucken") is a seasoned and accomplished photographer. McGucken created and owns a valid copyright registration in a photograph of Death Valley (the "Photograph"). He traveled at his own expense to Death Valley to create this stunning image, which he then published on his official Instagram account on March 13, 2019 (the "Instagram Post"). Newsweek, after viewing the Photograph, sent a message to McGucken via the Instagram Post requesting a license to exploit the Photograph on its commercial website. (Burroughs Decl. ¶ 4, Ex. 2). McGucken did not grant this license to Newsweek, yet Newsweek

forged ahead with reproducing, displaying, and publishing McGucken's proprietary Photograph as key art for an article on its website alongside commercial advertising (the "Infringing Article").

Newsweek, incredibly, fails to advise the Court in its Motion that it contacted McGucken to attempt to obtain a license. And they fail to so advise the Court because this attempt lays bare the frivolity of the argument it now makes – that such a license was unnecessary.

Newsweek offers two baseless arguments in its Motion: First, Newsweek claims that because McGucken featured the Photograph on his Instagram account, McGucken, via Instagram, granted Newsweek a sub-license to display the Photograph on Newsweek's website.[1] Second, Newsweek argues that its exploitation of the Photograph is fair use.

Both positions are devoid of merit and border on frivolity. Illustratively, Newsweek argues that its theft of McGucken's Photograph should be excused because it <u>also</u> stole the original caption that McGucken wrote to accompany the Photograph. It is unclear how Newsweek's theft of McGucken's text in addition to his Photograph should work to deprive McGucken of his copyrights in the Photograph, but that is the position taken in the Motion.

McGucken's First Amended Complaint ("Complaint") adequately alleges his claims. (Dkt. #17.) Newsweek simply cannot escape liability under Instagram's policies or the fair use

---

[1] And in arguing same, Newsweek relies on numerous outside sources, which is improper on a Rule 12(b)(6) motion. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 150 (2d Cir. 2002) (holding that district court, in ruling on defendants' motions to dismiss, improperly considered materials outside the pleading).

doctrine, and Newsweek's careless "reporting" constitutes copyright infringement. Because the Complaint adequately pleads all facts and theories supporting McGucken's claims, and must be taken as true at the pleading stage of the litigation, Newsweek's alleged defenses and attack on the sufficiency of McGucken's pleadings fail.

## II.    Legal standard

A complaint is sufficient if it includes a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A party may move to dismiss "for failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). In deciding a Rule 12(b)(6) motion, the court must construe "the complaint liberally, accepting all factual allegations as true, and drawing all reasonable inferences in the plaintiff's favor." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016), *quoting Chen v. Major League Baseball Props., Inc.*, 798 F.3d 72, 76 (2d Cir. 2015). Additionally, a pleading is adequate if it contains sufficient factual matter that, if accepted as true, states a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). Thus, in order to survive a motion to dismiss, a complaint based on copyright infringement must allege "both (1) ownership of a valid copyright and (2) infringement of the copyright by the defendant[s]." *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 109 (2d Cir. 2001). And although it is "highly unlikely [] that a fair use affirmative defense can be addressed on a motion to dismiss, [a] [c]ourt reviews [a defendant's] allegedly infringing uses of [a plaintiff's work] by considering the four fair use factors in light of the factual allegations of the Complaint and its exhibits." *Graham v. Prince*,

265 F. Supp. 3d 366, 379 (S.D.N.Y. 2017), *citing TCA Television Corp. v. McCollum*, 839 F.3d 168, 178 (2d Cir. 2016). And where, as here, a plaintiff has pled "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," the motion should be denied. *Ashcroft*, *quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 1965 (2007). McGucken's Complaint ably meets the applicable standard.

## III.    Argument

Newsweek is liable for copyright infringement and cannot exploit Instagram's policies or the fair use doctrine to avoid liability for the reasons discussed below.

