UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ELLIOT MCGUCKEN, an individual,<br><br>   *Plaintiff*,<br><br>  v.<br><br>NEWSWEEK, LLC, a New York Limited Liability Company; and DOES 1-10, inclusive,<br><br>   *Defendant*. | Case No: 1:19-cv-09617 (KPF) |

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT NEWSWEEK DIGITAL LLC'S MOTION FOR <u>REARGUMENT AND RECONSIDERATION</u>

Nancy E. Wolff
Lindsay R. Edelstein
COWAN, DEBAETS, ABRAHAMS &
SHEPPARD LLP
41 Madison Avenue, 38th Floor
New York, New York 10010
Tel: (212) 974-7474
Fax: (212) 974-8474
nwolff@cdas.com
ledelstein@cdas.com

*Attorneys for Defendant Newsweek Digital LLC*

**PRELIMINARY STATEMENT**

McGucken's opposition does nothing to counter the fact that the missing "evidence before the Court of a sublicense between Instagram and [Newsweek]" is found in Instagram's Embedding Policy, which explicitly permits the use of public Instagram posts in digital publications for the purpose of storytelling.  Instead, McGucken inexplicably pontificates that Newsweek has failed to specify where the "express grant" is found in the Embedding Policy – despite the fact that the express language, namely, Instagram's directive to third parties: "*You can embed* your own content as well as photos and videos from public profiles" – is quoted *verbatim* multiples times in both Newsweek's motion to dismiss and in the instant motion for reconsideration (the "Motion"). Rather than addressing Newsweek's respectful suggestion that the Court may have overlooked this evidence, McGucken conflates the agreement between Instagram and users who post content publicly on its service, with the separate express grant from Instagram to publishers via the Embedding Policy in an attempt to downplay the latter.

Because the four corners of these agreements clearly authorize the use at issue on their face, McGucken resorts to making irresponsible, baseless, and hyperbolic attacks on Newsweek, relying on hearsay from an unidentified speaker purportedly regarding the current agreements at issue – made many years after the agreements at issue were formed – about what the agreements mean, and taking out of context Newsweek's scant references to portions of the *Sinclair* decision unrelated to Newsweek's arguments related to this Motion.  Regardless, Newsweek was entitled to rely on Instagram's then-express language granting permission to embed the McGucken post in a relevant article.

Because the narrow interpretation of the Instagram terms McGucken advances is not supported by the Copyright Act, contract law, or a common sense reading of the language, and

1

because McGucken has failed to credibly address how the Embedding Policy's express language does not constitute evidence of a sublicense issued to Newsweek by Instagram, reconsideration is warranted.

## I. "YOU CAN EMBED PHOTOS FROM PUBLIC PROFILES" IS EXPLICIT CONSENT

In his Opposition, McGucken preposterously claims that "Newsweek fails to specify where this alleged 'express grant' can be found in the Embedding Policy." Opp. at 7. The express grant, namely, Instagram's directive to third parties that they "can embed photos from public profiles" is referenced multiple times in Newsweek's briefing in support of its motion to dismiss and in its opening brief on the instant Motion. *See*, *e.g.*, Dkt. No. 22 at 7, n.8, 8, 9; Dkt. No. 22-9; Dkt. No. 37 at 1-3. There is no reason to believe that this language permitting embedding from public profiles does not constitute the exact type of "explicit consent" referenced in *Ward*, and McGucken cites no case law to the contrary. *See* 208 F. Supp. 2d 429, 443 (S.D.N.Y. 2002).[1]

---

[1] Moreover, the policy reasons underpinning the outcome in *Ward* are not present here; namely, the fear that licensees might unilaterally, and without warning, undercut economic incentives of creators such as the ability to "collect[] royalties." *Id.* at 442. Ward involved the purported sublicense by National Geographic Society ("NGS") of text and photographs created by photographer Fred Ward to NGS's various subsidiaries and third-party partners to create a digitalized CD-ROM version of its magazine archive entitled "The Complete National Geographic" ("TCNG"), which it made available for purchase to consumers. *Id.* at 431. In exchange for NGS's sublicense of these rights to its subsidiaries and partners, NGS received royalties on all sales of TCNG and gave nothing to Ward. *Id.* While NGS had originally licensed the text and images from Ward for use in its print magazine, Judge Kaplan rejected NGS's argument that this gave it the "right to sublicense" such rights obtained from Ward for use in TCNG. *Id.* at 441. The court was concerned that NGS's unilateral sublicensing of Ward's work would "jeopardize" Ward's "ability to monitor use . . . by allowing sublicensing without notice." *Id.* at 442.

The circumstances here are completely inapposite. Here, McGucken *knowingly* entered into an agreement with Instagram allowing it to *freely sublicense his work without his approval*, and *without compensation to him*. Order at 9. This alone eliminates the concerns articulated by Judge Kaplan. *Ward*, 208 F. Supp. 2d at 442–43. To the extent Instagram facilitated third-party use of McGucken's Instagram content via its API – and by virtue of its explicit directive that third parties could "embed photos . . . from public profiles" – such use is not akin to NGS collecting royalties from unlicensed use of Ward's work from commercial sales.

2

McGucken confusingly argues all at once: (1) that the Embedding Policy is "'a 'Policy,' not a contract or agreement, and simply lays out general parameters to be observed by users of its API"; and (2) that the Embedding Policy is part of Instagram's integrated set of agreements. Opp. at 6 ("embed users 'agree to Instagram's API Terms of Use . . . [which] links to the Platform Policy . . . [which] instructs users to comply with the Instagram Terms of Use and Instagram Community Guidelines . . . The Embedding Policy is thus subject to these guidelines, of which the Court properly took judicial notice of").[2]

As set forth in Newsweek's opening brief on this Motion, the Embedding Policy is *an agreement* between Instagram and users of its API. Mot. at 3-5. Instagram grants sublicenses to users of its API who, in exchange, must agree to policy terms hyperlinked underneath the embed code. *Id.* at 3. This is an agreement for the same reasons Instagram's Terms of Use constitute an agreement between Instagram users and Instagram.[3] Any reference to the Embedding Policy as a "policy" is purely semantic, as it was used as a defined term by Newsweek in its opening brief rather than a reflection of how the document operates, or how it should be understood in this important context.

To the extent McGucken claims "Newsweek never established that McGucken agreed to the Embedding Policy," he misunderstands the nature of Instagram's relationship (and agreement) with a user who posts specific content publicly on its platform, and API users who sublicense content by embedding it using Instagram's API. Opp. at 5. The former, among other things, and

---

[2] Notably, McGucken concedes that the Embedding Policy may be judicially noticed at this stage. *See, e.g., French v. Erie Cty. Bd. of Elections*, No. 12-CV-00756A(F), 2015 WL 13681014, at *11 (W.D.N.Y. Mar. 3, 2015) (failure to address an argument on opposition is tantamount to a concession).

[3] *See, e.g., Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 840 (S.D.N.Y. 2012) ("Here, Fteja was informed of the consequences of his assenting click and he was shown, immediately below, where to click to understand those consequences. That was enough..").

3

as conceded by this Court, is between McGucken and Instagram, and grants Instagram the right to grant sublicenses to third parties to embed publicly posted content. Order at 9. The latter agreement is between Instagram and Newsweek, and expressly grants Newsweek the right to use Instagram's API to embed content publicly posted on Instagram subject to Newsweek's agreement to Instagram's Platform Policy. McGucken was never intended to be a party to the agreement between Instagram and users of its API; his agreement to the Embedding Policy was never required as he previously agreed that Instagram could "sublicense" by agreeing to Instagram's Terms of Use.

Finally, for the reasons set forth by Newsweek in its opening brief, and as set forth by Judge Wood in *Sinclair*,[4] McGucken misconstrues the purported "restrictions" placed on third parties via Instagram's Agreements. Opp. at 6-7. There is "no concern" about copyright violation with respect to these terms, because "the user who initially uploaded the content has already granted Instagram the authority to sublicense the use of 'public' content to users who share it." *Sinclair*, 2020 WL 1847841, at *4. ("These requirements pose no contradiction, and enable copyright holders to avoid unlicensed sharing of their work by choosing not to publicly post their copyrighted material on Instagram."). Nowhere do the cited "restrictions" impose a duty to "obtain additional consent from content owners" as McGucken's opposition suggests. Opp. at 4. In fact, the Embedding Policy even assures API users that they need not worry about attributing work to content creators because the interface automatically "gives the proper attribution by showing the username and linking back to the original content on Instagram." Embedding Policy at 1.

---

[4] As discussed *infra* at 6, the only portion of *Sinclair* that was reconsidered was Judge Wood's finding of an "express sublicense between Instagram and Sinclair." *Sinclair v. Ziff Davis, LLC*, No. 18-CV-790 (KMW), 2020 WL 3450136, at *2 (S.D.N.Y. June 24, 2020). The portion of the decision holding that the users of Instagram's API do not need consent from the content owner to embed using the API is still good law. *See Sinclair v. Ziff Davis, LLC*, No. 18-CV-790 (KMW), 2020 WL 1847841, at *4 (S.D.N.Y. Apr. 13, 2020).

Instagram makes clear that its Embedding Policy is *specifically* intended to help "broadcasters and publishers . . . share media" originally posted on Instagram for use in newsworthy articles and/or blogs. *See* Platform Policy at 1; *see also* Embedding Policy at 1 ("Embedding Instagram posts is an easy way to add Instagram photos and videos *to the stories you want to tell on articles or websites*.") (emphasis added). By contrast, no such permission is granted to publishers or other third parties desiring to use publicly posted Instagram content in advertisements. Indeed, in such circumstances, it is clear from Instagram's website that consent from the content owner would be required. *See*, *e.g.*, *Branded Content Ads*, INSTAGRAM, https://business.instagram.com/a/branded-content-ads (last visited July 9, 2020) ("*[w]ith creator permission*, business can use Ads Manager to promote branded content") (emphasis added).

The safeguards Instagram puts in place to ensure that advertisers do not use content without express authorization (literally making it impossible to do so without the content owners affirmatively *acting*, *i.e.*, "tagging" the business in its content) highlight its intention to allow broad reuse for the type of use at issue in this case. *Id.* (advertisers may only share branded user content if the content creator *actually tags* the advertiser). By contrast, the type of use made of the embedding API by Newsweek in connection with a newsworthy story was precisely the use blessed by Instagram.

## II. NONE OF THE PURPORTED AUTHORITY CITED BY PLAINTIFF IS RELEVANT TO THIS MOTION, LET ALONE "CONTROLLING"

McGucken's contention that Newsweek's "failure to advise" the Court of the recently issued *Sinclair* decision, as well as a blog post containing a quote from an alleged email to a writer

5

for the blog from an unidentified "Facebook spokesperson," constitutes a violation of Newsweek's counsel's duty of candor, is baseless. Opp. at 12.[5]

*First*, and perhaps most importantly, McGucken cannot point to *any* "controlling legal authority" adverse to Newsweek's position as articulated in its Motion. *See* N.Y. Rules of Prof. Conduct 3.3(a)(2) (stating that attorneys must only disclose "controlling legal authority"). "It is well established that, in this district, only decisions of the United States Supreme Court and Second Circuit Court of Appeals are binding on the district courts[,]" and therefore constitute "controlling legal authority." *Noe v. Ray Realty*, No. 19-CV-1455 (RA), 2020 WL 506459, at *3 (S.D.N.Y. Jan. 31, 2020) ("none of these cases are 'controlling' legal authority"); *see also TM Patents v. IBM*, 107 F. Supp. 2d 352, 353 (S.D.N.Y. 2000) ("Only decisions of the United States Supreme Court and the relevant Courts of Appeals are binding on a District Court.").

Any other decision – including decisions from other Courts of Appeals or other district courts within this district – serves only as persuasive authority. *See Megibow v. Clerk of U.S. Tax Court*, No. 04 Civ. 3321 (GEL), 2004 WL 1961591, at *4 n.5 (S.D.N.Y. Aug. 31, 2004), *aff'd*,

---

[5] McGucken's counsel's plea that the Court "remind Newsweek of its duty of candor" is particularly rich, given McGucken's counsel's conduct to date. *See* Dkt. No. 31 (court order identifying misrepresentations made by McGucken's counsel). McGucken attempts to rewrite history by mischaracterizing the nature of his Supplemental Opposition Brief and claiming that Newsweek was simply "displeased" with its contents. Opp. at 1. The Brief was patently improper, and the Court agreed. Dkt. No. 31. Furthermore, the contents of McGucken's supplemental letter to the Court is irrelevant, as the relief he sought therein was denied by the Court. Dkt. No. 33. Newsweek followed the Court's directive, and for the reasons set forth in its moving brief, it requests that the Court consider the instant Motion, and to the extent it would be helpful, allow Newsweek the opportunity to argue the Motion. Newsweek is not asking for further additional briefing as McGucken suggests (Opp. at 10), rather, it was explaining the context of why it was bringing the instant Motion. Mot. at 8-11.

Furthermore, counsel for Newsweek notes that, following Newsweek's submission of its moving brief on the instant Motion, counsel for McGucken contacted the undersigned attorneys, threatening them with sanctions "[i]f the motion is not withdrawn by close of business today." While Newsweek's counsel agrees that this case is likely to be "vigorously litigated," they would still like the opportunity to advocate for their client where the law justifies it (as is the case with the instant Motion), without being on the receiving end of overly aggressive threats by opposing counsel.

432 F.3d 387 (2d Cir. 2005) (noting that "decisions of other district courts, or even courts of appeals other than the Second Circuit, do not establish precedents binding on this Court"). *Sinclair*, at best, is persuasive authority, and the *ARS Technica* article is not even judicially noticeable, let alone "controlling."[6]

*Second*, even if the *Sinclair* decision *was* "binding" on this Court, it was in no way Newsweek's "primary authority" in its opening brief. Indeed, the only references to *Sinclair* made by Newsweek were with respect to the fact that Instagram users grant to Instagram "the authority to sublicense the use of 'public' content to users who share it[,]" Mot. at 4 (citing *Sinclair*, 2020 WL 1847841, at *4), and to explain the context and timing of McGucken's inappropriate Supplemental Opposition Brief. Mot. at 9, 10. With respect to the former reference to *Sinclair* by Newsweek, McGucken's assertion that "*Sinclair* in no longer citable authority" on this point is simply not true. Opp. at 11. The only portion reconsidered was whether Instagram exercised its right to grant a sublicence to Mashable. *Sinclair*, 2020 WL 1847841, at *4 (citing to the Order at *4-5). But the significant difference here is that the evidence of Instagram's exercise of its right to sublicense – *i.e.*, the Embedding Policy – was not annexed to the defendants' moving papers and brought before the court on that motion.[7] The *Sinclair* motion was also on a motion to dismiss, so the court was constrained to find that the sublicense issue was ambiguous based only on the evidence before her. Had the embedding policy been part of the record, arguably there may have been no ambiguity.

---

[6] Discussed *infra* at 8.

[7] The cases cited by McGucken to support his argument that reconsideration is inappropriate are inapposite. Opp. at 4. *See*, *e.g.*, *SimplexGrinnell LP v. Integrated Sys. & Power, Inc.*, 642 F. Supp. 2d 206 (S.D.N.Y. 2009) (motion denied where plaintiff tried to submit *additional* evidence after trial). Here, the Embedding Policy is judicially-noticeable, and was already before Court on the motion to dismiss.

7

*Third*, contrary to McGucken's assertion, Instagram has not taken a "public position" on sublicensing. Opp. at 11. Tellingly, McGucken declined to annex the cited *ARS Technica* article on which he relies for what he considers "controlling legal authority," and he cannot point to any judicially-noticeable sources to demonstrate Instagram's purported position. Instead, he provides a hyperlink to an article on third-party website *ARS Technica* wherein the author claims to quote selective excerpts from an "email . . . [sent by] a Facebook company spokesperson." Opp. at 9.[8] The email is never reproduced in its entirety.

The contents of the *ARS Technica* article, including the alleged quotation itself, are not judicially noticeable. *See Muller–Paisner v. TIAA*, 289 Fed.Appx. 461, 466 n. 5 (2d Cir. 2008) (taking judicial notice of defendant's website *only* for the fact of its publication); *Doron Precision Sys., Inc. v. FAAC, Inc.*, 423 F.Supp.2d 173, 179 n. 8 (S.D.N.Y.2006) ("For purposes of a 12(b)(6) motion to dismiss, a court may take judicial notice of information *publicly announced on a party's website, as long as the website's authenticity is not in dispute and it is capable of accurate and ready determination*") (emphasis added).

Troublingly, the article *does not even identify Instagram* as the platform the "Facebook company spokesperson" is referencing.[9] Opp. at 8. The spokesperson could very well be referencing Facebook's API. The "other publications" McGucken claims have also reported on "Instagram's position" just regurgitate the language from the *ARS Technica* article.[10] Tellingly,

---

[8] McGucken misrepresents to the Court throughout his opposition that the statements were made by "Instagram" about "its position." *Id.*

[9] The article cited by McGucken as controlling legal authority reads like a biased gossip column. The author writes: "'Wow. That is going to blow up the *Sinclair* case,' Cornell copyright scholar James Grimmelmann wrote after I shared Instagram's comment with him."

[10] *See*, *e.g.*, https://www.dpreview.com/news/1733626491/instagram-clarifies-itssublicense-terms-don-t-cover-embedded-images ("In a statement to Ars Technica . . . Facebook said"); DL Cade, *Instagram Says You Need Permission to Embed Someone's Public Photos*, PETA PIXEL, June 5, 2020,

8

no other independent sources have reported on any statements by Instagram about its API, and Instagram has not added any new language to its API instructions advising users of any direct permissions needed.

*Fourth*, even if Instagram had released an official, verifiable, non-hearsay statement regarding its embedding feature (which it did not), such a statement in 2020 about the intent of a 2013 contract would run contrary to the principle that "postcontractual subjective understanding of the terms of the agreement . . . [is] not probative as an aid to the interpretation of the contract." *Murray Walter, Inc. v. Sarkisian Bros. Inc.*, 183 A.D.2d 140, 146 (3d Dept. 1992); *see also Faulkner v. Nat'l Geographic Soc'y*, 452 F. Supp. 2d 369, 379 (S.D.N.Y. 2006).  Instagram has maintained, since 2013, via its publicly available website (including, but not limited to, through its Embedding Policy), that publishers may share publicly posted content via Instagram's API, and it enables such embedding without requiring individual consent from Instagram or from the content creator.  The language of the agreements themselves, as found on Instagram's website, are all the Court needs to revisit its prior decision.

---

https://petapixel.com/2020/06/05/instagram-says-you-need-permission-to-embed-someones-public-photos/ ("the photo sharing site told Ars Technica . . ."); Matt Southern, *Instagram Says Sites May Need Permission to Embed Photos*, SEARCH ENGINE JOURNAL, June 6, 2020, https://www.searchenginejournal.com/instagram-sayssites-may-need-permission-to-embed photos/371416/ ("according to a statement provided to Ars Technica . . ."); *Instagram says no more free pass for embedding posts*, ECONOMIC TIMES, June 8, 2020, https://economictimes.indiatimes.com/magazines/panache/instagram-says-nomore- free-pass-for-embedding-posts-sites-would-need-photographers-permission-to-usepics/articleshow/76256458.cms?from=mdr ("a Facebook company spokesperson told Ars Technica . . .").

## **CONCLUSION**

For the reasons stated herein and in its opening brief, Newsweek respectfully requests that its Motion for Reconsideration of the Court's June 1, 2020 Order be granted, or, in the alternative, that it be permitted to argue the issue before Your Honor.

Respectfully submitted,

Dated: July 10, 2020  
       New York, New York

COWAN, DeBAETS, ABRAHAMS & SHEPPARD LLP

By:   /s/Nancy E. Wolff  
     Nancy E. Wolff  
     Lindsay R. Edelstein  
     41 Madison Avenue, 38th Floor  
     New York, New York 10010  
     Tel: (212) 974-7474  
     Fax: (212) 974-8474  
     NWolff@cdas.com  
     LEdelstein@cdas.com

*Attorneys for Defendant Newsweek Digital LLC*