UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ELLIOT McGUCKEN,

                        Plaintiff,

              -v.-

NEWSWEEK LLC,

                      Defendant.

19 Civ. 9617 (KPF)

**OPINION AND ORDER**

---

KATHERINE POLK FAILLA, District Judge:

      By Opinion and Order dated June 1, 2020, the Court granted in part and denied in part Defendant Newsweek LLC's motion to dismiss Plaintiff Elliot McGucken's Amended Complaint. *See McGucken* v. *Newsweek LLC*, No. 19 Civ. 9617 (KPF), 2020 WL 2836427 (S.D.N.Y. June 1, 2020) ("*McGucken I*").[1] Defendant now moves, pursuant to Federal Rules of Civil Procedure 59(e) and 60(b) and Rule 6.3 of the Local Civil Rules for the United States District Courts for the Southern and Eastern Districts of New York, for partial reconsideration of the Court's June 1, 2020 Opinion and Order. Specifically, Defendant argues that the Court neglected to take judicial notice of Instagram's Embedding Policy, and that if the Court had done so, it would have found clear evidence of

---

[1]    Familiarity with the facts detailed, and the conclusions reached, in the Court's June 1, 2020 Opinion and Order is assumed. *See McGucken* v. *Newsweek LLC*, No. 19 Civ. 9617 (KPF), 2020 WL 2836427 (S.D.N.Y. June 1, 2020). Defendant's memorandum of law in support of its motion for reconsideration is referred to as "Def. Recon Br." (Dkt. #37); Plaintiff's opposition brief is referred to as "Pl. Recon. Opp." (Dkt. #39); and Defendant's reply brief is referred to as "Def. Recon. Reply" (Dkt. #40). Defendant's memorandum of law in support of its prior motion to dismiss is referred to as "Def. MTD Br." (Dkt. #21); Plaintiff's opposition brief to that motion is referred to as "Pl. MTD Opp." (Dkt. #26); and Defendant's reply brief is referred to as "Def. MTD Reply" (Dkt. #34). Finally, the Court refers to the exhibits attached the Declaration of Nancy E. Wolff as "Wolff Decl., Ex. [ ]" (Dkt. #22), and to the exhibits attached to the Declaration of Scott Alan Burroughs as "Burroughs Decl., Ex. [ ]" (Dkt. #27).

a sublicense between Instagram and Defendant. In the alternative, Defendant argues that it was not afforded a full opportunity to brief the issue of whether a sublicense existed. For the reasons set forth in the remainder of this Opinion, the Court denies Defendant's motion for reconsideration.

## DISCUSSION

### A. Motions for Reconsideration

This motion for reconsideration is brought pursuant to Federal Rule of Civil Procedure 59(e) and 60(b), as well as Local Rule 6.3. However, Rule 60(b) "applies only to final orders and judgments," *see Harris* v. *Millington*, 613 F. App'x 56, 58 (2d Cir. 2015) (summary order), and the Court's denial of Defendant's motion to dismiss was not a final order or judgment. Therefore, the Court will assess the motion for reconsideration solely pursuant to Federal Rule 59(e) and Local Rule 6.3.[2] Under both Rules, the moving party must "point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader* v. *CSX Transp. Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (internal citations omitted) (noting that the standard for granting motions for reconsideration is "strict"); *accord Van Buskirk* v. *United Grp. of Cos., Inc.*, 935 F.3d 49, 54 (2d Cir. 2019). "The decision to grant or deny a motion for reconsideration is within the sound discretion of the district court." *In re*

---

[2] "'The standards for relief' under Rule 59(e) are 'identical' to those for motions for reconsideration under Local Civil Rule 6.3." *Levitant* v. *Workers Comp. Bd. of N.Y.*, No. 16 Civ. 6990 (ER), 2019 WL 5853438, at *1 (S.D.N.Y. Nov. 8, 2019) (citing *Ramirez* v. *United States*, No. 05 Civ. 4179 (SAS), 2013 WL 247792, at *1 (S.D.N.Y. Jan. 22, 2013)).

2

*Optimal U.S. Litig.*, 813 F. Supp. 2d 383, 403 n.6 (S.D.N.Y. 2011) (quoting *Patterson* v. *United States*, No. 04 Civ. 3140 (WHP), 2006 WL 2067036, at *1 (S.D.N.Y. July 26, 2006)).

"A motion for reconsideration may not be used to advance new facts, issues[,] or arguments not previously presented to the Court, nor may it be used as a vehicle for relitigating old issues already decided by the Court." *Davidson* v. *Scully*, 172 F. Supp. 2d 458, 462 (S.D.N.Y. 2001) (citing *Shrader*, 70 F.3d at 257). "Such a motion should not be made to reflexively [ ] reargue those issues already considered when a party does not like the way the original motion was resolved." *In re Optimal*, 813 F. Supp. 2d at 387 (quoting *Makas* v. *Orlando*, No. 06 Civ. 14305 (DAB) (AJP), 2008 WL 2139131, at *1 (S.D.N.Y. May 19, 2008) (internal quotation marks omitted)). "Compelling reasons for granting a motion for reconsideration are limited to an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Abraham* v. *Leigh*, No. 17 Civ. 5429 (KPF), 2018 WL 3632520, at *1 (S.D.N.Y. July 30, 2018) (internal quotation marks omitted) (quoting *Virgin Atl. Airways, Ltd.* v. *Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)).

**B.    The Embedding Policy Does Not Alter the Court's Prior Analysis**

In its prior Opinion, the Court found that while Instagram's Terms of Use clearly granted Instagram a license to sublicense Plaintiff's publicly posted content, there was insufficiently clear language to support, in the context of a Rule 12(b)(6) motion, the existence of a sublicense between Instagram and

Defendant.  *See McGucken I*, 2020 WL 2836427, at *4-5.  Defendant now argues that this latter finding was error, and moves for reconsideration based on what it claims was an ignored express sublicense in Instagram's Embedding Policy.  (*See* Def. Recon. Br. 1, 2-8).

The Court finds that reconsideration is not warranted on such grounds.  The Court did not ignore the so-called Embedding Policy in its adjudication of Defendant's prior motion to dismiss.  The Court reviewed the webpage provided by Defendant and determined that it was irrelevant to the Court's analysis of Defendant's licensing theory.  This is primarily because, despite Defendant's assertions otherwise (*see* Def. Recon. Reply 3), the so-called Embedding Policy is not a policy at all (*compare* Wolff Decl., Ex. F at 2 (referring to Instagram's Privacy Policy as a "privacy policy"), *and id.*, Ex. G at 2 (titling Instagram's Platform Policy as a "Platform Policy"), *with id.*, Ex. I at 2 (showing that the purported embedding "policy" is really just a webpage entitled "Embedding")).

Instead, the reasonable reader would understand that what Defendant refers to as an Embedding Policy is merely a set of instructions for developers.[3]  The Embedding page begins by providing instructions for embedding content from Instagram on a website, then instructs the reader on how to embed content in WordPress, and finishes by providing specific guidance on embedding to developers.  (*See* Wolff Decl., Ex. I at 2 (explaining, for example,

---

[3]   Defendant itself has acknowledged that the Embedding page is nothing more than "step-by-step directions on how to do" embedding.  (*See* Def. MTD Br. 9 (titling a screenshot of the top of the Embedding page as "Embedding Instructions")).  Defendant's effort to recharacterize the Embedding page as a policy or agreement is therefore inconsistent with its prior arguments to the Court.

4

that "[t]o embed Instagram content you need to first visit the post on the web and get the embed code")). This is easily contrasted with, for example, Instagram's Platform Policy, which provides clear terms and rules for use. (*See id.*, Ex. G at 3-4 (admonishing users to not "attempt to build an ad network on Instagram," and explaining that users "represent and warrant that you satisfy all licensing, reporting, and payout obligations to third parties in connection with your app or website")). Additionally, unlike the Privacy Policy and the Platform Policy, the Embedding page is not incorporated by reference into any of Instagram's Terms of Use or other policies. (*See, e.g., id.*, Ex. E). Any analysis of the Embedding page makes apparent that the page is no more than a set of instructions, as opposed to a policy or agreement that establishes any entity's legal rights or obligations. Therefore, the Embedding page could not have, and does not, provide sufficient evidence of a sublicense to warrant granting Defendant's prior motion to dismiss.

Nevertheless, Defendant attempts to cloak the Embedding page with the vestments of an agreement by arguing that Instagram somehow grants users the right to embed publicly posted content via the Embedding page in exchange for users agreeing to abide by Instagram's Platform Policy. (*See* Def. Recon Br. 5). However, the Embedding page does not ask for, or even allow, users to agree to anything. All it does is provide a screenshot of a dialog that appears when a user wants to get an HTML embed code. (*See* Wolff Decl., Ex. I at 2). Because it is a screenshot of a dialog that appears elsewhere, it is clear that users are entering into no such bargain merely by reading the Embedding

5

page.  Moreover, while the screenshotted dialog does inform users that "[b]y using this embed, you agree to Instagram's API Terms of Use" (*id.*), that phrase alone simply does not address whether Instagram has granted users like Defendant a sublicense to use other users' content.

Even if the Embedding page were somehow an agreement — and the Court concludes that it is not — its language still not would not lead the Court to find that Instagram had granted Defendant a sublicense.  Defendant relies heavily on the following language as evidence of a sublicense (*see* Def Recon. Br. 3-4): "Embedding Instagram posts is an easy way to add Instagram photos and videos to the stories you want to tell on articles or websites.  You can embed your own content as well as photos and videos from public profiles." (Wolff Decl., Ex. I at 2).  But this language is not a sublicense; it is an explanation of what embedding technically allows users to do.  After all, if it were a sublicense, the language that users are able to embed their own content would be entirely extraneous, since there is no doubt that Instagram users have the right to use their own content.  Moreover, the language quoted above is more fairly construed as an explanation of what users can do after they have secured the necessary legal permissions from those whose content they wish to borrow.  Under the standards of a Rule 12(b)(6) motion, this language is not enough for the Court to find, as a matter of law, that an express or implied sublicense existed between Instagram and Defendant.

In short, Defendant cannot offer any "controlling decisions or data," *Shrader*, 70 F.3d at 257, that this Court overlooked in its prior Opinion.  The

Court did not address in detail the Embedding page because it was, and remains, largely irrelevant to the Court's analysis of the licensing issue. The Embedding page is no more than a set of instructions, despite Defendant's best effort to recharacterize it as an agreement with legal significance. There was thus no clear error in the Court's prior Opinion warranting reconsideration. Defendant's motion is denied.

### C. Defendant Has Had A Full Opportunity to Address the Sublicense Issue

Defendant argues, in the alternative, that it was given short shrift in its ability to address the sublicensing issue during its motion to dismiss, and therefore it should be given a further opportunity to brief the issue. (*See* Def. Recon. Br. 8-11). The Court understands that Defendant's briefing was derailed slightly by Plaintiff's supplemental brief. However, the Court believes that Defendant has been given ample opportunity to put forth its licensing theory — first in its opening brief (*see* Def. MTD Br. 1-2, 6-9, 12-14); then in its reply brief (*see* Def. MTD Reply 3-6); and now in its two briefs supporting its motion for reconsideration (*see generally* Def. Recon. Br, Def. Recon. Reply). The Court does not require further briefing on this subject, and is confident that further briefing would not alter the Court's prior conclusion. *See Corines v. Am. Physicians Ins. Tr.*, 769 F. Supp. 2d 584, 593 (S.D.N.Y. 2011) ("A motion for reconsideration is not … 'a second bite at the apple' for a party dissatisfied with a court's ruling."). As with the above, the Court will not grant Defendant's motion on grounds that it was unable to brief the issue sufficiently.

### D. The Court Warns Plaintiff's Counsel Against Further Inflammatory Conduct

Although it is resolving the instant motion in Plaintiff's favor, the Court has become increasingly concerned with Plaintiff's counsel's conduct throughout the course of this litigation. The Court has already expressed its unhappiness regarding counsel's supplemental opposition brief in the prior motion to dismiss. (*See* Dkt. #31). However, the Court has also noticed a pattern of inflammatory conduct. This was first made apparent by counsel's decision to attach to his opposition declaration a 16-page article that served no purpose other than to cast aspersions on Defendant's business. (*See* Burroughs Decl., Ex. 1). Now, counsel has devoted two pages of the opposition brief to accusing Defendant's counsel of violating their ethical obligations (*see* Pl. Recon. Opp. 11-13), and has even threatened to move for sanctions (*see* Def. Recon. Reply 6 n.5). Defendant's counsel's alleged violations? Not informing the Court of hearsay statements in various publications and citing to Judge Wood's prior decision in *Sinclair* v. *Ziff Davis, LLC*, No. 18 Civ. 790 (KMW), 2020 WL 1847841 (S.D.N.Y. Apr. 13, 2020), without expressly informing the Court that the decision had since been reconsidered. (*See* Pl. Recon. Opp. 11-13). However, there is nothing in the articles Plaintiff references that needed to be brought to the Court's attention. More importantly, Defendant's counsel had no obligation to inform the Court that Judge Wood had reconsidered her original decision in *Sinclair*, both because Defendant's counsel did not cite to that decision in any misleading manner and because *Sinclair*, in any event, is not "controlling legal authority." N.Y. Rules of

Prof'l Conduct 3.3(a)(2). Any effort to seek sanctions on either ground would be ill-advised.

This action will now be proceeding to discovery, during which time it is possible disputes will arise between the parties. While it should go without saying that counsel should zealously advocate on behalf of their clients, the Court is warning Plaintiff's counsel now that it will not tolerate further behavior like the above. The Court expects all counsel appearing before it to comport themselves like the professionals they are.

## CONCLUSION

For the reasons set forth above, Defendant's motion for reconsideration is DENIED. The Clerk of Court is directed to terminate the motion at docket entry 36.

On or before **November 9, 2020**, Defendant shall file a responsive pleading. On or before **November 16, 2020**, the parties shall submit a proposed Case Management Plan, as well as the joint letter contemplated by that plan.

SO ORDERED.

Dated:     October 19, 2020
           New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge