**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| ELLIOT MCGUCKEN, an individual,<br><br>Plaintiff,<br><br>v.<br><br>NEWSWEEK LLC, a New York Limited Liability Company; and DOES 1-10, inclusive,<br><br> Defendants. | Civil Action No.: 1:19-cv-09617-KPF |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR SUMMARY ADJUDICATION

i

# TABLE OF CONTENTS

I.    INTRODUCTION.................................................................................................. 1

II.   STATEMENT OF FACTS ................................................................................... 1

III.  LEGAL STANDARD AND PRIOR COURT ORDER………………………………5

IV.   ARGUMENT ........................................................................................................ 6

   A.   McGucken owns a valid copyright in the Subject Photograph. ......................................... 6

   B.   Newsweek copied McGucken's original work……..…………………………………6

   C.   Newsweek's infringement was willful…………………………………………………..7

   D.   Newsweek's defenses fail…………………………………………………………10

      *1.   Newsweek's display of the Subject Photograph violates Section 106.* ........................... 10

      *2.   Instagram did not grant Newsweek a sublicense.* ............................................................. 12

      *3.   Newsweek obtained no other license to display the Subject Photograph.* ....................... 14

      *4.   Instagram's terms do not authorize Newsweek's copying.* ............................................... 14

      *5.   Newsweek breached Instagram's requirement to obtain author consent.* ......................... 15

      *6.   Newsweek cannot carry its burden in establishing "fair use"* ......................................... 17

         a.   The "purpose and character" of the use militates against a finding of fair use. ........... 18

            i.   Newsweek used the Subject Photograph for the same purpose as McGucken…….19

            ii.   Newsweek's bad faith weighs against the first factor……………………….……21

            iii.   Newsweek's commercial use weighs against "fair use"…………………………21

         b.   The creative nature of the Photograph favors McGucken........................................... 22

         c.   Newsweek displayed McGucken's entire Subject Photograph................................... 22

         d.   Newsweek cannot establish that its infringement did not result in market harm......... 23

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR SUMMARY ADJUDICATION

V.     SUMMARY ADJUDICATION IS PROPER....................................................................... 25

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR SUMMARY ADJUDICATION

# **TABLE OF AUTHORITIES**

Page(s)

Cases

*Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*,
   992 F.3d 99 (2d Cir. 2021) ........................................................ 20, 22, 23, 24

*APL Microscopic, LLC v. United States*,
   144 Fed. Cl. 489 (2019) ................................................................... 10, 11

*Assoc. Press v. Meltwater U.S. Holdings, Inc.*,
   931 F.Supp.2d 537 (S.D.N.Y. 2013) ...................................................... 13

*Authors Guild v. Google, Inc.*,
   804 F.3d 202 (2d Cir. 2015) ................................................................... 19

*Authors Guild, Inc. v. HathiTrust*,
   755 F.3d 87 (2d Cir.2014) ...................................................................... 18

*Baraban v. Time Warner, Inc.*,
   2000 WL 358375 (S.D.N.Y. Apr. 6, 2000) .............................................. 22

*Barcroft Media, Ltd. v. Coed Media Grp.*, LLC,
   297 F. Supp. 3d 339 (S.D.N.Y. 2017) ............................................... 13, 20

*Basic Books, Inc. v. Kinko's Graphics Corp.*,
   758 F.Supp. 1522 (S.D.N.Y.1991) ........................................................... 7

*Beastie Boys v. Monster Energy Co.*,
   66 F. Supp. 3d 424 (S.D.N.Y. 2014) ........................................................ 9

*Beyer v. Cty. of Nassau*,
   524 F.3d 160 (2d Cir. 2008) ..................................................................... 5

*BWP Media USA, Inc. v. Gossip Cop Media, Inc.*,
   196 F. Supp. 3d 395 (S.D.N.Y. 2016) .............................. 8, 17, 19, 20

*Campbell v. Acuff-Rose Music, Inc.*,
   510 U.S. 569, 114 S. Ct. 1164 (1994) .................................................... 23

*Candid Prods., Inc. v. Int'l Skating Union*,
   530 F.Supp. 1330 (S.D.N.Y. 1982) ........................................................ 13

*Castle Rock Entm't, Inc. v. Carol Pub. Grp., Inc.*,
   150 F.3d 132 (2d Cir. 1998) .............................................................. 6, 21

*Fallaci v. New Gazette Literary Corp.*,
   568 F. Supp. 1172 (S.D.N.Y. 1983) ......................................................... 9

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
   499 U.S. 340, 111 S.Ct. 1282 (1991) ....................................................... 6

*Fendi Adele S.R.L. v. Filene's Basement, Inc.*,
   696 F.Supp.2d 368 (S.D.N.Y.2010) ......................................................... 7

*Fendi Adele, S.R.L. v. Ashley Reed Trading, Inc.*,
   507 F. App'x 26 (2d Cir. 2013).................................................................. 7

iv

*Ferdman v. CBS Interactive Inc.*,
  342 F. Supp. 3d 515 (S.D.N.Y. 2018) .................................................................. 20

*Fitzgerald Pub. Co. v. Baylor Pub. Co.*,
  807 F.2d 1110 (2d Cir.1986) ........................................................... 7, 8, 21

*Fox News Network, LLC v. Tveyes, Inc.*,
  883 F.3d 169 (2d Cir. 2018) ......................................................................... 19

*Free Speech Sys., LLC v. Menzel*,
  390 F. Supp. 3d 1162 (N.D. Cal. 2019) ....................................................... 11

*Gallo v. Prudential Residential Servs., Ltd. P'ship*,
  22 F.3d 1219 (2d Cir. 1994) ............................................................................. 5

*Gardner v. Nike, Inc.*,
  279 F.3d 774 (9th Cir. 2002) ........................................................................ 13

*Goldman v. Breitbart News Network, LLC*,
  302 F.Supp.3d 585 (S.D.N.Y. 2018) ............................................................ 11

*Guilbert v. Gardner*,
  480 F.3d 140 (2d Cir. 2007) ............................................................................. 5

*Hamil Am. Inc. v. GFI*,
  193 F.3d 92 (2d Cir. 1999) ............................................................................... 6

*Harris v. Simon & Schuster, Inc.*,
  646 F. Supp. 2d 622 (S.D.N.Y. 2009) ......................................................... 15

*Infinity Broad. Corp. v. Kirkwood*,
  150 F.3d 104 (2d Cir.1998) ........................................................................... 23

*Island Software & Computer Serv., Inc. v. Microsoft Corp.*,
  413 F.3d 257 (2d Cir.2005) ............................................................................. 7

*Joseph Martin, Jr., Delicatessen, Inc. v. Schumacher*,
  52 N.Y.2d 105, 436 N.Y.S.2d 247, 417 N.E.2d 541 (1981) ...................... 13

*Kanakos v. MX Trading Corp.*,
  1981 WL 1377 (S.D.N.Y. Sept. 16, 1981) ................................................... 15

*Kienitz v. Sconnie Nation LLC*,
  766 F.3d 756 (7th Cir. 2014) ........................................................................ 20

*Leader's Inst., LLC v. Jackson*,
  2017 WL 5629514 (N.D. Tex. Nov. 22, 2017) ..................................... 11, 12

*McGucken v. Newsweek LLC*,
  464 F. Supp. 3d 594 (S.D.N.Y. 2020) ...................................................Passim

*Michael Grecco Prods., Inc. v. Valuewalk, LLC*,
  345 F. Supp. 3d 482 (S.D.N.Y. 2018) ..................................................... 18, 23

*Mint, Inv. v. Amad*,
  2011 WL 1792570 ............................................................................................. 6

*Muhammad-Ali v. Final Call, Inc.*,
  832 F.3d 755 (7th Cir. 2016) ........................................................................ 12

*New York v. United Parcel Serv., Inc.*,
  253 F. Supp. 3d 583 (S.D.N.Y. 2017) ............................................................ 7

*Otto v. Hearst Commc'ns, Inc.*,
  345 F. Supp. 3d 412 (S.D.N.Y. 2018) ............................................ 18, 19, 21, 24

*Peer Int'l Corp. v. Luna Recs., Inc.*,
  887 F. Supp. 560 (S.D.N.Y. 1995) ............................................................ 9, 10
*Robinson v. Random House, Inc.*,
  877 F. Supp. 830 (S.D.N.Y. 1995) ................................................................ 21
*Sands v. What's Trending, Inc.*,
  2021 WL 694382 (S.D.N.Y. Feb. 23, 2021) .................................................. 23
*SHL Imaging, Inc. v. Artisan House, Inc.*,
  117 F. Supp. 2d 301 (S.D.N.Y. 2000) ............................................................ 14
*Sinclair v. Ziff Davis, LLC*,
  2020 WL 3450136 (S.D.N.Y. June 24, 2020) .......................................... 12, 14
*SmithKline Beecham Consumer Healthcare, L.P. v. Watson Pharms., Inc.*,
  211 F.3d 21 (2d Cir. 2000) ............................................................................. 14
*Sony Corp. of Am. v. Universal City Studios*, Inc.,
  464 U.S. 417, 104 S. Ct. 774 (1984) ............................................................. 22
*Specht v. Netscape Commc'ns Corp.*,
  306 F.3d 17 (2d Cir. 2002) ............................................................................. 17
*Spinelli v. Natl Football League*,
  903 F.3d 185 (2d Cir. 2018) ........................................................................... 12
*Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*,
  756 F.3d 73 (2d Cir. 2014) ............................................................................. 19
*Sygma Photo News, Inc. v. High Soc. Magazine, Inc.*,
  778 F.2d 89 (2d Cir.1985) ................................................................................ 7
*TCA Television Corp. v. McCollum*,
  839 F.3d 168 (2d Cir. 2016) ........................................................................... 24
*Twin Peaks Prods., Inc. v. Publications Int'l, Ltd.*,
  996 F.2d 1366 (2d Cir. 1993) ......................................................................... 19
*Unicolors, Inc. v. Urban Outfitters, Inc.*,
  853 F.3d 980 (9th Cir. 2017) ............................................................................ 7
*Vian v. Carey*,
  1993 WL 138837 (S.D.N.Y. Apr. 23, 1993) .................................................. 13
*Vieth v. Jubelirer*,
  541 U.S. 267, 124 S.Ct. 1769, (2004) ............................................................ 12
*Von Der Au* v. *Michael G. Imber, Architect, PLLC*,
  2021 WL 1131719 (W.D. Tex. Mar. 24, 2021) ......................................... 24, 25
*Ward v. Nat'l Geographic Soc.*,
  208 F. Supp. 2d 429 (S.D.N.Y. 2002) ....................................................... 12, 17
*Weissmann v. Freeman*,
  868 F.2d 1313 (2d Cir.1989) ........................................................................... 22
*Worldwide Church of God v. Philadelphia Church of God, Inc.*,
  227 F.3d 1110 (9th Cir. 2000) ........................................................................ 22
*Yi Fu Chen v. Spring Tailor, LLC*,
  2015 WL 3953532 (S.D.N.Y. June 29, 2015) .................................................. 5
*Yurman Design, Inc. v. PAJ, Inc.*,
  262 F.3d 101 (2d Cir.2001) .............................................................................. 9

Statutes

17 U.S.C. § 101 .................................................................................................................. 11, 12
17 U.S.C. § 106 ......................................................................................................... 9, 10, 12, 20
17 U.S.C. § 107 ...................................................................................................................... 18
U.S. Const. art. I, § 8, cl. 8 .................................................................................................... 18

Rules

Fed. R. Civ. P. 56(a) .............................................................................................................. 5

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR SUMMARY ADJUDICATION

<u>**MEMORANDUM OF LAW IN SUPPORT OF MOTION**</u>

**I.     INTRODUCTION**

Defendant Newsweek Digital LLC ("Newsweek") committed willful copyright infringement by displaying Dr. Elliot McGucken's original photography on its advertisement-saturated website.  And this infringement was willful, occurring after McGucken declined to grant to Newsweek a license related to his work, and continuing for months after this lawsuit was filed. Summary adjudication of the issues of liability and willfulness are appropriate.

**II.     STATEMENT OF FACTS**

McGucken is an accomplished photographer whose work has been displayed in myriad publications and exhibitions, including *Nikon-Photo Magazine*, *Smithsonian Magazine*, *National Parks Magazine*, and *Daily Mail*. McGucken Decl. ¶1. In 2019, McGucken created an original photograph depicting his perspective of a Death Valley earthscape (the "Subject Photograph"). Id., **Ex. 1**. He traveled at his own expense to Death Valley to create this stunning work, which he then published on his official Instagram account on March 13, 2019. Id.; ¶5. He duly registered the Subject Photograph with the Copyright Office. Id., ¶2; **Ex. 2**.

Newsweek, after accessing the Subject Photograph through McGucken's Instagram account, contacted McGucken via Instagram's platform requesting a license to use the Subject Photograph. Id., ¶3, **Ex. 3**. McGucken declined to grant this license to Newsweek, yet Newsweek forged ahead with displaying and publishing McGucken's proprietary Subject Photograph as key art for a threadbare article that it displayed on its website surrounded by commercial advertising (the "Infringing Article"). Id., ¶4, **Ex. 4**. Newsweek contends that it displayed the Subject Photograph in its Infringing Article using an "embedding" process by which the Subject Photograph's digital file is hosted on another platform but visible in its entirety and without any visible difference to Newsweek's site's viewers. Id. Newsweek admits that its copy of the

Subject Photograph was an "exact" reproduction in its entirety with no alterations or modifications. Burroughs Decl. ¶12, **Ex. 13**, 186:18-25. The Infringing Article, along with McGucken's Subject Photograph, also included quotes that Newsweek copied from the publication *SF Gate* (to which McGucken licensed the Subject Photograph) and McGucken's caption for the work. Newsweek cannot identify any background research that Newsweek conducted for the Infringing Article regarding McGucken, his work, or the Subject Photograph. Burroughs Decl. ¶12, **Ex. 14**, 80:1-23. And Newsweek concedes that there is no "criticism" of, or "commentary" about, the Subject Photograph in the Infringing Article, the text of which reveals no original content of substance. Id., 106:14-107:13.

Newsweek can proffer no evidence to establish it obtained a license from McGucken, Instagram, or any other party that authorized it to display the Subject Photograph as key art for the Infringing Article. Burroughs Decl. ¶¶7, 12, **Ex. 13**, 201:18-202:14. In fact, Newsweek admitted that it has *never* communicated directly with Instagram or its owner, Facebook, regarding a license or any other issue. Id. at 209:2-8. Newsweek did, however, produce documents reflecting an internal policy that *precludes* the copying of copyrighted works from social media sites like Instagram. Burroughs Decl. ¶11; **Ex. 12** ("Do not use images without requesting permission[…]").

Instagram, for its part, has publicly stated that it does not grant sublicenses to sites like Newsweek, and its published terms and requirements make clear that a site like Newsweek must obtain the consent of artists like McGucken before exploiting their work. Burroughs Decl. ¶6; **Exs. 8-11**. Newsweek's editorial team admitted that it was unaware of Instagram's public statements confirming that sites were not permitted to embed Instagram content without consent of the author, and said team has not read Instagram's embedding terms or done any due diligence to ascertain what is permissible under same. Burroughs Decl. ¶12, **Ex. 14**, 17:9-18; 19:4-11.

Unsurprisingly, Newsweek violated a number of Instagram's terms and requirements by displaying McGucken's work without consent. Burroughs Decl. ¶¶7-9; **Exs. 9-10**; see Section IV(D), *infra*. And, despite this lawsuit, this Court's (and others') rulings on the issue, and Instagram's public statements and terms of use, Newsweek *today* persists in its practice of displaying work copied from Instagram without the artist's consent. Burroughs Decl. ¶12, **Ex. 14**, 30:7-31:3 ("Q. And that's your process even today at Newsweek; correct? A. Yes. We -- yeah, we do that.").

On April 3, 2019, McGucken's counsel sent to Newsweek a cease-and-desist demand regarding the Infringing Article. Burroughs Decl. ¶3; **Ex. 5**. It is unclear whether this demand was received because Newsweek's email system returned a response stating that the email address provided on Newsweek's site, *viz*., copyright@newsweek.com, included a "permanent error." Burroughs Decl. ¶¶4, 16; **Exs. 6, 17.**  Counsel sent the cease-and-desist demand to this address two additional times and both times received this same "permanent error" response from Newsweek. Id**.** Notably, this is the very email account provided by Newsweek on its website to use in regard to copyright issues. Id. In any event, Newsweek did not remove the Subject Photograph from its site at or around this time. Id.

This case was filed on October 17, 2019. See Dkt. #1. Despite the clear evidence of copying set forth in the demand letter and the complaint, and the protestations of the artist, Newsweek *still* refused to remove the Subject Photograph from its website. It was not until around January 21, 2020, more three months after the filing of this case, that Newsweek finally relented and removed the Subject Photograph from the Infringing Article. Burroughs Decl. ¶12, **Ex. 13**, 174:5-9.

This refusal to acknowledge artists' rights accords with Newsweek's business plan, which also requires its staff to publish on its website up to 200 articles *per day* and with minimal

PLAINTIFF'S MEMORANDUM OF LAW

oversight. Burroughs Decl. ¶12, **Ex. 14**, 45:9-23. The average time it takes Newsweek's writers to aggregate the content for these articles is approximately two hours. Id. This alone makes clear that Newsweek, the once-esteemed news publication, now does little more than aggregate and misappropriate the work of others. Burroughs Decl. ¶5, **Ex. 7** (Newsweek "repurpos[es] the work of others...and package[es] it as its own[,]" which is almost the definition of copyright infringement.).

Newsweek certainly does not employ working photographers, instead copying photography from social media platforms and third parties. Burroughs Decl. ¶12, **Ex. 13**, 18:2-6. And Newsweek's policies regarding the use of third-party photographs were (a) written based solely on a photo editor's "personal experience"; (b) not vetted by counsel; (c) written without reviewing or applying Instagram's terms; and (d) drafted without reference to embedding. Burroughs Decl. ¶12, **Ex. 13**, 32:9-13; 72:11-25; 26:11-24. Newsweek's position during deposition in this case, however, was that it did not require its employees to obtain artist consent to embed photography taken from Instagram on its site. Id., 126:15-16. Despite this, Newsweek testified, in statements that often conflicted, that consent was required to use others' content: **Q**. Under your policy, what is the result when Newsweek requests permission but doesn't receive it from a third-party creator? **A**. We typically would not use it. Id., 32:4-33:2.

Whatever its actual position on the use of third-party content, Newsweek does not take any other steps to ensure that artists' copyrights are not being impinged when it exploits their work, such as conducting "fair use" analyses at the time of publication. Burroughs Decl. ¶12, **Ex. 14**, 49:7-13. Newsweek here provided no evidence of any "fair use" analysis related to the Infringing Article. If such evidence existed, it may have been in the Infringing Article's archival logs, which typically include a Newsweek article's notes, sources, edits, dates of editing, and so on, but Newsweek's editor testified that when he went to review the Infringing Article's logs in

connection with this case, he discovered that they had been *deleted or were no longer available*. Id., 60:6-15; 108:4-11. Newsweek's editor testified that this was the *only* time that he could recall being unable to access an article's archival logs. Id., 141:3-11.

### III.    LEGAL STANDARD AND PRIOR COURT ORDER

The Court may summarily adjudicate issues where "there is no genuine dispute as to any material fact" and that a party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." *Beyer v. Cty. of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008), citing *Guilbert v. Gardner*, 480 F.3d 140, 145 (2d Cir. 2007). Thus, when "no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994) (citation omitted). And "that opposing parties assert competing versions of the same event is not in itself sufficient to preclude summary judgment" unless it "lead[s] to a different legal outcome." *Yi Fu Chen v. Spring Tailor, LLC*, 2015 WL 3953532, at *4 (S.D.N.Y. June 29, 2015) (citation omitted).

The Court previously rejected Newsweek's motion to dismiss, finding at that stage that Newsweek had failed to place "any evidence before the Court of a sublicense between Instagram and Defendant[]" and that Newsweek's copying of McGucken's work was not "fair use as a matter of law." See *McGucken v. Newsweek LLC*, 464 F. Supp. 3d 594, 603, 609 (S.D.N.Y. 2020), reconsideration denied, 2020 WL 6135733 (S.D.N.Y. Oct. 19, 2020). After an opportunity to develop such evidence, Newsweek is still wholly unable to produce same. Indeed, Newsweek *never even contacted* Instagram to inquire as to whether a sublicense existed, most likely because it knew no license existed. This motion should be granted.

## IV.    ARGUMENT

Newsweek committed copyright infringement when it exploited McGucken's Subject Photograph without consent as key art for the Infringing Article. To establish infringement, McGucken can and will prove the two required elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co*., 499 U.S. 340, 361, 111 S.Ct. 1282 (1991).

### A.    McGucken owns a valid copyright in the Subject Photograph

As to the first element, a "certificate of registration from the United States Register of Copyrights constitutes prima facie evidence of the valid ownership of a copyright." *Mint, Inc. v. Amad*, 2011 WL 1792570, at *2, quoting *Hamil Am. Inc. v. GFI*, 193 F.3d 92, 98 (2d Cir. 1999). McGucken has produced his certificate of registration for the Subject Photograph, which establishes his ownership. McGucken Decl. ¶4, **Ex. 2**. He has also proffered uncontroverted testimony that he created and owns the Subject Photograph. See McGucken Decl. ¶3; **Ex. 1**. This prong is met.

### B.    Newsweek copied McGucken's original work

The second element is also satisfied because McGucken has established that Newsweek accessed and "actually copied" his work. *Castle Rock Entm't, Inc. v. Carol Pub. Grp., Inc*., 150 F.3d 132, 137 (2d Cir. 1998). And Newsweek's copyright was unlawful given that "substantial similarity" exists between the Subject Photograph incorporated in Newsweek's Infringing Article and the "protectable elements" of McGucken's Subject Photograph. Id. A a comparison of Exhibit 1 and Exhibit 4 makes clear that Newsweek published an identical copy of McGucken's Subject Photograph which captured its lighting, angle, composition, and all other creative aspects. McGucken Decl. ¶7. And Newsweek admitted during deposition that its copying was verbatim. Burroughs Decl. ¶12, **Ex. 13**, 186:18-25. This prong is met.

### C.    Newsweek's infringement was willful

Newsweek's infringement was willful.[1] The Second Circuit defines "willfulness" to mean "(1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of 'reckless disregard' for, or 'willful blindness' to, the copyright holder's rights." *Island Software & Computer Serv., Inc.,* 413 F.3d at 263. Willfulness may also be found even when an infringer had only "constructive knowledge" of the infringement, *Fitzgerald Pub. Co. v. Baylor Pub. Co*., 807 F.2d 1110, 1115 (2d Cir.1986); "should have known" that his actions constituted infringement, *Basic Books, Inc. v. Kinko's Graphics Corp*., 758 F.Supp. 1522, 1543 (S.D.N.Y.1991), or "fail[ed] to investigate because [he] was afraid of what the inquiry would yield[.]" *Fendi Adele S.R.L. v. Filene's Basement, Inc*., 696 F.Supp.2d 368, 393 (S.D.N.Y.2010). Here, at a minimum, Newsweek recklessly disregarded McGucken's rights, had constructive knowledge of its infringement, should have known its conduct was infringing, and "failed to investigate" by, inter alia, ignoring Instagram's embedding terms.

And "reckless disregard" should be based on the knowledge and experience of Newsweek as an entity, as the general rule in the Second Circuit is that "[a] corporation[2] is considered to have acquired the collective knowledge of its employees." *New York v. United Parcel Serv., Inc*., 253 F. Supp. 3d 583, 670 (S.D.N.Y. 2017) (Forrest, J.).[3] Finally, as this Court

---

[1] Willfulness may be established on summary judgment, so long as the court draws all reasonable inferences in the defendant's favor. See, e.g., *Fendi Adele, S.R.L. v. Ashley Reed Trading, Inc*., 507 F. App'x 26, 31 (2d Cir. 2013); see also *Island Software & Computer Serv., Inc. v. Microsoft Corp*., 413 F.3d 257, 263-264 (2d Cir.2005).

[2] When, as here, the defendant is a corporation, it is liable for acts of willful infringement committed by its employees within the scope of their employment or for its benefit. See *Sygma Photo News, Inc. v. High Soc. Magazine, Inc*., 778 F.2d 89, 92 (2d Cir.1985)(citation omitted).

[3] Newsweek, a publication that has been in business for over 80 years, is chargeable with the knowledge that a commercial publication cannot misappropriate the creative work of others without consent. See *Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980, 992 (9th Cir. 2017) ("a party may act recklessly by refusing, as a matter of policy, to even investigate or attempt to determine whether particular [works] are subject to copyright protections.").

has acknowledged, "a court need not find that an infringer acted maliciously to find willful infringement." *BWP Media USA, Inc. v. Gossip Cop Media, Inc.*, 196 F. Supp. 3d 395, 411 (S.D.N.Y. 2016), citing *Fitzgerald Pub. Co.*, 807 F.2d at 1115 (remaining citations omitted).

Here, Newsweek had knowledge that McGucken created the Subject Photograph and that he had declined to grant Newsweek a license to exploit the Subject Photograph. Newsweek's internal policies required Newsweek to obtain McGucken's consent. Burroughs Decl. ¶11, **Ex. 12**. And Instagram's terms required Newsweek to comply with McGucken's restrictions. Burroughs Decl. ¶¶7-9, **Exs. 9-11**. Indeed, Instagram's terms (which Newsweek admits it had not read) state that Newsweek was "solely responsible for making use of User Content in compliance with owners' requirements or restrictions." See Burroughs Decl. ¶8, **Ex. 10**, Instagram Terms of Use, ¶A, 11. Not only did Newsweek fail to comply with McGucken's requirements, it exploited his work despite the fact that he declined to grant a license. Newsweek's own policies, which recognize that Newsweek needs permission to use third-party content, and specifically prohibit using images from social media without express permission from the image creator, were also violated by Newsweek's display of McGucken's work. Burroughs Decl. ¶¶11, 12, **Exs. 12** ("Do not use images without requesting permission: Do not use photos from 'free stock sites', screen grabs from videos or social media, unless you have express permission from the image creator"), **13**, 32:14-23; Burroughs Decl. ¶ 11, **Ex. 12.**

Newsweek published and displayed McGucken's Subject Photograph with knowledge that it had failed to gain McGucken's consent, and while also in knowing violation of its own internal policies and Instagram's terms. McGucken Decl. ¶ 5, **Ex. 3**. And it benefitted from its willful infringement in the form of increased advertising revenue and page views. Burroughs Decl. ¶ 15, **Ex. 16**. This was, at the very least, "reckless disregard" for the artist's rights and "willful blindness" to the infringement.

Newsweek also failed to conduct any type of "fair use" analysis at the time it exploited McGucken's work. Burroughs Decl. ¶12, **Ex. 13**, 179:17-180:8. And it failed to read Instagram's terms before embedding photography taken from Instagram. Indeed, Newsweek conceded that it conducted no due diligence or analysis before publishing the infringing content, and this "failure to investigate the possibility of intellectual property violations" suffices for a finding of infringement, especially when considered in concert with the other indicia of willfulness set forth herein. *Beastie Boys v. Monster Energy Co.*, 66 F. Supp. 3d 424, 442 (S.D.N.Y. 2014), citing *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 113 (2d Cir.2001) (finding willful infringement based on defendant's failure to investigate).

As a separate basis for willfulness, Newsweek *continued* to display and distribute, in violation of 17 U.S.C. §§106(2)&(5), McGucken's Subject Photograph for an unreasonable time after receiving notice of the infringement. Courts do not hesitate to find willful infringement when the infringer "continued to [infringe], even some several months after this action was commenced." *Peer Int'l Corp. v. Luna Recs., Inc.*, 887 F. Supp. 560, 568 (S.D.N.Y. 1995). This is particularly true where, as here, the infringer is in the business of publishing content. See *Fallaci v. New Gazette Literary Corp.*, 568 F. Supp. 1172, 1173 (S.D.N.Y. 1983)("as the publisher of a copyrighted newspaper, the defendant was or should have been aware that its unauthorized republication of a Washington Post article constituted copyright infringement.").

McGucken provided notice of the instant infringement to Newsweek by email and per Newsweek's putative copyright policy[4] on April 3, 2019. And it is undisputed that this lawsuit was filed on October 17, 2019. Yet Newsweek did not remove the Subject Photograph from its website until on or around January 21, 2020, months after McGucken initiated this lawsuit.

---

[4] This notice was sent three times to "copyright@newsweek.com," the address provided for such notices by Newsweek at https://www.newsweek.com/copyright. Each time it triggered a "permanent error" response.

PLAINTIFF'S MEMORANDUM OF LAW

Burroughs Decl. ¶¶3, 12, **Exs. 5** & **13** at 174:5-9. In other words, Newsweek "continued to [infringe], even some several months after this action was commenced." *Peer Int'l Corp.*, 887 F. Supp. 560, 568.[5] This is willful infringement.

### D.     Newsweek's defenses fail

Newsweek violated the Copyright Act, regardless of the methods it used to copy and display the Subject Photograph. Each defense is addressed and disposed of below.

### 1.     Newsweek's display of the Subject Photograph violates Section 106

Newsweek argues that it should not be liable for displaying McGucken's Subject Photograph on the Newsweek website because it displayed said work to its viewers by embedding McGucken's Subject Photograph as opposed to directly uploading the photograph's digital file to its website. There is no merit to this contention.

Under the Copyright Act, creators are entitled to several exclusive rights, including the right to display their works. 17 U.S.C. § 106. "Public display occurs, and § 106(5) is violated, each time an individual computer user accesses the relevant page on a website that displays the protected work." *APL Microscopic, LLC v. United States*, 144 Fed. Cl. 489, 498 (2019) (citations and quotations omitted); see also 17 U.S.C. § 106(5). This "public display" occurs on the infringer's website even when the photograph is displayed to a viewer of the website "embedding" an image from a third-party website. Indeed, "when [a] defendant[] cause[s] the embedded [post] to appear on [its] websites, [its] actions violate[] plaintiff's exclusive display right; the fact that the image was hosted on a server owned and operated by an unrelated third party [] does not shield them from this result." *Goldman v. Breitbart News Network, LLC*, 302 F.Supp.3d 585, 586 (S.D.N.Y. 2018) (emphasis added). Here, Newsweek conceded at deposition

---

[5] And Newsweek, at least of the date of its deposition continues to copy photography from Instagram without the consent of the artist. Burroughs Decl. ¶12, **Ex. 14**, 23:9-24:1.

that it displayed the Subject Photograph on its website as part of the Infringing Article and it is undisputed that the Infringing Article was distributed to the public. Burroughs Decl. ¶12, **Ex. 13**, 134:7-9; 134:24-135:2; 135:16-20; **Ex. 14**, 15:2-6. This is infringement.

The same holds true irrespective of where the Subject Photograph was uploaded or hosted because "[t]he plain language of the Copyright Act, the legislative history undergirding its enactment, and subsequent Supreme Court jurisprudence provide no basis for a rule that allows the physical location or possession of an image to determine who may or may not have 'displayed' a work within the meaning of the Copyright Act." *Goldman,* 302 F. Supp. 3d at 593. No case addressing the use of photography on a commercial website like Newsweek's has ever held that the physical location or possession of the infringing work was relevant. *Free Speech Sys., LLC v. Menzel*, 390 F. Supp. 3d 1162, 1172 (N.D. Cal. 2019)(infringer has "not provided any case within the Ninth Circuit applying the server test outside of the search engine context or in the context here, the wholesale posting of copyrighted material on a news site.").

Indeed, the "Copyright Act unambiguously states that [']t]o 'display' a work means to show a copy of it, either directly or by means of a film, slide, television image, or any other device or process ....['] *APL Microscopic, LLC*, 144 Fed. Cl. at 498 (emphasis added), quoting 17 U.S.C. § 101. And the "definition's usage of the phrase [']any other device or process['] clearly brings showing a copy of a work through a computer within the statutory definition of [']display.[']" Id.; see also *Leader's Inst., LLC v. Jackson*, 2017 WL 5629514, at *11 (N.D. Tex. Nov. 22, 2017) ("The text of the Copyright Act does not make actual possession of a copy of a work a prerequisite for infringement."). Newsweek's display of the Subject Photograph as part of the Infringing Article violated Section 106(5) because the Instagram embed process is clearly within the purview of the expansive phrase "any other device or process" in Section 101.

Thus, to "display" a work, someone need only show a copy of the work; <u>a person need not actually possess a copy to display a work</u>.") Id. (emphasis added), citing 17 U.S.C. § 101. Here, the process by which Newsweek displayed McGucken's Subject Photograph to its viewers is irrelevant, as is the question of whether they "possessed" the work's digital file. The relevant question is whether Newsweek displayed the Subject Photograph to its viewers by any means or process in violation of Section 106(5). The answer, as a matter of law, is that it did.

### 2. Instagram did not grant Newsweek a sublicense

Newsweek has argued, without basis, that Instagram provided to it a sublicense to use McGucken's Subject Photograph. There is no evidence that such a license was granted and Instagram denies granting same. Even if there was such a license, Newsweek would have violated it in numerous ways. And from a policy perspective, this defense, if credited, would deprive every one of Instagram's tens of millions of users of their copyrights in photography posted to users' proprietary accounts on the platform. The defense fails.

Newsweek bears the burden of establishing that it holds a license to exploit McGucken's Subject Photograph. *Spinelli v. Natl Football League*, 903 F.3d 185, 197 (2d Cir. 2018)("The existence of a license is an affirmative defense, placing upon the party claiming a license [']the burden of coming forward with evidence['] of one.")(citation omitted). This rule "makes sense: "proving a negative is a challenge in any context[.]" *Muhammad-Ali v. Final Call, Inc.*, 832 F.3d 755, 761 (7th Cir. 2016), quoting *Vieth v. Jubelirer*, 541 U.S. 267, 311, 124 S.Ct. 1769, (2004).

Newsweek fails to carry that burden and has not provided any evidence that the putative license was made with the licensor's "explicit consent" to use the work. *Sinclair v. Ziff Davis, LLC*, 2020 WL 3450136, at *1 (S.D.N.Y. June 24, 2020), quoting *Ward v. Nat'l Geographic Soc.*, 208 F. Supp. 2d 429, 442–43 (S.D.N.Y. 2002) (Kaplan, J.), quoting *Gardner v. Nike, Inc.*,

279 F.3d 774, 781 (9th Cir. 2002). There was no consent, let alone "explicit" consent, here, and thus no sublicense.

To prove its license defense, Newsweek would have to prove "a meeting of the minds between the licensor and licensee such that it is fair to infer that the licensor intended to grant a nonexclusive license." *Assoc. Press v. Meltwater U.S. Holdings, Inc*., 931 F.Supp.2d 537, 562 (S.D.N.Y. 2013). And "[t]here can be no meeting of the minds ... where essential material terms are missing." *Vian v. Carey*, 1993 WL 138837, at *3 (S.D.N.Y. Apr. 23, 1993) (Mukasey, J.). Here, Newsweek cannot prove a meeting of the minds with Instagram and has not even attempted to do so. Such an effort would be futile, as Instagram has publicly declared that it does not grant sublicenses of the type claimed by Newsweek. See Burroughs Decl. ¶6, **Ex. 8**.

Moreover, as there is no written sublicense, "the agreement between the parties must be definite and explicit so their intention may be ascertained to a reasonable degree of certainty." *Barcroft Media, Ltd. v. Coed Media Grp*., LLC, 297 F. Supp. 3d 339, 349 (S.D.N.Y. 2017), citing Id. at *2, quoting *Candid Prods., Inc. v. Int'l Skating Union*, 530 F.Supp. 1330, 1333 (S.D.N.Y. 1982) (no oral nonexclusive license given the absence of any evidence that the defendant "ever intended ... to enter into a complex commercial licensing agreement").

Here, there is no agreement whatsoever, let alone one that is "definite and explicit." Instagram has not adduced any evidence of any meeting of the minds with Instagram, and Instagram denies granting the claimed license. At most, Newsweek can point to Instagram's terms pertaining to the embedding of its content and use of it API, but those are, at most "an agreement to agree or an agreement to negotiate—neither of which is enforceable under New York law." Id. at 350, citing *Joseph Martin, Jr., Delicatessen, Inc. v. Schumacher*, 52 N.Y.2d 105, 436 N.Y.S.2d 247, 417 N.E.2d 541, 543 (1981) ("[I]t is rightfully well settled in the common law of contracts in this State that a mere agreement to agree, in which a material term is

left for future negotiations, is unenforceable."). And, even then, those terms do not grant to Newsweek a sublicense. Knowing this, Newsweek, in discovery, failed to even contact Instagram in regard to its claimed Instagram sublicense and admits to no communications between the parties. Newsweek simply cannot establish that it obtained Instagram's "explicit consent" to display McGucken's work and this defense fails. *Sinclair*, 2020 WL 3450136, at *1.

### 3.    Newsweek obtained no other license to display the Subject Photograph

Newsweek cannot prove the existence of any other license typology that would allow it to exploit McGucken's work. For example, there can be no "implied sublicense" here because "[a]n implied license can only exist where an author creates a copyrighted work with knowledge and intent that the work would be used by another for a specific purpose". *McGucken*, 464 F. Supp. 3d at 603–04, citing *SHL Imaging, Inc. v. Artisan House, Inc*., 117 F. Supp. 2d 301, 317 (S.D.N.Y. 2000) (parenthetical quoted above), citing *SmithKline Beecham Consumer Healthcare, L.P. v. Watson Pharms., Inc*., 211 F.3d 21, 25 (2d Cir. 2000). And there is no evidence that McGucken created the Subject Photograph with knowledge and intent that it would be published on Newsweek's commercial website. No license of any type exists.

### 4.    Instagram's terms do not authorize Newsweek's copying

Instagram's Platform Policy ("Platform Policy", Burroughs Decl. ¶ 7, Ex. 9),[6] Terms of Use ("Terms", Burroughs Decl. ¶ 8, Ex. 10)[7], and Community Guidelines ("Community Guidelines", Burroughs Decl. ¶ 9, Ex.11)[8], when viewed in their entirety, make clear that "[t]his agreement does not give rights to any third parties." (Terms, *Our Agreement and What Happens if We Disagree*, Who Has Rights Under this Agreement)(emphasis added).

---

[6] *Platform Policy*, INSTAGRAM, https://www.instagram.com/about/legal/terms/api/, last visited Apr. 13, 2020.
[7] *Terms of Use*, INSTAGRAM, https://help.instagram.com/478745558852511, last visited Apr. 13, 2020.
[8] *Community Guidelines*, INSTAGRAM, https://help.instagram.com/477434105621119/, last visited Apr. 13, 2020.

Additional guidance in the Platform Policy instructs users to not "sell, lease, or sublicense the Instagram Platform or any data derived through the Platform." (A, 34) (emphasis added). These terms, taken in their entirety, illustrate beyond a doubt that third parties do not receive unlimited sublicenses to exploit content found on Instagram. And Instagram goes even further, instructing brands to obtain rights from content owners, as discussed further below.

**5.      Newsweek breached Instagram's requirement to obtain author consent**

Even if Newsweek did grant a sublicense to Newsweek (it didn't), Newsweek breached that sublicense, or failed to meet its conditions, and as such is still liable for infringement, because when a licensee exploits "a copyrighted work in a manner or to an extent not authorized by the license agreement, the licensee's position is no different from that of an infringer having no contractual relationship with the holder of the copyright [and] the resulting cause of action is one for copyright infringement[.]" *Harris v. Simon & Schuster, Inc*., 646 F. Supp. 2d 622, 631–32 (S.D.N.Y. 2009), citing *Kanakos v. MX Trading Corp*., 1981 WL 1377, at *2 (S.D.N.Y. Sept. 16, 1981). Newsweek exploited the Subject Photograph in a manner that is simply not authorized under Instagram's terms, and instead violated same, negating any sublicense even if one existed.

Under Instagram's Platform Policy, Terms, and Community Guidelines, Newsweek was obligated to seek permission from McGucken before exploiting his work. Indeed, Instagram underscores that its "Terms of Use do not allow posting content that violates someone else's intellectual property rights, including copyright and trademark."[9] Instagram further advises that it does not allow advertisers to exploit user content, noting that users "own [their] own photos and videos."[10] Newsweek violated each of these provisions. It also violated the following terms:

---

[9] *Help Center, Intellectual Property*, INSTAGRAM, https://www.facebook.com/help/instagram/535503073130320, last visited Mar. 20, 2020. (emphasis added)
[10] *About Instagram Ads,* INSTAGRAM, https://help.instagram.com/478880589321969, last visited Mar. 20, 2020.

• Comply with any requirements or restrictions imposed on usage of Instagram user photos and videos ("User Content") by their respective owners. **You are solely responsible for making use of User Content in compliance with owners' requirements or restrictions**. (A, 11) (emphasis added).

• Obtain a person's consent before including their User Content in any ad. (A, 13) (emphasis added).

• Comply with all applicable laws or regulations. Don't provide or promote content that violates any rights of any person, including but not limited to intellectual property rights, rights of privacy, or rights of personality. (A, 35) (emphasis added).

• You represent and warrant that you own or have secured all rights necessary to display, distribute and deliver all content in your app or website. To the extent your users are able to share content from your app or website on or through Instagram, you represent and warrant that you own or have secured all necessary rights for them to do so in accordance with Instagram's available functionality. (D, 9) (emphasis added).
• You represent and warrant that you satisfy all licensing, reporting, and payout obligations to third parties in connection with your app or website. (D, 10) (emphasis added).

• You are responsible for obtaining the necessary rights from all applicable rights holders to grant this license. (D, 13) (emphasis added).

Similar guidance is also highlighted in Instagram's Community Guidelines, which instruct third-party users to "[s]hare only photos and videos that you've taken or have the right to share […] and don't post anything you've copied or collected from the Internet that you don't have the right to post." (Community Guidelines, *The Long*.) (emphasis added). These terms clearly establish that Newsweek had the burden of obtaining permission from McGucken to exploit his Subject Photograph. Newsweek failed to do so.

Notably, "there are strong policy reasons to place the burden on the licensee to get the licensor's explicit consent [for sub-licensing] either during or after contract negotiations." *Ward v. Nat'l Geographic Soc*., 208 F. Supp. 2d 429, 442 (S.D.N.Y. 2002)(citation omitted0. Indeed, "copyright owners who grant nonexclusive licenses might find themselves involuntarily competing with their own licensees for future licensing opportunities if sublicensing were

permitted without permission." Id. at 442–43. Here, McGucken did not grant Newsweek a license and Instagram's terms cannot be read to "specifically consent" to granting Newsweek a sublicense for the Subject Photograph.

And Newsweek was not an intended beneficiary of the Instagram terms at issue: "whether a contract benefits or accords rights to a third party (most often, the right to enforce the contract) depends significantly on the intention of the original contracting parties." *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 39 (2d Cir. 2002) (citations and quotations omitted). Here, neither McGucken nor Instagram intended Newsweek to be a third-party beneficiary, and both parties' intentions are required. Id. And Newsweek has not proffered any evidence that it was an intended beneficiary. So owing, it is clear that Instagram's terms did not grant Newsweek a sublicense to exploit McGucken's work, and even if they did, Newsweek's violations of the terms of that license make Newsweek's display of McGucken's work an infringement.

6.    **Newsweek cannot carry its burden in establishing "fair use"**

Newsweek cannot establish that its copying of McGucken's work and display of said work on its commercial website abutted by copious and intrusive advertising should be adjudged "fair." Indeed, "a judicial determination that [a defendant]'s inclusion of [a plaintiff's] [i]mage on its website was fair use would promote wholesale circumvention of copyright law." *BWP Media USA, Inc.*, 196 F. Supp. 3d at 406. When, as here, an infringing media outlet proffers a groundless fair use defense, courts have routinely rejected same at the summary judgment stage. See, e.g., *Michael Grecco Prods., Inc. v. Valuewalk, LLC*, 345 F. Supp. 3d 482, 509 (S.D.N.Y. 2018)("no reasonable trier of fact could find in favor of the Defendants on the issue of fair use and Plaintiff's motion for summary judgment on the defense is granted."); *Otto v. Hearst Commc'ns, Inc.*, 345 F. Supp. 3d 412, 433 (S.D.N.Y. 2018)(granting artist's motion, holding "no reasonable trier of fact could find in favor of the Hearst on the issue of fair use")

Here, Newsweek conceded that it did not engage in a "fair use" analysis when publishing the Infringing Article, providing no testimony or evidence establishing that it applied (or even considered) the "fair use" factors when engaging in the wholesale copying of McGucken's work. Newsweek's display of the Subject Photograph was not fair use.

In considering a "fair use" defense, the Court considers both the intent of the Copyright Act and certain "fair use" factors set forth therein. The Copyright Act is intended "[t]o promote the Progress of Science and useful Arts," U.S. Const. art. I, § 8, cl. 8, "by granting authors a limited monopoly over (and thus the opportunity to profit from) the dissemination of their original works of authorship," and that intent is not impeded when the public draws upon copyrighted content without consent in "certain circumstances." *Authors Guild, Inc. v. HathiTrust*, 755 F.3d 87, 95 (2d Cir.2014). Four nonexclusive factors inform when these "certain circumstances" arise: (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work. 17 U.S.C. § 107. These factors make clear that the invocation of the "fair use" defense by a commercial website that has copied wholesale an artist's work is without basis.

### a. The "purpose and character" of the use militates against a finding of fair use

The first factor in determining fair use is the purpose and character of the use. Here, Newsweek used the Subject Photograph to draw traffic and profit from advertising. Newsweek may contend that it used the Subject Photograph for "news reporting," but that is both false and in any event insufficient to establish fair use. Indeed, as this Court has previously held, a defendant cannot simply "take any photograph, announce the photograph's contents" to be newsworthy, and "call that 'fair use.'" *BWP Media USA, Inc.* at 406. Here, Newsweek's "article"

that incorporates the Subject Photograph without consent is a far cry from the "extraordinary

case" in which the "need for news reporting should take precedence over copyright protections."

*Otto,* 345 F. Supp. 3d at 428, citing *Twin Peaks Prods., Inc. v. Publications Int'l, Ltd*., 996 F.2d

1366, 1378 (2d Cir. 1993)(remaining citation omitted). The earthscape depicted in McGucken's

Subject Photograph, while compelling and beautiful, was not fast-breaking news nor time-

sensitive by any definition and the photograph itself was not the subject of the Infringing Article,

it simply acted as an illustrative aid.

Newsweek exploited the work solely because it was an appealing work, and it is settled

that  a "news organization [] may not freely copy creative expression solely because the

expression itself is newsworthy." *Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P*., 756 F.3d 73,

85 (2d Cir. 2014). For the foregoing reasons, this factor weighs against "fair use."

### i.  Newsweek used the Subject Photograph for the same purpose as McGucken

In analyzing the purpose and character of the use, "the primary inquiry is whether the use

'communicates something new and different from the original or [otherwise] expands its utility,'

that is, whether the use is 'transformative.'" *Fox News Network, LLC v. Tveyes, Inc.*, 883 F.3d

169, 176 (2d Cir. 2018), quoting *Authors Guild v. Google, Inc.*, 804 F.3d 202, 214 (2d Cir.

2015)). In reviewing for transformation, however, even secondary works that add "new

expression, meaning, or message" should not be declared fair use as that would risk "crowding

out statutory protections for derivative works." *Andy Warhol Found. for the Visual Arts, Inc. v.

Goldsmith*, 992 F.3d 99, 111 (2d Cir. 2021), *citing Kienitz v. Sconnie Nation LLC*, 766 F.3d 756,

758 (7th Cir. 2014) ("To say that a new use transforms the work is precisely to say that it is

derivative and thus, one might suppose, protected under [17 U.S.C.] § 106(2).").

Here, McGucken licensed the Subject Photograph to *SF Gate* for use in a web article

about an alluring lake in Death Valley. Newsweek copied the Subject Photograph verbatim from

McGucken and *even partially reproduced* the *SF Gate* article as part of the Infringing Article. McGucken Decl. ¶8, **Ex. 18**. And Newsweek now admits that it did not "criticize" or "comment on" the Subject Photograph in the Infringing Article, as is required for a "fair use." Burroughs Decl. ¶12, **Ex. 14**, 106:14-107:13. Newsweek cannot establish that the manner in which it copied McGucken's work and then published verbatim and in full on its commercial website with generic text and material copied from other third parties was "transformative."

Rather, Newsweek exploited the Subject Photograph, which McGucken had licensed to select media outlets for publication, in the same way that McGucken sought his work to be used. And "[u]sing a photo for the precise reason it was created does not support a finding that the nature and purpose of the use was fair." *BWP Media USA, Inc.* at 407. As this Court previously found when reviewing Newsweek's putative "transformation" of McGucken's work, "the mere addition of some token commentary is not enough to transform the use of a photograph when that photograph is not itself the focus of the article." *McGucken*, 464 F. Supp. 3d at 606. Because Newsweek used the Subject Photograph for the same purpose it was created and did not add anything new or different to it, there was no transformation.

Newsweek displayed the Subject Photograph on its website to draw viewers and "the use of an image solely to present the content of that image…is not transformative." *Ferdman v. CBS Interactive Inc.*, 342 F. Supp. 3d 515, 534 (S.D.N.Y. 2018) (citations omitted); s*ee also Barcroft Media, Ltd. v. Coed Media Grp., LLC*, 297 F. Supp. 3d 339, 352 (S.D.N.Y. 2017) (work not transformative where images are used simply as "illustrative aids" depicting the subjects described in a news article). Newsweek itself has now admitted that it exploited the Subject Photograph as an illustrative aid. Burroughs Decl. ¶12, **Ex. 13**, 180:9-23. And, notably, "[a]llowing a news publisher to poach an image from an individual's social media account for an article that does little more than describe the setting of the image does not promote 'the Progress

of science and useful Arts.'" *Otto,* 345 F. Supp. 3d at 433, *citing Castle Rock Entm't, Inc. v. Carol Pub. Grp., Inc.*, 150 F.3d 132, 141 (2d Cir. 1998) (citations omitted). Here, Newsweek exploited McGucken's proprietary content without his consent, reproduced the contents of the Subject Photograph in full on its website, and called it "reporting." The letter and policy of the Copyright Act establish that this factor favors McGucken.

### ii.   Newsweek's bad faith weighs against the first factor

Newsweek's bad faith must also be considered in analyzing the first factor. Courts have held that "the propriety of the alleged infringer's conduct is relevant to a determination of the character of the subsequent use." *Robinson v. Random House, Inc.*, 877 F. Supp. 830, 841 (S.D.N.Y. 1995), modified, 1995 WL 502525 (S.D.N.Y. Mar. 26, 1995). Courts also consider a defendant's experience in an industry in their analysis of bad faith. See *Fitzgerald Pub. Co.,* 807 F.2d at 1115 (finding that simply being an experienced publisher provides constructive notice of one's own willful copyright infringement). The evidence establishes that Newsweek acted willfully and in bad faith and in contravention of McGucken's wishes and in violation of Instagram's and its own terms, as set forth, *supra,* in Section IV(C) and IV(D).

### iii.   Newsweek's commercial use weighs against "fair use"

Commercial use is a "factor that tends to weigh against a finding of fair use" because "the user stands to profit from exploitation of the copyrighted material without paying the customary price." *Harper & Row Publishers, Inc.* at 562. The Supreme Court has held that "every commercial use of copyrighted material is <u>presumptively</u> an unfair exploitation of the monopoly privilege that belongs to the owner of the copyright." *Sony Corp. of Am. v. Universal City Studios,* Inc., 464 U.S. 417, 451, 104 S. Ct. 774, 793 (1984)(emphasis). To determine commercial use, courts consider "whether the user stands to profit from exploitation of the copyrighted material without paying the customary price." *Harper & Row Publishers, Inc.* at

562. In analyzing whether the purpose of the infringing work was "profit," "monetary gain is not the sole criterion ... particularly in [a] ... setting [where] profit is ill-measured in dollars." *Worldwide Church of God v. Philadelphia Church of God, Inc.*, 227 F.3d 1110, 1117 (9th Cir. 2000) (alteration in original), quoting *Weissmann v. Freeman*, 868 F.2d 1313, 1324 (2d Cir.1989) (professor's verbatim copying of an academic work was not fair use, in part because a professor can "profit" by gaining recognition among his peers and authorship credit). Here, Newsweek published McGucken's work alongside commercial advertisements, but Newsweek was not "entitled to monetize it without paying [Dr. McGucken] the 'customary price' for the rights to h[is] work[.]," *Andy Warhol Found.*, 992 F.3d at 117.  And Newsweek profited from its exploitation of McGucken's work in several ways, including increased traffic to its site and revenues from the paid advertising it displayed alongside the Subject Photograph. Burroughs Decl. ¶15, Ex. 16. This militates against crediting the "fair use" defense.

### b.     The creative nature of the Photograph favors McGucken

The second factor, the nature of the Photograph, favors McGucken as well. The art of photography has generally been deemed sufficiently creative to make the second fair use factor weigh in favor of photographer-plaintiffs. *Baraban v. Time Warner, Inc.*, 2000 WL 358375, at *4 (S.D.N.Y. Apr. 6, 2000). Indeed, "photographs are 'generally viewed as creative aesthetic expressions of a scene or image' and have long received thick copyright protection[,] ... even though photographs capture images of reality." *Andy Warhol Found.*, 992 at 124 (citations omitted). McGucken invested significant financial and creative resources traveling to Death Valley during this time and made many artistic decisions, including composition, angles, choice of lens, lighting, and setting, to create the Subject Photograph. This factor also favors the artist.

### c.     Newsweek displayed McGucken's entire Subject Photograph

The amount and substantiality of the portion used militates against Newsweek. Generally, "the more of a copyrighted work that is taken, the less likely the use is to be fair." *Infinity Broad. Corp. v. Kirkwood*, 150 F.3d 104, 109 (2d Cir.1998). Here, Newsweek copied and exploited the entire Subject Photograph <u>and</u> McGucken's accompanying caption. When an infringer uses "the photo in its entirety without substantial changes to the purpose of using the photo, the third factor weighs against a finding of fair use." *Michael Grecco Prods., Inc.*, 345 F. Supp. 3d at 508. Newsweek copied and displayed the entirety of McGucken's Subject Photograph and his accompanying text. This factor also favors the artist.

### d.    Newsweek cannot establish that its infringement did not result in market harm

Newsweek cannot carry its burden of proving that its commercial use of McGucken's Subject Photograph did not harm the market for McGucken's work and photography in general, as is required. *Andy Warhol Found.*, 992 F.3d at 121 ("the ultimate burden of proving that the secondary use does not compete in the relevant market is appropriately borne by the party asserting the defense: the secondary use"). That would be particularly difficult here given that the Court may presume market harm "when a commercial use amounts to mere duplication of the entirety of an original[,]" and Newsweek exploited a "mere duplication" of the Subject Photograph on its commercial website, alongside advertising. *Sands v. What's Trending, Inc.*, 2021 WL 694382, at *4 (S.D.N.Y. Feb. 23, 2021), citing *McGucken,* 464 F. Supp. 3d at 609, quoting *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 591, 114 S. Ct. 1164, 1177 (1994)

And potential market effect is "undoubtedly the **<u>single most important element</u>** of fair use." *Harper & Row Publishers, Inc.* at 566 (emphasis added). Moreover, Newsweek's copying of the Subject Photograph "was both commercial and a mere duplication of the original, as opposed to constituting a transformative use[,]" and, as such, the "presumption applies." *McGucken*, 464 F. Supp. 3d at 609. Even if it didn't, it is evident that "[p]ublishing [a]

Photograph without permission essentially destroys the primary market for its use." *Otto*, 345 F. Supp. 3d at 432.

Moreover, "in assessing harm posed to a licensing market, a court's focus is not on possible lost licensing fees from defendant[]'[s] challenged use…[but rather]…the challenged use's impact on potential licensing revenues for traditional, reasonable, or likely to be developed markets." *TCA Television Corp. v. McCollum*, 839 F.3d 168, 186 (2d Cir. 2016) (citations and quotations omitted); see also *Andy Warhol Found.*, 992 F.3d at 121 ("we must also consider whether unrestricted and widespread conduct of the sort engaged in by [alleged infringer] would result in a substantially adverse impact on the potential market for the [] Photograph.") (quotations and citations omitted).

And as this Court has previously held, "[n]ewsworthy contents will rarely justify unlicensed reproduction; were it otherwise, photojournalists would be unable to license photos, and would effectively be out of a job." *BWP Media USA, Inc.* at 406 n.6. Indeed, "the market for the Photograph would be all but destroyed if publications were permitted to publish the Photograph without paying a licensing fee. The Court finds that this fourth factor weighs against a finding of fair use." *Andreas Von Der Au* v. *Michael G. Imber, Architect, PLLC*, 2021 WL 1131719, at *5 (W.D. Tex. Mar. 24, 2021).

Here, McGucken offers his photographs for licensing to news and media outlets and for sale as fine art prints on his website. Indeed, McGucken licensed the Subject Photograph to *SF Gate* and others. McGucken Decl. ¶8, **Ex. 18**. As McGucken's expert, Thomas Maddrey, has highlighted, "[b]y following a standard industry practice of reaching out to a creator before featuring their work, SF Gate was not an outlier. [And], the publications The Daily Mail, the National Parks Conservation Association, PetaPixel, Smithsonian Magazine, AccuWeather, Atlas Obscura, and Live Science all responsibly spoke with McGucken, obtained his consent,

and provided one or more forms of compensation prior to posting his images. Newsweek, however, chose not to do so, and took for free what other publications had to negotiate for: McGucken's image." Burroughs Decl. ¶13, **Ex. 15**, p. 9. Moreover, allowing Newsweek to circumvent copyright through embedding "would give organizations like Newsweek what in essence is a 100 million photo-a-day free pass from ever having to pay for the visual content that drives readership, clicks, and monetization." Id.

Newsweek cannot prove that McGucken's ability to further monetize his work or engage in reasonable or "likely to be developed markets" was not prejudiced by Newsweek's infringement. Newsweek exploited the Subject Photograph, which McGucken had licensed to select media outlets for publication, in the same way that McGucken and his licensees used his work. The "fair use" defense has no place here.

## V.    SUMMARY ADJUDICATION IS PROPER

McGucken should be encouraged to create new and compelling work and those, like Newsweek, that exploit artists' work without consent for monetary gain should be held accountable. Newsweek has willfully violated McGucken's copyrights, ignored Instagram's terms of use, violated its own internal policies, and persisted in its infringement for more than three months after this case was filed. It is respectfully submitted that Newsweek should be adjudged liable for copyright infringement and willful infringement and the case should proceed to trial solely on the issue of damages.

Respectfully submitted,

Dated: May 21, 2021          By:          */s/ Scott Alan Burroughs*
Brooklyn, New York                        Scott Alan Burroughs, Esq.
                                          Laura M. Zaharia, Esq.
                                          DONIGER / BURROUGHS
                                          231 Norman Avenue, Suite 413
                                          Brooklyn, New York 11222
                                          (310) 590-1820
                                          *Attorneys for Plaintiff*