**<u>EXHIBIT 13</u>**

Atkinson Baker, a Veritext Company
www.depo.com

1        UNITED STATES DISTRICT COURT

2       SOUTHERN DISTRICT OF NEW YORK

3

4    ELLIOT MCGUCKEN, an          )
     individual,                  )        **CERTIFIED COPY**
5                                 )
              Plaintiff,          )
6                                 )  Civil Action No.:
         vs.                      )  1:19-cv-09617-KPF
7                                 )
     NEWSWEEK, LLC, a New         )
8    York Limited Liability       )
     Company; and DOES 1-10,      )
9    inclusive,                   )
                                  )
10            Defendants.         )
                                  )
11   ------------------------- X

12

13            C O N F I D E N T I A L

14     30(b)(6)  ZOOM VIDEOCONFERENCE DEPOSITION OF

15            NEWSWEEK DIGITAL, LLC

16              BY  AND  THROUGH

17               DIANE RICE

18               NEW JERSEY

19             MARCH 10, 2021

20

21   ATKINSON-BAKER,
     a VERITEX COMPANY
22   Telephone:  1-800-288-3376
     www.depo.com
23

24   REPORTED BY: Amelinda Lopez, RPR, CCR #30XI00229700

25   FILE NO.:  AE08879

Atkinson Baker, a Veritext Company
www.depo.com

1              UNITED STATES DISTRICT COURT

2            SOUTHERN DISTRICT OF NEW YORK

3

4    ELLIOT MCGUCKEN, an        )
     individual,               )
5                              )
                   Plaintiff,  )   Civil Action No.:
6                              )   1:19-cv-09617-KPF
          vs.                  )
7                              )
     NEWSWEEK, LLC, a New      )
8    York Limited Liability    )
     Company; and DOES 1-10,   )
9    inclusive,                )
                              )
10              Defendants.    )
                              )
11   -------------------------X

12

13

14        Zoom videoconference deposition of DIANE

15   RICE, taken on behalf of the Plaintiff, commencing

16   at 1:00 p.m., Wednesday, March 10, 2021, before

17   Amelinda Lopez, RPR, CCR No. 30XI00229700.

18

19

20

21

22

23

24

25

```
1    A P P E A R A N C E S :

2


3    FOR PLAINTIFF:

4            DONIGER/BURROUGHS
             BY:  SCOTT ALAN BURROUGHS, ESQ.
5                 LAURA ZAHARIA, ESQ.
             603 Rose Avenue
6            Venice, California 90291
             Telephone:  (310) 590-1820
7            E-Mail:  scott@donigerlawfirm.com
                      lzaharia@donigerlawfirm.com
8

9    FOR DEFENDANT:

10
             COWAN DEBAETS ABRAHAMS & SHEPPARD
11           BY:  NANCY E. WOLFF, ESQ.
                  SARA GATES, ESQ.
12           41 Madison Avenue
             New York, New York 10010
13           Telephone:  (212) 974-7474
             Facsimile:  (212) 974-8474
14           E-Mail:  nwolff@cdas.com
                      sgates@cdas.com
15

16

17

18

19

20

21

22

23

24

25
```

Atkinson Baker, a Veritext Company
www.depo.com

1                    I N D E X

2

3    WITNESS:  DIANE RICE

4    Examinations                                    Page

Atkinson Baker, a Veritext Company
www.depo.com

```
 6      By Ms. Gates                                    211
        By Mr. Burroughs                                215
 7                      E X H I B I T S
 8
 9      No.         Description                         Page
10       1          Amended Deposition Notice            46
11       2          Bates Stamp Newsweek 1 & 2 -         75
                    Updated Photo Guidelines
12
         3          Bates Stamp Newsweek 104 & 105 -    103
13                  Photo Guidelines
14       4          Bates Stamp McGucken 9 - Newsweek   110
                    Publication
15
         5          Bates Stamp Newsweek 5 - Image      161
16
         6          Bates Stamp Newsweek 23 - 27 -      164
17                  E-mail String
18       7          Bates Stamp Newsweek 3 - E-mail     173
                    String
19
         8          Bates Stamp Newsweek 28 -           175
20                  Instagram Message to Mr. McGucken
21       9          Screen Capture - Newsweek Terms     184
                    and Conditions
22
        10          Bates Stamp Newsweek 157 through    191
23                  162 - Instagram Platform Policy
24      11          Bates Stamp Newsweek 81 through     211
                    83 - Full Article
25
```

```
 1          New Jersey; March 10, 2021; 1:00 p.m.

 2                      --  --  --

 3

 4          D I A N E   R I C E, having first

 5      been duly sworn, testified as follows:

 6

 7                      EXAMINATION

 8      BY MR. BURROUGHS:

 9          Q.     Hello, Ms. Rice.  Would you please

10      state your name for the record?

11          A.     Diane Rice.

12          Q.     Is it R-I-C-E?

13          A.     Yes, R-I-C-E.

14          Q.     Okay.  Are you currently employed?

15          A.     Yes.

16          Q.     And what's your current employment?

17          A.     I'm director of photography for

18      Newsweek.

19          Q.     Okay.  Do you hold any other

20      employment currently?

21          A.     Not currently.

22          Q.     Okay.  How long have you worked at

23      Newsweek?

24          A.     Over three years now.

25          Q.     Have you always had that same title,
```

Atkinson Baker, a Veritext Company
www.depo.com

1      A.      No, they do not.

2      Q.      In your tenure there has Newsweek

3  ever employed a photographer?

4      A.      Not since I've been with the

5  magazine.  We've commissioned photographers,

6  but we don't employ staff photographers.

7      Q.      When was the last time you recall

8  Newsweek commissioning a photographer for a

9  Newsweek project?

10      A.      That would have probably -- that

11  would have been over the summer, I believe.

12      Q.      Okay.  And do you recall the

13  substance of that project?

14      A.      I think it was in -- I'm sorry,

15  actually, I'm sorry.  Let me backtrack.  There

16  was a more recent image for someone receiving a

17  medal of the arts that we commissioned.  Or

18  rather the photographer came to us and let us

19  know that he was doing -- he was going to be

20  photographing a specific person receiving a

21  medal and we agreed to publish the images.

22      Q.      Was that a pitch?

23      A.      It was a pitch, yes.  And we picked

24  it up prior to the images being shot.

25      Q.      Okay.  Can you estimate for me what

Atkinson Baker, a Veritext Company
www.depo.com

```
1        A.      I do not recall having any feedback.
2        Q.      Do you recall any feedback from
3  anyone at Newsweek?
4        A.      Not specifically.
5        Q.      Do you recall anything generally?
6        A.      Not generally.
7        Q.      Do you recall any feedback that you
8  received from anyone in regard to the
9  guidelines?
10       A.      I do not recall any feedback.
11       Q.      Okay.  From where did you draw in
12 drafting those social media guidelines for
13 Newsweek?
14       A.      Industry standards that I knew from
15 my experience as being a photo editor and it
16 would be updated periodically as needed.
17       Q.      Okay.  So the Newsweek social media
18 guidelines were drawn based on your personal
19 professional experience, correct?
20       A.      Correct.
21       Q.      Were they based on anything else?
22       A.      My experience and from what I know
23 about what kind of things to be aware of within
24 posting images.
25       Q.      Okay.  And that particular
```

Atkinson Baker, a Veritext Company
www.depo.com

1    it's not hosted on our site.

2        Q.      Okay.  And is that set forth in the

3    guidelines?

4        A.      If we don't specify Instagram embeds

5    in the guidelines.

6        Q.      Is there any reference to any embeds

7    in the guidelines?

8        A.      No.

9        Q.      Is there any reference to embedding

10   in any guidelines: the ones you drafted, or any

11   others that you've seen at Newsweek that refer

12   to embedding?

13       A.      No.

14       Q.      Now, you indicated that your

15   guidelines only required that Newsweek request

16   the right to use third-party content; is that

17   accurate?

18       A.      We need permission for third-party

19   content.

20       Q.      Okay.  So it's not only that

21   Newsweek has to request the consent, it's that

22   they actually have to receive consent?

23       A.      Correct.

24       Q.      Under your policy, what is the

25   result when Newsweek requests permission but

1   front of you an exhibit -- well, before we do

2   that.  Other than the e-mails that we've

3   already discussed, did you review any other

4   documents in preparation for today's

5   deposition?

6        A.      Not specific to this case, no.

7        Q.      What did you review generally?

8        A.      I generally reviewed the

9   correspondence that I had in relation to this

10  story.

11       Q.      Okay.  So aside from the

12  correspondence, did you review anything else,

13  any other documents or evidence to prepare

14  yourself for today?

15       A.      I read the terms of service for

16  LinkedIn -- oh, I'm sorry, Instagram.

17       Q.      Was that the first time you had read

18  those?

19       A.      I've reviewed them in the past.

20       Q.      When do you recall was the first

21  time that you had reviewed those?

22       A.      I couldn't recall exactly.

23       Q.      Would it have been within the last

24  six months?

25       A.      Most likely, yes.

Atkinson Baker, a Veritext Company
www.depo.com

```
 1   the U.K. versus the U.S. relating to the use of
 2   third-party content?
 3            MS. WOLFF:  Objection.
 4       A.      Sorry, you were breaking up on that
 5   question.
 6       Q.      Okay.  Is there anything in your
 7   social media guidelines or Newsweek's policies
 8   in general that addresses any differences
 9   between the legal ramifications of using
10   third-party content in the U.S. versus the
11   U.K.?
12       A.      We have the same guidelines for
13   both, both offices.
14       Q.      Okay.  So Newsweek did not have the
15   artist's consent to post the photograph we're
16   looking at here on Exhibit 4, correct?
17            MS. WOLFF:  Objection.
18       A.      He did not -- he did not
19   specifically give us permission to include the
20   link.
21       Q.      Okay.  And did Newsweek have any
22   conversations or communications with
23   Mr. McGucken whereby he gave any sort of
24   consent for the use?
25            MS. WOLFF:  Objection.
```

Atkinson Baker, a Veritext Company
www.depo.com

1    answer my question.  I understand these answers

2    and what you're testifying to, but they're

3    simply not responsive to the question.  So

4    please listen closely to the question and try

5    to answer the question I'm asking you.  Okay?

6        A.    Okay.

7        Q.    So after not receiving a response

8    from Mr. McGucken relating to the use of this

9    photography, Newsweek, notwithstanding that

10   lack of response, displayed the photography

11   anyway, correct?

12              MS. WOLFF:  Objection.

13       A.    Correct.

14       Q.    Okay.  And is it a practice of

15   Newsweek to do that, to reach out for consent

16   from photographers, and if they decline

17   consent, Newsweek uses the content anyway?

18              MS. WOLFF:  Objection.

19       A.    If a photographer declines or tells

20   us explicitly they don't want us to use their

21   content, we are unlikely to use it.

22       Q.    But if they do not respond, is it

23   Newsweek's practice to use the material that

24   they sought consent for notwithstanding the

25   fact there was no response?

Atkinson Baker, a Veritext Company
www.depo.com

1    Q.    First and foremost, just one more

2    time.  In situations where Newsweek reaches out

3    to the photographer to request consent to use

4    their work, and the photographer does not

5    respond, is it Newsweek's practice to use that

6    material anyway through the embedding process?

7            MS. WOLFF:  Objection.

8    A.    It's possible we would do that.

9    Q.    Okay.  And doing so would not

10   violate Newsweek's social media guidelines,

11   correct?

12   A.    Embedding images does not violate

13   the guidelines that I had written out.

14   Q.    Okay.  And that's the case even if

15   the photographer declines a request for consent

16   or doesn't respond to a request for consent,

17   correct?

18           MS. WOLFF:  Objection.

19   A.    Declining and not responding aren't

20   the same thing.

21   Q.    So is it your testimony that if the

22   photographer does not respond to a request for

23   consent, Newsweek takes that as consent to use

24   the work on its website?

25           MS. WOLFF:  Objection.

1       A.      We would embed -- we embed images.

2       Q.      So it's Newsweek's business practice

3   when it is unable to obtain consent to simply

4   embed the image at issue; is that correct?

5               MS. WOLFF:  Objection.

6       A.      If the image is newsworthy and in

7   relation to the story, embedding images is

8   allowed as per our practice.

9       Q.      And your practice at Newsweek is to

10  do so even when you've directly contacted the

11  photographer and they did not respond providing

12  consent, correct?

13              MS. WOLFF:  Objection.  Asked and

14  answered.

15      A.      No permission is required when it

16  comes to embedding images.

17      Q.      And that's your position

18  irrespective of whether you've asked for

19  consent or received consent, correct?

20              MS. WOLFF:  Objection.

21      A.      I'm sorry.  Can you repeat the

22  question?

23      Q.      Okay.  Your position is that --

24  well, strike that.

25              Is it Newsweek's practice to use

```
 1              MS. WOLFF:  Objection.
 2       A.      We asked for permission to host the
 3   image.  We did not hear back, so we did not
 4   host the image in our site; therefore, we
 5   included a link.  They are two different
 6   questions.
 7       Q.      Well, when you include a link, are
 8   you displaying the Instagram content?
 9       A.      Correct.
10              MS. WOLFF:  Objection.  That calls
11   for a legal conclusion.
12              MR. BURROUGHS:  Madam Court
13   Reporter, did you get the answer?
14              THE REPORTER:  Yes.
15   BY MR. BURROUGHS:
16       Q.      Okay.  So here you are displaying
17   McGucken's photograph on Newsweek, correct?
18              MS. WOLFF:  Objection.  Legal
19   conclusion.
20   BY MR. BURROUGHS:
21       Q.      Do you understand the question?  I'm
22   happy to rephrase it.
23       A.      Please rephrase.
24       Q.      Sure.  Did Newsweek display
25   Mr. McGucken's photograph?
```

Atkinson Baker, a Veritext Company
www.depo.com

```
 1              MS. WOLFF:  Objection.
 2        A.     It was visible on our website, yes.
 3        Q.     Okay.  What's your definition of
 4   display?
 5              MS. WOLFF:  Objection.
 6        A.     There's multiple definitions of
 7   display.
 8        Q.     Okay.  Can you give me yours based
 9   on your industry experience?
10        A.     What you can see.
11        Q.     Okay.  So per your definition, is it
12   possible for you to see McGucken's photograph
13   on the Newsweek website?
14              MS. WOLFF:  Objection.
15        A.     You can see it on our website, yes.
16        Q.     Okay.  So then it is fair to say
17   that the Newsweek website displayed Mr.
18   McGucken's photograph, correct?
19              MS. WOLFF:  Objection.
20        A.     Yes.
21        Q.     Okay.  And Newsweek displayed
22   Mr. McGucken's photograph despite the fact that
23   he had never affirmatively consented to that
24   display, correct?
25              MS. WOLFF:  Objection.
```

```
 1   embed.
 2       Q.      Would that be the embed of
 3   Mr. McGucken's photograph?
 4       A.      Most likely, yes.
 5       Q.      Okay.  So is it fair to say that
 6   Newsweek removed Mr. McGucken's photograph from
 7   Newsweek's website no earlier than January 21,
 8   2020?
 9       A.      Yes.
10           MR. BURROUGHS:  All right.  Ms.
11   Zaharia, what exhibit was this?  Okay.  So mark
12   this as Exhibit 7?
13   BY MR. BURROUGHS:
14       Q.      And I'm next going to direct your
15   attention to Exhibit 8, which is going to be
16   Newsweek 23 to 27.
17           Oh, I apologize.  We've actually
18   already marked this as Exhibit 26 -- I'm sorry,
19   it's Exhibit 6, I believe.  Is that correct,
20   Ms. Zaharia?  Okay.
21           So there is an indication -- we have
22   to scroll through it; this is one of the
23   difficulties of Zoom depositions -- that this
24   article may have been pitched by a Newsweek
25   editor.  Do you see that in the e-mail?
```

Atkinson Baker, a Veritext Company
www.depo.com

1   newsworthy.

2        Q.      Okay.  So in your estimation,

3   weather is newsworthy?

4        A.      Yes.

5        Q.      Okay.  And why is that?

6                MS. WOLFF:  Objection.

7        A.      Because --

8                MS. WOLFF:  You can answer.

9        A.      I mean, if it affects people.

10       Q.      Okay.  So it sounds to me like

11  you're saying anytime a story affects people,

12  it's newsworthy enough to use an artist's work

13  without consent.  Is that accurate?

14               MS. WOLFF:  Objection.

15       A.      I think you're putting words in my

16  mouth.

17       Q.      Oh, please can you explain to me a

18  little bit more about why you think that this

19  particular photograph is newsworthy?

20       A.      It's an unusual occurrence.

21       Q.      Okay.  Anything else?  From where

22  did you learn your definition of the phrase

23  "newsworthy" as you're using it today?

24               MS. WOLFF:  Objection.

25       A.      I couldn't say exactly.  I've been

Atkinson Baker, a Veritext Company
www.depo.com

1    in the industry a long time.

2         Q.      Okay.  Let's say hypothetically

3    that, you know, I was in the news because I won

4    a Grammy award.  In such a circumstance, do you

5    feel that using a photograph of me would be

6    newsworthy?

7                 MS. WOLFF:  Objection.

8         A.      Yes.

9         Q.      Okay.  And is it fair to say that

10   you're using or Newsweek is -- let me withdraw

11   the question.

12               Is Newsweek using McGucken's

13   photograph to illustrate this story about the

14   weather in Death Valley?

15               MS. WOLFF:  Objection.

16        A.      I mean, it's included as part of the

17   story to illustrate what was seen.

18        Q.      Okay.  For what other purposes is it

19   being included, if any?

20        A.      It's informative.

21        Q.      Okay.  In what sense?

22        A.      It shows the lake that was described

23   in the story.

24        Q.      Okay.  So is it fair to say that the

25   sole reason to use McGucken's photograph is to

Atkinson Baker, a Veritext Company
www.depo.com

1          Okay.  When Newsweek distributed this
2    article to its viewers, did it distribute the
3    entirety of the McGucken photograph?
4               MS. WOLFF:  Objection.
5       A.     I'm not sure what you mean.  Like if
6    it was visible on Facebook, the only thing you
7    would see would actually be the Getty image and
8    then you wouldn't see the full story until you
9    click on it.
10      Q.     Okay.  So when Newsweek distributed
11   this particular article, the one that
12   incorporates the McGucken photograph to
13   viewers, the viewers would see the entirety of
14   the McGucken photograph.  Is that accurate?
15              MS. WOLFF:  Objection.
16      A.     If they clicked on the story, they
17   would see it.
18      Q.     Okay.  And the version they would
19   see, would that be modified or altered at all?
20              MS. WOLFF:  Objection.
21      A.     Not that I'm aware of.
22      Q.     Okay.  Would it appear to the viewer
23   of the Newsweek site exactly as it appears on
24   Mr. McGucken's Instagram?
25      A.     It would.

1  Mr. McGucken's photograph, as published on your

2  website, fits within the user content

3  definition in paragraph 16, correct?

4          MS. WOLFF:  Objection.

5     A.    I don't know if there's an earlier

6  definition for user content in the site, but

7  images posted to Instagram, I believe, this is

8  referring to as user content.

9     Q.    Okay.  And we're in agreement that

10  Newsweek displayed that user content in the

11  form of the McGucken photograph, correct?

12          MS. WOLFF:  Objection.

13     A.    I believe I've answered this

14  question multiple times.

15     Q.    Okay.  So, correct?

16     A.    The image was visible on our

17  website, yes, via an Instagram link.

18     Q.    Okay.  And before displaying Mr.

19  McGucken's user content on Newsweek.com, you

20  did not obtain the prior permission of

21  Instagram, correct?

22          MS. WOLFF:  Objection.

23     A.    I'm not sure how that's relevant.

24     Q.    Did you obtain the permission or

25  not?

Atkinson Baker, a Veritext Company
www.depo.com

```
 1              MS. WOLFF:  Objection.
 2      A.      We did not communicate with
 3   Instagram regarding this image.
 4      Q.      Okay.  Have you ever had -- has --
 5   withdraw the question.
 6              Has Newsweek had any communications
 7   with Instagram or Facebook relating to this
 8   image?
 9      A.      Not to my knowledge.
10      Q.      Has Newsweek had any communications
11   with Instagram or Facebook relating to the
12   publication of user content from those
13   platforms?
14      A.      Not that I'm aware of it.
15      Q.      Okay.  So it sounds like we're in
16   agreement that there was no outreach by
17   Newsweek to Instagram in connection with the
18   McGucken photograph that would in any way
19   relate to paragraph 16, correct?
20              MS. WOLFF:  Objection.
21   BY MR. BURROUGHS:
22      Q.      Is that correct?
23      A.      I'm sorry, I didn't realize that was
24   a question.
25      Q.      Looking at paragraph 16, it's
```

1      A.      No.

2      Q.      Okay.  Did Instagram or Facebook

3  ever advise you specifically that you had the

4  right to publish Mr. McGucken's content on your

5  website?

6              MS. WOLFF:  Objection.

7      A.      As I've stated before, we have not

8  communicated directly with the platform.

9      Q.      Okay.  Has the platform communicated

10  with you in any way to indicate to you that

11  they grant to you a sublicense to use

12  McGucken's work on your website?

13             MS. WOLFF:  Objection.

14     A.      We haven't specifically spoken with

15  the platform.

16     Q.      Okay.  Give me one moment to go over

17  my notes here.  I think we're just about done.

18             One more question.  Does Newsweek keep

19  copies of its archived posts?

20     A.      Define what you mean by posts.

21     Q.      Articles.

22     A.      I mean, stories stay on the website;

23  they don't come down.

24     Q.      Okay.  To the extent that --

25  withdrawn.

```
 1   STATE OF _____)
                                          )   ss.
 2   COUNTY OF _____)

 3

 4

 5

 6

 7        I, the undersigned, declare under penalty of

 8   perjury that I have read the foregoing transcript,

 9   and I have made any corrections, additions, or

10   deletions that I was desirous of making; that the

11   foregoing is a true and correct transcript of my

12   testimony contained therein.

13        EXECUTED this _____ day of _____,

14   20_____, at _____, _____.

15                    (City)                  (State)

16

17

18

19

20

21             _____

22                       Diane Rice

23

24

25
```

```
 1

 2                  C E R T I F I C A T I O N

 3

 4

 5          I, AMELINDA LOPEZ, a Certified Court

 6     Reporter, Registered Professional Reporter, and

 7     Notary Public of the State of New Jersey, certify

 8     that the foregoing is a true and accurate

 9     transcript of the testimony at the time and the

10     date hereinbefore set forth.

11          I further certify that I am neither attorney

12     nor counsel for, nor related to or employed by any

13     of the parties to the action in which the testimony

14     was taken; and further that I am not a relative or

15     employee of any attorney or counsel employed by the

16     parties hereto, nor am I financially interested in

17     the action.

18          Signature reserved.

19          Dated this 23rd day of March, 2021.

20

21     _____

22     AMELINDA LOPEZ, CCR, RPR
       Certified Court Reporter & Notary Public
23     License No. 30XI00229700

24

25
```