### A.    McGucken sufficiently alleged willful infringement.

Newsweek willfully infringed McGucken's rights in his proprietary Photograph. The standard for willful infringement is simply whether the defendant copied the work without consent and "had knowledge that its conduct represented infringement or perhaps recklessly disregarded the possibility[.]" *Hamil Am. Inc. v. GFI*, 193 F.3d 92, 97 (2d Cir. 1999). As previously noted, Newsweek sought a license from McGucken to exploit McGucken's Photograph but this request was not granted. (Burroughs Decl. ¶ 4, Ex. 2). Newsweek, despite its license being declined, nevertheless published the Photograph, in willful disregard for McGucken's rights. And McGucken also provided notice of the instant infringement to Newsweek by email and per Newsweek's putative copyright policy[2] on April 9, 2019, but

---

[2] This notice was sent twice to "copyright@newsweek.com," the address provided for such notices by Newsweek at https://www.newsweek.com/copyright. As a further sign of either

Newsweek did not remove the Photograph until on or around March 2020, months after McGucken initiated this action. (Compl., ¶ 11.) Finally, Newsweek, a publication that has been in business for over 80 years, is chargeable with the knowledge that a commercial publication cannot misappropriate the creative work of others without consent. Newsweek at least recklessly disregarded McGucken's rights in committing its wrongful acts and thus is liable for willful infringement.

Newsweek violated the Copyright Act, regardless of the methods it used to copy and display the Photograph. Under the Copyright Act, creators are entitled to several exclusive rights, including the rights to reproduce and display their works. 17 U.S.C. § 106. "Public display occurs, and § 106(5) is violated, each time an individual computer user accesses the relevant page on a website that displays the protected work." *APL Microscopic, LLC v. United States*, 144 Fed. Cl. 489, 498 (2019) (citations and quotations omitted). And "when [a] defendant[] cause[s] the embedded [post] to appear on [its] websites, [its] actions violate[] plaintiff's exclusive display right; the fact that the image was hosted on a server owned and operated by an unrelated third party [] does not shield them from this result." *Goldman v. Breitbart News Network, LLC*, 302 F.Supp.3d 585, 586 (S.D.N.Y. 2018) (emphasis added). Here, Newsweek reproduced and displayed the Photograph on its commercial website, and McGucken has alleged same. (Compl.,

---

sloppy business practices or a concerted effort to infringe copyrights, emails sent to this address trigger a "failure of delivery" message.

¶ 10) This is sufficient to establish that McGucken adequately pled that Newsweek violated McGucken's exclusive reproduction and display rights.

And Newsweek violated McGucken's display rights, regardless of where the Photograph was hosted. Newsweek claims that it did not infringe McGucken's rights in the Photograph because it used a web embed to display McGucken's work. But "[t]he plain language of the Copyright Act, the legislative history undergirding its enactment, and subsequent Supreme Court jurisprudence provide no basis for a rule that allows the physical location or possession of an image to determine who may or may not have 'displayed' a work within the meaning of the Copyright Act." *Goldman*, 302 F. Supp. 3d at 593. Indeed, the "Copyright Act unambiguously states that ['][t]o 'display' a work means to show a copy of it, either directly or by means of a film, slide, television image, or any other device or process ....['] *APL Microscopic, LLC*, 144 Fed. Cl. at 498 (2019)(emphasis added), citing 17 U.S.C. § 101. And the "definition's usage of the phrase [']any other device or process['] clearly brings showing a copy of a work through a computer within the statutory definition of [']display.[']" Id.; see also *Leader's Inst., LLC v. Jackson*, No. 3:14-CV-3572-B, 2017 WL 5629514, at *11 (N.D. Tex. Nov. 22, 2017) ("The text of the Copyright Act does not make actual possession of a copy of a work a prerequisite for infringement. To display a work, someone need only show a copy of the work; a person need not actually possess a copy to display a work."). Here, the "process" by which Newsweek displayed McGucken's Photograph is irrelevant. Newsweek's very display of said photography violated McGucken's copyrights.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

**B.**     **Instagram's policies do not authorize third parties to exploit content belonging to Instagram users.**

Newsweek cannot use Instagram's policies to shield itself from liability. This defense has never succeeded and Newsweek fails to cite a single case adopting this misguided theory, which would, if credited, deprive every one of Instagram's tens of millions of users of their copyrights in photography posted to users' proprietary accounts on the site. Cognizant of the foregoing, Newsweek grossly misrepresents Instagram's policies, which did not authorize Newsweek to lawfully exploit the Photograph, as discussed below.

**1.   Instagram's ability to sublicense is limited under its own policies and existing case law.**

Newsweek's interpretation of cherry-picked language from Instagram's guidelines is inconsistent with Instagram's overall policies. Newsweek contends that Instagram's policies provide a right to sub-license user content in instances where an individual shares material on a public account and a third-party uses web embeds to share said individual's content. But this flawed argument fails to acknowledge the actual language of Instagram's terms and completely overlooks Instagram's policies in their entirety, which considerably restricts the rights of third parties with respect to users' intellectual property.

Indeed, Instagram's Platform Policy ("Platform Policy", Burroughs Decl. ¶ 5, Ex. 3)[3], Terms of Use ("Terms", Burroughs Decl. ¶ 6, Ex. 4)[4], and Community Guidelines ("Community Guidelines", Burroughs Decl. ¶ 7, Ex. 5)[5], when viewed in their entirety, illustrate that Instagram retains limited rights with respect to user content. For example, Instagram's Terms state that "[t]his agreement <u>does not give rights to any third parties</u>." (Terms, *Our Agreement and What Happens if We Disagree*, Who Has Rights Under this Agreement.)(emphasis added). This provision alone precludes Newsweek's argument.

And this clause is not subject to a user's privacy settings, contrary to Newsweek's assertions. Instagram's Terms are unequivocal in stating that third parties do not gain any rights to user content. Thus, Newsweek could not have gained display rights to McGucken's Photograph, regardless of whether Newsweek directly uploaded the Photograph to its site, or used a web embed to publish the Photograph. It cannot be credibly disputed that McGucken did not grant Newsweek any rights to the Photograph by sharing it on his own Instagram account.

In addition to not granting rights to third parties, Instagram's policies and relevant authority also make it clear that Instagram retains extremely limited rights to user content as a non-exclusive licensee. Courts have held that even "[i]f an author grants to another the right to

---

[3] *Platform Policy*, INSTAGRAM, https://www.instagram.com/about/legal/terms/api/, last visited Apr. 13, 2020.
[4] *Terms of Use*, INSTAGRAM, https://help.instagram.com/478745558852511, last visited Apr. 13, 2020.
[5] *Community Guidelines*, INSTAGRAM, https://help.instagram.com/477434105621119/, last visited Apr. 13, 2020.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

publish his work, the grant does not in and of itself constitute a publication unless and until the grantee exercises that right." *Schatt v. Curtis Mgmt. Grp., Inc.*, 764 F. Supp. 902, 908 (S.D.N.Y. 1991), *citing 1 Nimmer § 4.04; see also Press Publishing Co., v. Monroe*, 73 F. 196 (2d Cir.1896); *Peter Pan Fabrics, Inc. v. Dan River Mills, Inc.*, 295 F.Supp. 1366 (S.D.N.Y.1969) *aff'd* 415 F.2d 1007 (2d Cir.1969). There is no evidence that Instagram ever exercised any rights in connection with McGucken's Photograph.

Additionally, in *In re Patient Educ. Media, Inc.*, 210 B.R. 237, 240 (Bankr. S.D.N.Y. 1997), the court stated that while "the licensee under an exclusive [copyright] license may freely transfer his rights," a nonexclusive licensee may not do so. Here, Instagram's own terms also indicate that it is a "non-exclusive" licensee. (Terms, *Permissions You Give to Us*, We do not claim ownership of your content, but you grant us a license to use it; license is "non-exclusive") Because Instagram is a non-exclusive licensee, Instagram cannot transfer or sub-license its rights to Newsweek. And, even if Instagram had the right to sub-license (it does not), there is no evidence that Instagram ever granted a sub-license for the Photograph to Newsweek. That is because it never did so.

Knowing that McGucken did not authorize Instagram to sub-license his Photograph to Newsweek, and Instagram did not in fact sub-license the photograph, Newsweek takes a partial clause from Instagram's Terms out of context to make its argument, quoting the following language:

> when you share, post, or upload content that is covered by intellectual property rights (like photos or videos) on or in connection with our Service, you hereby grant to us a non-exclusive, royalty-free, transferable, sub-licensable, worldwide

- 9 -

> license to host, use, distribute, modify, run, copy, publicly perform or display, translate, and create derivative works of your content (consistent with your privacy and application settings).

Id. But Instagram terms make clear that any alleged sublicense <u>only applies to Instagram and Instagram's affiliates</u>, and third-party users must obtain appropriate rights. Instagram's Platform Policy states:

> You grant **<u>us and our affiliates</u>** a non-exclusive, transferable, sub-licensable, royalty-free, worldwide license to use any data, content, and other information made available by you or on your behalf in connection with your use of our Platform. This license survives even if you stop using the platform feature. <u>You are responsible for obtaining the necessary rights from all applicable rights holders to grant this license.</u>"

(D, 13) (emphasis added). Additional guidance in the Platform Policy instructs users to not "sell, lease, or <u>sublicense</u> the Instagram Platform or <u>any data derived through the Platform.</u>" (A, 34) (emphasis added). These terms, taken in their entirety, illustrate beyond a doubt that third parties cannot sublicense content found on Instagram. And Instagram goes even further, instructing brands to obtain rights from content owners, as discussed further below.

### 2. Instagram instructs brands to obtain permission from content owners before using their material.

Newsweek's reliance on its ability to use an embedding process to display Instagram users' content under certain of Instagram's general terms disregards other key specific provisions of said terms, which consistently emphasize the responsibility of brands to comply with an account owner's rights, regardless of the user's privacy setting.

Under Instagram's Platform Policy, Terms, and Community Guidelines, Newsweek is obligated to seek permission from content owners regarding intellectual property rights. Indeed,

- 10 -

Instagram underscores that its "Terms of Use <u>do not allow</u> posting content that violates someone else's intellectual property rights, including copyright and trademark."[6] Instagram further advises that it does not allow advertisers to exploit user content, noting that users "own [their] own photos and videos."[7] Newsweek entirely ignores these specific guidelines and instead cites to the general preamble of Instagram's Platform Policy. But Instagram's ability "to help broadcasters and publishers discover content, get digital rights to media, and share media using web embeds" is heavily limited by the terms following the introduction, which accentuate the responsibility of publishers to:

> • Comply with any requirements or restrictions imposed on usage of Instagram user photos and videos ("User Content") by their respective owners. **<u>You are solely responsible for making use of User Content in compliance with owners' requirements or restrictions</u>**. (A, 11) (emphasis added).

> • Remove within 24 hours any User Content or other information that the owner asks you to remove. (A, 12)

> • <u>Obtain a person's consent before including their User Content in any ad.</u> (A, 13) (emphasis added).

> • Comply with all applicable laws or regulations. <u>Don't provide or promote content that violates any rights of any person, including but not limited to intellectual property rights, rights of privacy, or rights of personality.</u> (A, 35) (emphasis added).

> • <u>You represent and warrant that you own or have secured all rights necessary to display, distribute and deliver all content in your app or website.</u> To the extent

---

[6] *Help Center, Intellectual Property*, INSTAGRAM, https://www.facebook.com/help/instagram/535503073130320, last visited Mar. 20, 2020. (emphasis added)

[7] *About Instagram Ads,* INSTAGRAM, https://help.instagram.com/478880589321969, last visited Mar. 20, 2020.

your users are able to share content from your app or website on or through Instagram, <u>you represent and warrant that you own or have secured all necessary rights for them to do so in accordance with Instagram's available functionality.</u> (D, 9) (emphasis added).

• <u>You represent and warrant that you satisfy all licensing</u>, reporting, and payout <u>obligations to third parties in connection with your app or website.</u> (D, 10) (emphasis added).

• You grant us and our affiliates a non-exclusive, transferable, sub-licensable, royalty-free, worldwide license to use any data, content, and other information made available by you or on your behalf in connection with your use of our Platform. This license survives even if you stop using the platform feature. <u>You are responsible for obtaining the necessary rights from all applicable rights holders to grant this license.</u> (D, 13) (emphasis added).

Similar guidance is also highlighted in Instagram's Community Guidelines, which instruct third-party users to "<u>[s]hare only photos and videos that you've taken or have the right to share</u>. As always, you own the content you post on Instagram. Remember to post authentic content, and <u>don't post anything you've copied or collected from the Internet that you don't have the right to post.</u>" (Community Guidelines, *The Long*.) (emphasis added). These terms clearly establish that Newsweek had the burden of obtaining permission from McGucken to exploit his Photograph, regardless of McGucken's privacy settings for his Instagram account or Newsweek's use of an embedding process. The court must consider Instagram's policies in their entirety when determining whether Instagram's guidelines permit sub-licensing to third parties.

Newsweek's interpretation of Instagram's guidelines not only contradict Instagram's specific terms but also binding case law, which holds that non-exclusive licensees <u>cannot</u> sub-license. Indeed "there are strong policy reasons to place the burden on the licensee to get the licensor's explicit consent [for sub-licensing] either during or after contract negotiations." *Ward*

- 12 -

*v. Nat'l Geographic Soc.*, 208 F. Supp. 2d 429, 442 (S.D.N.Y. 2002), citing *Gardner v. Nike,*

*Inc.*, 279 F.3d 774, 781 (9th Cir. 2002)(holding that "licensee has the burden of obtaining the

licensor's consent before it may assign its rights, absent explicit contractual language to the

contrary."). Indeed, "copyright owners who grant nonexclusive licenses might find themselves

involuntarily competing with their own licensees for future licensing opportunities if

sublicensing were permitted without permission." Id. at 442–43. If, as Newsweek argues,

Instagram (at most, a non-exclusive licensee of the Photograph) could freely sublicense the

Photograph, McGucken would find himself competing with Instagram for licensing

opportunities. This cannot be, and isn't, the law.

     Instagram's guidelines provide neither express nor implied permission to download or

distribute a work outside of the Instagram platform without permission from the content owner.

And Instagram at no point obtained explicit consent from McGucken to allow Newsweek's use.

Thus, Newsweek cannot discharge its burden of proving McGucken's consent, which it bears, as

such a burden assures that the licensor will be able to monitor the use of the copyright. *Gardner*,

279 F.3d at 781 (9th Cir. 2002), *citing Harris v. Emus Records Corp.*, 734 F.2d 1329, 1334 (9th

Cir. 1984). And "[the licensor's] ability to monitor use would be jeopardized by allowing

sublicensing without notice." *Id*. Instagram had no right to sub-license McGucken's Photograph

and did not do so.

     Finally, Newsweek was not an intended beneficiary of the Instagram terms at issue:

"whether a contract benefits or accords rights to a third party (most often, the right to enforce the

contract) depends significantly on the intention of the original contracting parties." *Specht v.*

- 13 -

*Netscape Commc'ns Corp.*, 306 F.3d 17, 39 (2d Cir. 2002) (citations and quotations omitted). Here, Newsweek fails to proffer any evidence that it was an intended beneficiary. The evidence, instead, reveals that Newsweek failed to obtain permission from McGucken to exploit the Photograph, and McGucken certainly did not intend to convey any rights to Newsweek. Because Instagram had no authority to use the Photograph, Newsweek cannot hold a valid sub-license. Thus, Newsweek's misappropriation and display without consent of the Photograph is infringement.

      **C.**     **Fair use is inapplicable and in any event cannot be decided at this stage.**

Newsweek also cannot use fair use to justify its unauthorized commercial exploitation of McGucken's Photograph, especially at this early stage in litigation. A court cannot engage in the fair use inquiry until it has been presented with facts relevant to evaluating the fair use factors. *See Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 560, 105 S.Ct. 2218 (1985) (an appellate court may determine that the fair use defense applies as a matter of law when there are "facts sufficient to evaluate each of the statutory factors"). And, where, like here, material issues exist as to the "purpose and character" of the material at issue, "the extent to which the [material] was used for commercial purposes," and the effect the [material] had on the market for" the work, adjudication of the "fair use" defense is premature. *Free Speech Sys., LLC v. Menzel*, 390 F. Supp. 3d 1162, 1174 (N.D. Cal. 2019)(rejecting fair use defense at the pleading stage in a photograph case). Here, the parties have not engaged in any discovery, which will further establish that fair use is inapplicable in this instance, or otherwise developed a record that supports the "fair use" defense. Thus, Newsweek's motion is premature.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

**D.     Newsweek cannot prevail on a fair use claim.**

Even if it were appropriate to address fair use now, Newsweek's use of McGucken's work cannot be considered "fair" under the law. Indeed, "a judicial determination that [a defendant]'s inclusion of [a plaintiff's] [i]mage on its website was fair use would promote wholesale circumvention of copyright law." *BWP Media USA, Inc. v. Gossip Cop Media, Inc.*, 196 F. Supp. 3d 395, 406 (S.D.N.Y. 2016). The invocation of the "fair use" defense by an online publication that simply misappropriated a photographer's work, as Newsweek has done here, has repeatedly been rejected by the courts. The defense fails.

**1.   The "purpose and character" of the use militates against a finding of fair use.**

The first factor in determining fair use is the purpose and character of the use. Newsweek contends that it used the Photograph for news reporting, but that is insufficient to establish fair use. Indeed, as this Court has previously held, a defendant cannot simply "take any photograph, announce the photograph's contents" to be newsworthy, and "call that 'fair use.'" *BWP Media USA, Inc.* at 406. For the foregoing reasons, this factor weighs against Newsweek.

*i.  Newsweek used the Photograph for precisely the same purpose as McGucken sought.*

In analyzing the purpose and character of the use, "the primary inquiry is whether the use 'communicates something new and different from the original or [otherwise] expands its utility,' that is, whether the use is 'transformative.'" *Fox News Network, LLC v. Tveyes, Inc.*, 883 F.3d

169, 176 (2d Cir. 2018) (*quoting Authors Guild v. Google, Inc.*, 804 F.3d 202, 214 (2d Cir. 2015)). The evidence to date reflects that Newsweek failed to transform the Photograph in any way, as seen in the comparison of the Photograph and the Newsweek Article provided by McGucken. (Dkt. #17-1) Despite the lack of modification, Newsweek relies heavily on *Nunez v. Caribbean Int'l News Corp.,* 235 F.3d 18 (1st Cir. 2000) to argue to the contrary, but that out-of-circuit case is distinguishable. In *Nunez,* the media defendants published photographs taken by plaintiff of Joyce Giraud, the 1997 Miss Universe Puerto Rico, where she appeared naked or nearly naked. The plaintiff had shot the photographs for Giraud's modeling portfolio, and the media defendants published the photographs to report on the controversy concerning Giraud. The First Circuit held that defendants' use of the photographs transformed the works from their original purpose, furthering a modeling portfolio, to news reporting. *Id.* at 23. Newsweek argues that it is similar to the *Nunez* defendants because it allegedly transformed the Photograph from "a work of fine art landscape photography" to a work used to "identify…and…to report on…the natural phenomenon." (Motion, p. 18)

But that argument fails. While McGucken offers his photographs for sale as fine art prints on his website, he also licenses select photographs for media use. Indeed, McGucken licensed the Photograph to SF Gate for use in a web article about the temporary lake in Death Valley, which Newsweek even *acknowledged* in the Article. (Burroughs Decl. ¶ 8, Ex. 6) Thus, Newsweek exploited the Photograph, which McGucken had licensed to select media outlets for publication, in the same way that McGucken sought his work to be used. And "[u]sing a photo for the precise reason it was created does not support a finding that the nature and purpose of the

- 16 -

use was fair." *BWP Media USA, Inc.* at 407. Because Newsweek used the Photograph for the same purpose it was created and did not add anything new or different to the Photograph, there was no transformation.

### ii. *Illustrative aids are not transformative and do not support the first fair use factor.*

Despite the exactitude of its copying, Newsweek alleges that it transformed the Photograph by using the Photograph as a "newsworthy illustration." (Motion, p.16.) But courts have recognized that "the use of an image solely to present the content of that image…is not transformative." *Ferdman v. CBS Interactive Inc.*, 342 F. Supp. 3d 515, 534 (S.D.N.Y. 2018) (citations omitted); s*ee also Barcroft Media, Ltd. v. Coed Media Grp., LLC*, 297 F. Supp. 3d 339, 352 (S.D.N.Y. 2017) (stating that work is not transformative where images are used simply as "illustrative aids" depicting the subjects described in a news article). And "[a]llowing a news publisher to poach an image from an individual's social media account for an article that does little more than describe the setting of the image does not promote 'the Progress of science and useful Arts.'" *Otto v. Hearst Commc'ns, Inc.*, 345 F. Supp. 3d 412, 433 (S.D.N.Y. 2018), *citing Castle Rock Entm't, Inc. v. Carol Pub. Grp., Inc.*, 150 F.3d 132, 141 (2d Cir. 1998) (citations omitted). Here, Newsweek exploited McGucken's proprietary content without his consent, reproduced the contents of the Photograph and the Instagram Post in their entirety in the Newsweek Article, and called it "reporting." Newsweek's use of the Photograph as an

illustrative aid cannot be considered transformative under relevant case law and weighs against the first fair use factor.

### iii.  Newsweek's bad faith weighs against the first factor.

Newsweek's bad faith must also be considered in analyzing the first factor. Courts have held that "the propriety of the alleged infringer's conduct is relevant to a determination of the character of the subsequent use." *Robinson v. Random House, Inc.*, 877 F. Supp. 830, 841 (S.D.N.Y. 1995), modified, No. 93 CIV. 3108 (LAP), 1995 WL 502525 (S.D.N.Y. Mar. 26, 1995). The evidence thus far reflects that Newsweek acted improperly. For example, a Newsweek representative contacted McGucken and requested a license to upload the Photograph on Newsweek's website. (Burroughs Decl. ¶ 4, Ex. 2). McGucken did not grant that license. Yet, without advising McGucken, Newsweek proceeded to publish his Photograph without his consent. These actions amounted to no more than "profit[ing] from the exploitation of the copyrighted work without paying the customary prices." *Harper & Row, Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 562, 105 S.Ct. 2218, 2231 (1985).

To downplay its bad faith, Newsweek argues that "the Newsweek Article, when viewed in its entirety, demonstrates that, when Newsweek does not have authorization to use a photograph, or when it simply needs a photograph to illustrate a particular story, it licenses such content." (Motion, p.11) But this is demonstrably false. While Newsweek may have allegedly licensed one photograph in the Newsweek Article, it did not obtain a license from McGucken to use his work. And as courts have previously held, "no plagiarist can excuse the wrong by showing how much [] he did not pirate." *Sheldon v. Metro–Goldwyn Pictures Corp.*, 81 F.2d 49,

- 18 -

56 (2d Cir.1936). If anything, this other license establishes that Newsweek had knowledge that licenses are required to republish the photography of third parties. Newsweek's bad faith precludes its fair-use defense.

### iv.   Newsweek's commercial use undermines the first factor.

Moreover, Newsweek fails to address the most important factor in determining whether fair use can be employed as a defense: commercial use. Commercial use is a "factor that tends to weigh against a finding of fair use" because "the user stands to profit from exploitation of the copyrighted material without paying the customary price." *Harper & Row Publishers, Inc.* at 562. The Supreme Court has held that "every commercial use of copyrighted material is presumptively an unfair exploitation of the monopoly privilege that belongs to the owner of the copyright." *Sony Corp. of Am. v. Universal City Studios*, Inc., 464 U.S. 417, 451, 104 S. Ct. 774, 793 (1984). To determine commercial use, courts consider "whether the user stands to profit from exploitation of the copyrighted material without paying the customary price." *Harper & Row Publishers, Inc.* at 562. In analyzing whether the purpose of the infringing work was "profit," "monetary gain is not the sole criterion ... particularly in [a] ... setting [where] profit is ill-measured in dollars." *Worldwide Church of God v. Philadelphia Church of God, Inc.*, 227 F.3d 1110, 1117 (9th Cir. 2000) (alteration in original) (quoting *Weissmann v. Freeman*, 868 F.2d 1313, 1324 (2d Cir.1989) (holding that a professor's verbatim copying of an academic work was not fair use, in part because a professor can "profit" by gaining recognition among his peers and authorship credit)). Here, McGucken alleged that Newsweek published his work alongside commercial advertisements. (Compl., ¶ 10). Newsweek profited from its exploitation of

- 19 -

McGucken's work in several ways, including increased revenues from the paid advertising it displayed next to McGucken's Photograph, new subscribers, and increased page views. This militates against the fair use defense.

And McGucken should not be denied the opportunity to engage in meaningful discovery to further establish the extent of the commercial use. Information that will be provided in discovery, including the number of page views and total advertising revenues gained, will support a finding of commercial use, which will defeat a fair use defense and render Newsweek liable for copyright infringement. The success from Newsweek's exploitation of McGucken's work will prove commercial use and liability because Newsweek profited from its exploitation of McGucken's copyrighted material. Thus, the first factor weighs against Newsweek.

**2.     The creative nature of the Photograph favors McGucken.**

The nature of the Photograph favors McGucken as well. Although photographs are often "factual or informational in nature," the art of photography has generally been deemed sufficiently creative to make the second fair use factor weigh in favor of photographer-plaintiffs. *Baraban v. Time Warner, Inc.*, No. 99 CIV. 1569 (JSM), 2000 WL 358375, at *4 (S.D.N.Y. Apr. 6, 2000). Here, the Photograph is a highly artistic work, and McGucken made many creative decisions, including composition, angles, choice of lens, lighting, and setting, to create the resulting work. The second factor also disfavors Newsweek.

- 20 -

### 3.   Newsweek exploited McGucken's entire work, which does not support a finding of fair use.

The amount and substantiality of the portion used militates against Newsweek. Generally, "the more of a copyrighted work that is taken, the less likely the use is to be fair." *Infinity Broad. Corp. v. Kirkwood*, 150 F.3d 104, 109 (2d Cir.1998). Here, Newsweek copied and exploited the entire Photograph and McGucken's accompanying caption. This factor also weighs in favor of McGucken because Newsweek reproduced and displayed his entire work, including his text.

### 4.   McGucken will be able to prove market harm.

Newsweek's commercial use of McGucken's content also establishes market harm. Potential market effect is "undoubtedly the single most important element of fair use." *Harper & Row Publishers, Inc.* at 566. A presumption of market harm "makes common sense[ ] when a commercial use amounts to mere duplication of the entirety of an original." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 591, 114 S. Ct. 1164, 1177 (1994). And "in assessing harm posed to a licensing market, a court's focus is not on possible lost licensing fees from defendant[]'[s] challenged use…[but rather]…the challenged use's impact on potential licensing revenues for traditional, reasonable, or likely to be developed markets." *TCA Television Corp. v. McCollum*, 839 F.3d 168, 186 (2d Cir. 2016) (citations and quotations omitted). And as this Court has previously held, "[n]ewsworthy contents will rarely justify unlicensed reproduction; were it otherwise, photojournalists would be unable to license photos, and would effectively be out of a job." *BWP Media USA, Inc.* at 406 n.6.

- 21 -

It cannot be disputed that Newsweek sought to obtain a license from McGucken for the Photograph and published the work on its commercial website despite its lack of licensure. Market harm will be established and the fair-use defense fails.

**E.     McGucken's vicarious and contributory copyright infringement claims are well-plead.**

McGucken has adequately pled an underlying copyright violation. His vicarious and contributory infringement claims are also sufficiently plead. Newsweek unconvincingly argues that McGucken's secondary liability claims are insufficient, but that is demonstrably false.

To allege vicarious copyright infringement, a plaintiff must allege that the defendant[s] "[1] had the right and ability to supervise the infringing activity and ... [2] ha[ve] a direct financial interest in such activities." *Arista Records LLC v. Lime Grp. LLC*, 784 F. Supp. 2d 398, 434–35 (S.D.N.Y. 2011) (quoting *Gershwin Pub. Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971)). Here, McGucken has alleged that Defendants "knowingly induced, participated in, aided and abetted in and profited from the illegal reproduction and distribution of the Subject Photograph" and are "vicariously liable for the infringement [alleged in the Complaint] because they had the right and ability to supervise the infringing conduct and because they had a direct financial interest in the infringing conduct." (Compl., ¶¶ 23, 24.) This is sufficient to assert vicarious infringement. And as McGucken has stated in his Complaint, other parties who have contributed to the infringement of his copyrights are presently unknown to him, which is why he is presently suing Defendants Does 1 through 10. (Compl., ¶ 6) McGucken has also indicated that he will seek leave to amend his Complaint to show these

Defendants' true names and capacities when same have been ascertained. Id. Discovery will allow McGucken to do this.

Additionally, one "infringes contributorily by intentionally inducing or encouraging direct infringement." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930, 125 S.Ct. 2764 (2005) (internal citation omitted). As noted previously, reports have highlighted Newsweek's questionable policies and repackaging of content, and Newsweek had knowledge of McGucken's ownership of the Photograph. (Burroughs Decl. ¶¶ 3, 4, Exs. 1, 2) Any further details regarding the foregoing claims are solely within the possession of Newsweek and as a result McGucken is not required to plead same. See *Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1180, 1189 (9th Cir. 2016)(even at the summary judgment stage, a party need not submit facts solely within their adversary's possession, a rule that "accords with ... our general precedent that fairness dictates that a litigant ought not have the burden of proof with respect to facts particularly within the knowledge of the opposing party.")(citation omitted). Thus, McGucken's claims of secondary vicarious and/or contributory liability are sufficiently pled. So owing, the Motion fails and must be denied.

## IV.    Leave to amend should be granted.

Although McGucken maintains that there are no deficiencies in his Complaint, should this Court determine that McGucken's pleadings are deficient in any way, McGucken respectfully requests leave to amend his complaint per the "liberal" standard of Fed.R.Civ.P. 15. Indeed, "when a motion to dismiss is granted, the usual practice is to grant leave to amend the

complaint." *Ronzani v. Sanofi S.A.*, 899 F.2d 195, 198 (2d Cir. 1990) (citations and quotations omitted). Leave to amend is respectfully requested to the extent the court deems amendment necessary.

**V.      This motion fails.**

Thomas J.C. Martyn, who founded Newsweek in 1933, would likely be appalled that his once-lauded publication was not only now copying, wholesale and without consent, the work of photojournalists, but also advancing arguments to courts that would strip those very same photojournalists of their rights in their work. The motion is meritless and should be denied.

Respectfully submitted,

Dated: April 13, 2020                    By:      */s/ Scott Alan Burroughs*
Brooklyn, New York                                Scott Alan Burroughs, Esq.
                                                  Laura M. Zaharia, Esq.
                                                  Attorneys for Plaintiff
                                                  Elliot McGucken

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS