**EXHIBIT 15**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ELLIOT MCGUCKEN, an individual, | Civil Action No.: 1:19-cv-09617-KPF |
| Plaintiff, | **PLAINTIFF'S RULE 26(a)(2) EXPERT DISCLOSURES** |
| v. | |
| NEWSWEEK LLC, a New York Limited Liability Company; and DOES 1-10, inclusive, | |
| Defendants. | |

**PLEASE TAKE NOTICE THAT**, pursuant to Rule 26(a)(2) of the Federal Rules of Civil Procedure, Plaintiff hereby provides his initial disclosure of experts.

Plaintiff makes these disclosures without waiving, and expressly reserving, any and all applicable privileges and immunities. Plaintiff reserves the right to further amend these disclosures pursuant to the applicable Federal Rules of Civil Procedure.

Plaintiff hereby identifies and discloses his expert witnesses as follows:

**A.      RETAINED EXPERTS:**

Below is an identification of Plaintiff's retained experts. A written report containing the conclusions and opinions of each expert, as well as the facts and data relied upon, is submitted herewith as Exhibit 1.

1.   Thomas Maddrey, 6333 E. Mockingbird Lane, Suite 167-476, Dallas, TX 75214. Thomas Maddrey's billing rate is $550 per hour worked. His compensation is not contingent on the outcome of this case.

**B.      NON-RETAINED EXPERTS:**

Plaintiff does not currently have any non-retained experts to identify.

In addition to the above, Plaintiff hereby adopts and incorporates herein by reference the expert disclosures of each and every other party to these proceedings.

Plaintiff further reserves the right to call as witnesses at trial any and all parties and percipient witnesses to the events at issue in this litigation, and to present the opinions of such individuals who are herein and additionally disclosed as possible expert opinion witnesses.

Plaintiff reserves the right to supplement this expert witness designation and to call at trial any additional or supplemental witnesses.

Plaintiff reserves the right to call at trial rebuttal witnesses who are not included in this expert witness designation, as necessary.

Date: April 1, 2021                          By:   _____
                                                    Scott Alan Burroughs, Esq.
                                                    Laura M. Zaharia, Esq.
                                                    DONIGER / BURROUGHS
                                                    Attorneys for Plaintiff

2

**<u>EXHIBIT 1</u>**

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ELLIOT MCGUCKEN, an individual, | ) | Civil Action No.: 1:19-cv-09617-KPF |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | EXPERT REPORT OF |
| | ) | THOMAS MADDREY |
| | ) | |
| NEWSWEEK, LLC, a New York Limited | ) | |
| Liability Company; and DOES 1-10, inclusive, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | SUBMITTED APRIL 1, 2021 |

# INTRODUCTION

I have been engaged by Plaintiff Elliot McGucken ("McGucken") to provide expert testimony in the above-captioned matter brought by Plaintiff against Defendants Newsweek, LLC and DOES 1-10 (collectively, "Defendants"). McGucken has asked me to opine on issues related to the photographic industry, professional photographic licensing, social media, copyright infringement, fair use, and industry standards related to the same.

The opinions below are based on my experience as a commercial, editorial, and fine art photographer, an attorney specializing in copyright law, my role as General Counsel and Head of National Content and Education of the American Society of Media Photographers, and a frequent author, speaker, and presenter on matters relating to professional photography, licensing, and copyright.

In addition, I have had the opportunity to review many of the materials currently available in this case, and my examination of these materials helped to inform my specific opinions. If additional facts, materials, or circumstances become known or are made available to me after the rendering of this report, I respectfully ask for the right to amend or supplement this document as required to fully encompass the relevant facts.

Subject to the above, if I were to be called upon as a witness in this case, I would, based on my qualifications and experience, make the following statements:

## I.    QUALIFICATIONS

I currently serve as General Counsel and Head of National Content and Education for the American Society of Media Photographers ("ASMP"), one of the nation's oldest and largest

commercial photography trade associations.[1] For seventy-five years, this 501(c)(6) association has had as its mission (in part) to support visual creators, and specifically photographers, by educating them on business, licensing, and copyright practices, and advocating for sound implementation of copyright policy and professional standards for photographers. Each week I review, edit, and discuss licenses for photographers, and in my photo career as well as my professional career I have worked on more than 1,000 licenses in the photographic industry.

As part of my role with ASMP, I regularly interact with members who have questions about licensing, copyright, and other legal aspects of photography. I have developed and regularly present a slate of educational webinars, videos, and writings to serve members in their pursuit of the best practices in the industry. In the last calendar year, I have spoken with more than 150 ASMP members directly and had attendance at my webinars and seminars well into the thousands of working, professional photographers.

Additionally, I serve as a Director on the Board of the Copyright Alliance where I also am part of the Amicus Briefing Committee, and I am the Designated Representative to the Authors Coalition of America as well as the Coalition of Visual Artists. Further, I serve as Vice-Chair of the Entertainment, Art, and Sports Law Section of the Dallas Bar Association. I am a member in good standing of the Bar of the State of Texas, the United States Supreme Court, and the 2nd, 4th, 5th, and 9th Circuit Courts of Appeals.

A selection of my published works and speaking engagements include:

Selected Publications

- Thomas B. Maddrey, Photography, Creators, and the Changing Needs of Copyright Law, 16 SMU Sci. & Tech. L. Rev. 501 (2013).

---

[1] AMERICAN SOCIETY OF MEDIA PHOTOGRAPHERS. http://www.asmp.org (last visited April 1, 2021).

- Thomas Maddrey, <u>Does Mitigation Matter in Copyright Infringement Suits?  The Fifth Circuit Weighs In</u>, Dallas Bar Association, Headnotes, March 2021.

- Thomas Maddrey, <u>Copyright in the Age of Social Media</u>, Dallas Bar Association Headnotes, March 2020.

- Thomas Maddrey, <u>How the Music Modernization Act Changes the Law</u>, Dallas Bar Association Headnotes, March 2019.

- Thomas Maddrey, <u>Media Licensing Tips and Pitfalls</u>, Dallas Bar Association Headnotes, March 2018.

<u>Recent Presentations</u>

- (2021) Featured Speaker, <u>The CASE Act: Small-Claims Copyright Court for Creators</u>, Dallas Bar Association.

- (2020) Featured Speaker, <u>Copyright Year in Review</u>, 58th Annual Conference on Intellectual Property Law, Center for American and International Law.

- (2020) Featured Speaker, <u>Instagram, Photography, and Automatic Sublicenses CLE Program</u>, Dallas Bar Association.

- (2019) Featured Speaker, <u>Copyright in the Arts</u>, 57th Annual Conference on Intellectual Property Law, Center for American and International Law.

- (2017) Creator / Featured Speaker, <u>Art Law Boot Camp CLE Program</u>, Dallas Bar Association.

My Publication and Selected Speaking Engagement list is included in my Curriculum Vitae, a copy of which is designated **Appendix 1**.

## II.    PRIOR TESTIMONY

Travis Duncan v. Blackbird Products Group, LLC
United States District Court, Western District of Missouri, Southern Division
Case No.: 17-03404-CV-S-BP

Scott Gunnells v. Michael Joseph Teutul, et. al.
United States District Court, Southern District of New York
Case No.: 1:19-cv-05331-JSR

Mark Seliger v. Breitbart News Network, LLC, et. al.
United States District Court, Southern District of New York
Case No.: 1:20-cv-02860-ER

Mark Seliger v. Oath, Inc., et. al.
United States District Court, Southern District of New York
Case No.: 1:20-cv-02966-DLC

## III.   COMPENSATION

For this matter, I am charging my current rate of $550.00 per hour worked. My

compensation is not contingent upon, or related in any way, to the outcome of this matter.

## IV.   MATERIALS CONSIDERED

In preparing this Preliminary Expert Report (the "Report"), I have evaluated and base the

opinions herein on the materials and documents listed in **Appendix 2**.

## V.   BACKGROUND AND FACTS

Based on the materials provided to me in this matter, the background is as follows. Plaintiff

McGucken is a photographer who created a landscape photograph of Death Valley, California (the

"Photograph"). McGucken posted the image on his social media account on the Instagram service

on March 13, 2019. An author of articles for Newsweek.com ("Newsweek") posted a comment on

McGucken's Instagram account requesting consent to use the Photograph on the for-profit website

Newsweek.com. McGucken did not respond to this comment or otherwise provide consent to

Newsweek. Subsequently, Newsweek displayed the Photograph as part of an article, which ran with

advertising, on its website via the Instagram API embedding feature. The Photograph remained part

of the article and posted online for a number of months before it was removed, and for 2-3 months after McGucken alleged infringement. The subject Photograph and a screenshot of the article are located for reference in **Appendix 3**.

## VI.    DISCUSSION AND OPINIONS

This matter presents multiple, interrelated questions of photographic industry standards, licensing and social media, fair use, general copyright matters.

### A.   Professional Photography and Copyright Licensing

McGucken is a professional photographer. That is, he makes money by creating visual works and then selling them in a variety of media. Based on his website, he focuses on "fine art" and creates prints of his works, as well as, like in this matter, licensing them for a fee to others who may wish to reproduce them.[2] McGucken's work evinces skill and craft of a focused and dedicated photographer. As a professional photographer, McGucken features his work on his website, on Instagram, and on Facebook, the latter two of which are linked to from his website.[3]

The core of all professional photography is the license. It is listed in statute, been held by the courts, and taught by ASMP, that a copyright vests in the photographer at the moment the work is fixed in a tangible medium.[4] As I often note to visual creators, there is nothing else one has to do to obtain a copyright in one's work; the act of pressing the shutter will generally do that automatically.

Once the photographer has taken the image and a copyright has been created, the photographer now has a set of exclusive rights, three of which are the right to display the work, the right to distribute the work, and the right to reproduce the work. The photographer may, at his

---

[2] ELIOT MCGUCKEN FINE ART PHOTOGRAPHY, https://www.emcgucken.com/ (last visited April 1, 2021).
[3] *Id.*
[4] 17 U.S.C. §102.

discretion, enter into a contractual arrangement with the client to allow for usage through the vehicle of a license. The license takes the rights that are owned exclusively by the photographer and allows a smaller portion of those rights to be utilized by the client in a specific form and format. The license is at the heart of professional photography.

The purpose of the license is straightforward. It exists to enumerate and clarify those rights which are being shared or divested by the photographer and outlines the bargain that is struck. To allow a client to reproduce, distribute, or display my photographs, I must have entered into a license (or be subject some statutorily recognized exception such as fair use) or the other party would be infringing upon my exclusive copyright rights.

1. Social Media and Licensing

At issue in this case is the interplay between McGucken and Newsweek, with Instagram as the intermediary. Instagram has, in the past decade, become a critical outlet for the professional photographer. Instagram has over one billion users (of which more than 500 million are active each day)[5] and those users upload 100 million photographs each day.[6] In sum, 63% of Instagram users visit Instagram daily.[7] Simply put, the professional photography industry relies heavily on Instagram to provide the platform that will result in a photographer's livelihood continuing to exist.

There are multiple types of Instagram Profiles, but the two most relevent here are public and private. Of particular note, for a professional photographer, having a private profile severely curtails

---

[5] FACEBOOK FOR BUSINESS, https://www.facebook.com/business/marketing/instagram# (last visited April 1, 2021).
[6] INSTAGRAM BY THE NUMBERS: STATS, DEMOGRAPHICS & FUN FACTS, https://www.omnicoreagency.com/instagram-statistics/ (last visited April 1, 2021).
[7] SOCIAL MEDIA FACT SHEET, https://www.pewresearch.org/internet/fact-sheet/social-media/ (last visited April 1, 2021).

the benefits of Instagram by depriving the creator of the views of the user base. And while the argument is made that to prevent infringing uses like this, the photographer can simply make their profile "private", that is a false choice and bad policy. Most pointedly, a professional uses Instagram to promote themselves and their work. Instagram provides that platform, but even more, provides professional users with analytics, monetization opportunities, and other business focused resources. Unless your profile is private. Then, as here, McGucken would have lost his ability to share his work with the Instagram community. For photographers like McGucken, it should not have to be a choice to avail yourself of the world's most powerful image platform and then, when you do, essentially elect to have your work infringed without your consent.

When a user makes their profile "public", as the vast majority of professional photographers do, the photographer allows their work to be seen by others in the Instagram apps and at Instagram.com. But Instagram also allows for work to be "embedded" in a different webpage.[8] Embedding allows for an image to be displayed on a webpage or app different from Instagram itself.

In the normal course of business in the photography industry, a website owner, publication, or other client may identify an image that they wish to feature on their site, contact the photographer, and enter into an arm's-length transaction for a license to display or distribute the work.

There are multiple models of licensing, including "rights-managed" wherein there is a price set for the specific usage contemplated (e.g. one-year, interior webpage only, North American use

---

[8] INTRODUCING WEB EMBEDDING INSTAGRAM CONTENT ON WEBSITES, https://about.instagram.com/blog/announcements/introducing-web-embedding-instagram-content-on-websites (last visited April 1, 2021).

only, exclusive use).[9]  Alternatively there are "royalty-free" licenses which allow for a broad set of uses for one price.[10] Additionally, hybrid and other emerging models can be seen regularly in industry practice.

Here, Newsweek ran a story about Death Valley which, in large measure, was taken from a different story from the publication the San Francisco Gate ("SF Gate"). SF Gate had contacted McGucken, interviewed him, and properly licensed the work for publication from him. Newsweek, having at some point seen or become aware of this article (as it is referenced in some places verbatim), attempted to contact McGucken, received no response or affirmative consent to use his work, and then, via the embed feature of Instagram's API, proceeded to illustrate the article with the image nevertheless.

By following a standard industry practice of reaching out to a creator before featuring their work, SF Gate was not an outlier. Based on the documents produced by McGucken, the publications The Daily Mail, the National Parks Conservation Association, PetaPixel, Smithsonian Magazine, AccuWeather, Atlas Obscura, and Live Science all responsibly spoke with McGucken, obtained his consent, and provided one or more forms of compensation prior to posting his images.[11] Newsweek, however, chose not to do so, and took for free what other publications had to negotiate for: McGucken's image. It is a core tenant of the industry of visual creators, and photographers specifically, that copyright, licensing, and permission is sacrosanct. To proceed otherwise would give organizations like Newsweek what in essence is a 100 million photo-a-day free pass from ever having to pay for the visual content that drives readership, clicks, and monetization.

---

[9] *See* AMERICAN SOCIETY OF MEDIA PHOTOGRAPHERS, Professional Business Practices in Photography, *Glossary of Industry Terms*, p. 438 (7th Edition 2008).
[10] *Id.*
[11] *See* Bates No. MCGUCKEN 000016-053, MCGUCKEN00059-083

This strikes at the heart of copyright statute and jurisprudence which, as the 2nd Circuit aptly described in a recent opinion when discussing the scenario that if users could appropriate all images for free: "This, in turn, risks disincentivizing artists from producing new work by decreasing its value – the precise evil against which copyright law is designed to guard."[12]

### 2.   Instagram Addresses Embedding

The pleadings and motions in this case show fundamental disagreements on the nature of the license granted and the policies of not only Newsweek, but also Instagram. During the pendency of this case, a separate matter being heard in District Court in the Southern District of New York released an opinion that, in short, deeply concerned all visual creators. That case, *Sinclair v. Ziff-Davis*[13], is deeply briefed in the materials by the parties, but its impact on the industry had two major prongs. First, associations like ASMP heard immediate and clear outcry at the interpretation of the court. On behalf of ASMP and seven other visual creator groups, I drafted a letter on April 17, 2020 to the CEO's of Instagram and Facebook discussing the matter and registering the concerns of the industry.[14] A few months later, on June 4, 2020, Instagram, through a spokesperson, said:

> "While our terms allow us to grant a sub-license, we do not grant one for our embeds API. Our platform policies require third parties to have the necessary rights from applicable rights holders. This includes ensuring they have a license to share this content, if a license is required by law."[15]

---

[12] *Andy Warhol Foundation for the Visual Arts, Inc. v. Goldsmith*, 2021 WL 1148826, at *15 (C.A.2 (N.Y.), 2021).

[13] *Sinclair v. Ziff Davis, LLC*, 454 F.Supp.3d 342 (S.D.N.Y., 2020).

[14] LETTER TO INSTAGRAM FROM ASMP AND SEVEN OTHER VISUAL CREATORS GROUPS, American Association of Media Photographers, https://www.asmp.org/advocacy/letter-to-instagram-from-asmp-and-seven-other-visual-creators-groups/ (last visited April 1, 2021).

[15] Lee, Timothy, INSTAGRAM JUST THREW USERS OF ITS EMBEDDING API UNDER THE BUS, Ars Technica. https://arstechnica.com/tech-policy/2020/06/instagram-just-threw-users-of-its-embedding-api-under-the-bus/ (last visited April 1, 2021).

This clear indication by Instagram's parent company Facebook's spokesperson, reset the table on the matter that was at issue in *Sinclair*, and again in the instant case. Other writers from publications on all sides of this issue drafted articles about how Instagram finally clarified a policy that had engendered outrage in the community of Instagram users.[16] Sinclair was successful in her motion for reconsideration, and visual creators were able to move forward knowing it was not Instagram's intention to divest an entire industry of its copyrights.

>    3.   Newsweek's Policies and Procedures

As part of the documents I was provided to review was a deposition of a designated corporate representative for Newsweek, Director of Photography Diane Rice. As part of this deposition, Ms. Rice discussed a document that she authored and that outlines Newsweek's policy and guidelines for posting photographs.[17] In large measure, these policies *do* reflect industry standards.

For example, Clause 3 states: "**Do not use images without requesting permission:** Do not use photos from 'free stock sites', screen grabs from videos or social media, unless you have express permission from the image creator."[18] (emphasis in original). Here, we see a policy that is

---

[16] *See, e.g.*, Robertson, Adi, INSTAGRAM SAYS SITES NEED PHOTOGRAPHERS' PERMISSION TO EMBED POSTS, The Verge, https://www.theverge.com/2020/6/5/21281618/instagram-photo-embed-sublicense-copyright-lawsuit-newsweek-mashable (last visited April 1, 2021); INSTAGRAM SAYS YOU NEED PERMISSION TO EMBED SOMEONE'S PUBLIC PHOTOS, PetaPixel, https://petapixel.com/2020/06/05/instagram-says-you-need-permission-to-embed-someones-public-photos/ (last visited April 1, 2021); Bonifacic, I., INSTAGRAM MAY REQUIRE PERMISSION BEFORE EMBEDDING PHOTOS, engadget, https://www.engadget.com/instagram-embed-feature-statement-202123688.html (last visited April 1, 2021); Smith, Ernie, INSTAGRAM'S SURPRISE HEADACHE FOR DIGITAL PUBLISHERS, Associations Now, https://associationsnow.com/2020/06/instagrams-surprise-headache-for-digital-publishers/ (last visited April 1, 2021).

[17] *See generally*, Rice Dep.; *See* Bates No. NEWS000001-002.

[18] Bates No. NEWS000001

clear as to two pertinent details: (1) you must request permission; and, (2) do not use photos from social media unless you have express permission from the image creator.

Nowhere in this document does it note that there are different rules for embedding images, but Ms. Rice made that distinction throughout her deposition.[19] That distinction, however, is not present in the policy, but the idea of express permission certainly is. One particular exchange characterizes how Newsweek views this matter and stands in opposition to how photographers would see the same. When asked if McGucken's lack of response was "implied consent" to use the image, Ms. Rice replied: "We don't need permission to embed. We didn't ask for permission to embed."[20]

In this case, the author of the story *did* request permission from McGucken. And, unlike other publications that sought his consent, when he did not respond, Newsweek embedded the image where it appeared in the article in an analogous fashion to uploading it themselves. Seeking consent, and when consent is not given, doing it anyway is the anthesis of industry standards and practice in photography.

4.   Fair Use and Illustration

Newsweek offers an alternative to the idea that the image was properly sub-licensed to them – that the image was excused from infringement due to fair use. Photographers often hear the refrain of "fair use" when discussing usage of their images with clients and infringers. There may be no larger gray area in copyright law in the minds of visual creators than what is and what is not a fair

---

[19] *See, e.g.,* Rice Dep. 89:15-24.
[20] Rice Dep. 135:10-11.

use. The four factors outlined in *Campbell v. Acuff-Rose*[21] are not well understood by many in the visual arts, and this misunderstanding inflicts severe damage on both copyright holders and users.

My opinion in this matter as relates to fair use will focus on two primary matters: the nature of a photograph that is used on a website, and the harm to the market for McGucken as a professional photographer.  Factor one of the fair use analysis concerns the purpose and character of the use; and more specifically, whether that use is transformative. The more transformative a use, the more likely it is to be "fair". In the preamble to Section 107 of the Copyright Act, the law notes that certain uses are often examples of a fair use. These include "criticism, comment, news reporting, teaching…"[22]  So what separates a fair use of an infringed image from that of just an infringed image? In Ms. Rice's deposition, she is asked a series of questions that drive towards understanding how the image and the article relate.[23] If the article is a critique, commentary, or news reporting on the photograph itself, the first factor would tend towards fair use. An example of that can be easily imagined such as an art critic's column in the newspaper about a recent painting seen at a local gallery opening. The article is specific commentary and critique (and news reporting) on the image itself. That is not what we have here.

As Ms. Rice noted, "the story is about the formation of this lake."[24] The story is not about McGucken. It is not about the photograph. It is about a weather pattern in Death Valley that produced a lake, and the way to illustrate that matter is to show a picture of weather occurring in Death Valley. The article draws upon experts who opine about the weather and this lake that was created. They do not comment and critique the *image*, but rather the cause. For a photographer like

---

[21] *Campbell v. Acuff-Rose Music, Inc.,* 510 US 569 (1994).

[22] 17 U.S.C. § 107.

[23] Rice Dep. 176:15 – 177:13.

[24] Rice Dep. 176:23-24.

McGucken, this is no different than another publication calling him up to license his image for their article on Death Valley. The use here is for a reason that every photographer knows well; articles with images sell better than those without. In fact, to show how non-essential McGucken's image is to this story, Newsweek still retains the story online without McGucken's image even today.[25] Any image will do; that is clearly not the case in the scenarios described by the fair use statutes.

As previously discussed, the license is at the heart of the world of photography. The ability to exchange his license of his image for value allows McGucken to continue creating works. In the four-factor analysis, the fourth factor questions, "whether, if the challenged use becomes widespread, it will adversely affect the potential market for the copyrighted work."[26] McGucken works in at least two markets: the fine art print market and the editorial licensing market. Those who would buy a print of this work may very well be less inclined to do so if the use that Newsweek made was widespread. Likewise, in the photography industry, exclusivity and retention of control of where your image is placed is critical to negotiating current and future rates for that image. Put simply, it is generally true that the less a work is exploited (or exploited in certain markets) the more value it retains. The ASMP Professional Business Practices in Photography book and associated resources devote pages to the parameters of exclusivity, and the axiomatic principle that the more exclusive a work, the higher a fee can be negotiated.[27] It is McGucken's right to choose when and how to sell his work. In a very real sense, uses such as Newsweek's assist in devaluing the image at issue.

---

[25] HUGE LAKE APPEARS IN DEATH VALLEY, ONE OF THE HOTTEST, DRIEST PLACES ON EARTH, Newsweek, https://www.newsweek.com/death-valley-lake-california-flooding-rain-winter-storm-1362695 (last visited April 1, 2021).

[26] *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 613 (2d Cir. 2006).

[27] *See, e.g.,* AMERICAN SOCIETY OF MEDIA PHOTOGRAPHERS, Professional Business Practices in Photography 353-354 (7th ed. 2008).

Expert Report of Thomas Maddrey
Elliot McGucken v. Newsweek, LLC, *et. al.*
April 1, 2021
Page 15 of 28

## VII.   CONCLUSION

Based on the above, my experience in the industry, and the materials provided to me to date, it is my opinion that Newsweek infringed on the copyright of McGucken by displaying his image on their site via "embedding", failed to follow industry standards and practices (including their own written policies) when displaying the image without the creator's permission or consent, and that the article in question was not a "transformative" use as it would be applied to the professional photography industry, but did harm McGucken's current and future market by depriving him of the right to control the display and distribution of his work.

## VIII.   RIGHT TO SUPPLEMENT

If further testimony or document production occurs, or if any expert testimony is offered to support Defendant's defenses and counterclaims, I respectfully reserve the right to supplement this Report or provide rebuttal testimony at the request of McGucken.

Respectfully submitted,

Date:_____April 1, 2021_____

Thomas Maddrey

# Appendix 1
# Curriculum Vitae of Thomas Maddrey

Thomas Maddrey
Curriculum Vitae

## Contact Information

6333 E. Mockingbird Ln.
Ste. 167-476
Dallas, TX 75214
tbm@maddreyconsulting.com
214-702-9862

## About Thomas Maddrey

Thomas Maddrey is the General Counsel and Head of National Content and Education for the American Society of Media Photographers, one of the oldest and largest commercial photography trade associations in the United States. Previously, he was the founding member and principal attorney at Maddrey PLLC, a boutique copyright, art, and photography firm in Dallas, TX. Thomas is a member in good standing of the Bar of the Supreme Court of the United States, the Bar of the 2nd, 4th, 5th, and 9th Circuit Courts of Appeals, and the State of Texas.

Prior to becoming an attorney, Thomas was a professional commercial, editorial, and fine art photographer and photographic educator. He founded his own photography company, Tom Maddrey Images, as well as the Eclipse Photography Institute, an online and retail company that created courses and materials for working photographers. Thomas was trained at the Brooks Institute of Photography in Santa Barbara, CA.

In his role as General Counsel for ASMP, he has worked with over 150 photographers in the last calendar year to help answer and guide them in areas such as licensing, copyright, contracts, and business development. In his prior legal practice, he worked with over a hundred companies and authors in their copyright and general business matters. A regular author and educator both for the general public as well as other attorneys, Thomas also has been the lead or co-author and counsel of record on multiple appellate and U.S. Supreme Court amicus briefs in cases related to copyright and photography. His article "Photographers, Creators, and the Changing Needs of Copyright Law" has been cited by the Vanderbilt Journal of Entertainment and Technology Law, the Minnesota Journal of Law, and the Capital University Law Review, among others. He is regularly sought for interviews by Bloomberg Law and Law360 on copyright and photography matters.

## Work + Professional Experience

American Society of Media Photographers                               Bethesda, MD
    General Counsel and Head of National Content & Education, *March 2021 - Present*
    External General Counsel, *July 2016 – March 2021*
- Work with more than 3500 professional commercial photographers to provide guidance on copyright, licensing, contract and other industry-specific topics.
- Maintain and organize all judicial and legislative advocacy activities related to photographic and copyright industries.

Maddrey PLLC                                                             Dallas, TX
    Founder // Principal Attorney, *August 2015 – March 2021*
- Founded full-service law firm dedicated to helping the "creative" community including photographers, visual artists, museums, collectors, galleries, and entrepreneurs and start-up companies.
- Focuses on copyright law, art law, and photography-specific clients.

Harrison & Hull, LLP                                                   McKinney, TX
    Attorney, *May 2013 – August 2015*

Eclipse Photography Institute                                          Dallas, TX
    CEO + Co-Founder, *2009 – 2011*
- Established retail and online education portal for photographic community specializing in technical, marketing, and business training through DVD's and on-demand videos and courses.

Tom Maddrey Images                                      Dallas, TX and Santa Barbara, CA
    Principal + Founder, *2006 – 2010*
- Established commercial and fine art photography business specializing in editorial images.
- Taught individuals through workshops and seminars throughout the U.S. and Canada.

## Amicus + Appellate Briefs Published

The Supreme Court of the United States Amicus Briefs

    Amicus Brief of American Society of Media Photographers, Inc. and California Society of Entertainment Lawyers Joined by Five Other Creator Rights Groups in Support of Petitioner., *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P., et al.* 959 F.3d 1194 (9th Cir. 2020) (No. 20-915)

- Co-Author

Amicus Curiae Brief in Support of Petitioner, Geophysical Service, Inc. v. TGS-NOPEC Geophysical Co., 2020 WL 2621718 (2020) (No. 19-873) (Cert. Denied).
- Counsel of Record and Co-Author

Brief for the American Society of Media Photographers, Inc. and the National Press Photographers Association as Amicus Curiae in Support of Petitioners, Allen v. Cooper, 140 S.Ct. 994 (2020) (No. 18-877).
- Counsel of Record and Co-Author

Amicus Curiae Brief for American Society of Media Photographers, Inc., California Society of Entertainment Lawyers, American Photographic Artists, and Association of Real Estate Photographers in Support of Petitioner, Gold Value International Textile, Inc. v. Sanctuary Clothing, LLC, 140 S.Ct. 1294 (2020) (No. 19-708) (Cert. Denied).
- Counsel of Record and Co-Author

Brief for The American Society of Media Photographers, Inc. and The National Press Photographers Association as Amici Curiae in Support of Petitioner, Rentmeester v. Nike, 139 S.Ct. 1375 (2019) (No. 18-728) (Cert. Denied).
- Co-Author

Federal Court Appellate Amicus Briefs

Brief for Amicus Curiae The American Society of Media Photographers, Inc., in Support of Defendants-Counter-Claimants-Appellants, The Andy Warhol Foundation for the Visual Arts, Inc. v. Lynn Goldsmith and Lynn Goldsmith, LTD., 382 F.Supp.3d 312 (S.D. New York 2019) (2nd Cir, No. 19-2420).
- Counsel of Record and Co-Author

Brief for Amicus Curiae The American Society of Media Photographers, Inc. in Support of Appellants, American Society of Journalists and Authors, Inc. and National Press Photographers Association v. Xavier Becerra, 2020 WL 1434933 (C.D. Cal 2019) (9th Cir, No. 20-55408).
- Counsel of Record and Sole Author

Brief for Amicus Curiae American Society of Media Photographers, Inc. and National Press Photographers Association in Support of Plaintiff-Appellant, Brammer v. Violent Hues, 922 F.3d 255 (E.D. Va. 2019) (4th Cir., No. 18-1763).
- Co-Author

<u>State Court Appellate Amicus Briefs</u>

Amicus Brief of the National Press Photographers Association and the American Society of Media Photographers in Support of the Petition for Review, Jim Olive Photography v. University of Houston System, (Cause No. 01-18-00534-cv) (Tex. 2019) (No. 19-0605).
- Co-Author


## Selected Publications

American Society of Media Photographers, Feature Articles (Various)
        2016 - Present

Thomas B. Maddrey, <u>Photography, Creators, and the Changing Needs of Copyright Law</u>, 16 SMU Sci. & Tech. L. Rev. 501 (2013).

Thomas Maddrey, <u>Does Mitigation Matter in Copyright Infringement Suits?  The Fifth Circuit Weighs In</u>, Dallas Bar Association, Headnotes March 2021 (Forthcoming).

Thomas Maddrey, <u>Copyright in the Age of Social Media</u>, Dallas Bar Association Headnotes, March 2020.

Thomas Maddrey, <u>How the Music Modernization Act Changes the Law</u>, Dallas Bar Association Headnotes, March 2019.

Thomas Maddrey, <u>Media Licensing Tips and Pitfalls</u>, Dallas Bar Association Headnotes, March 2018.

Thomas Maddrey, <u>Copyright Infringement – Pre-Litigation Checklist</u>, Dallas Bar Association Headnotes, March 2018.

Thomas B. Maddrey and Sammetria Goodson, <u>Transformative Use v. Derivative Use: Will the Outcome of a Recent Lawsuit Test the Limits of Fair Use Doctrine, or Result in a Free-For-All?</u>, American Society of Media Photographers, September 2017.

Thomas B. Maddrey, <u>Copyright Registration Basics</u>, Artists Uprising, August 2017.

Thomas B. Maddrey, <u>Copyright: A Primer</u>, Artists Uprising, August 2017.

**Professional Associations**

Board Member
- The Copyright Alliance
- Arts Counsel Texas (Executive Committee)
- The Dallas Opera (Executive Committee)
- Entertainment, Art, and Sports Law Section, Dallas Bar Association (Vice-Chair)

Designated Representative
- Authors Coalition of America
- Coalition of Visual Artists

Member in Good Standing:
- The Copyright Society of the United States
- Dallas Bar Association
- Dallas Association of Young Lawyers
- Texas Bar Association
- American Bar Association
- American Society of Media Photographers
- Professional Photographers of America

**Selected Speaking Engagements**

Thomas Maddrey has taught webinars and continuing legal education (CLE) courses, presented at conferences, and been featured in live and recorded programming at least 100 times in his career. Below is a sampling of some of his recent and past engagements. Approximately eight months a year, Thomas presents an educational lunchtime program for artists through Arts Counsel Texas, and in his role at ASMP, he conducts between 10-30 webinars each year.

(2020) Featured Speaker, Copyright Year in Review, 58th Annual Conference on Intellectual Property Law, Center for American and International Law.

(2020) Featured Speaker, Instagram, Photography, and Automatic Sublicenses CLE Program, Dallas Bar Association.

(2019) Moderator, Law and Opera CLE Program, The Dallas Opera.

(2019) Panelist, The State of Art Law in Texas CLE Program, Dallas Bar Association.

(2019) Featured Speaker, <u>Copyright in the Arts</u>, 57th Annual Conference on Intellectual Property Law, Center for American and International Law.

(2017) Creator / Featured Speaker, <u>Art Law Boot Camp CLE Program</u>, Dallas Bar Association.

## Academic History

SMU Dedman School of Law                                                                                    Dallas, TX
    Juris Doctor, *May 2014*
- Articles Editor, SMU Science and Technology Law Journal

University of Texas at Dallas                                                                              Dallas, TX
    Bachelor of Science in Business Administration, *December 2009*

Brooks Institute                                                                                Santa Barbara, CA
    Bachelor of Arts in Photography, Cum Laude, *December 2005*

## Selected Press

Allen Murabayashi, <u>Advice on Handling Contract Cancellations for Photographers</u>, PetaPixel (March 25, 2020), [https://petapixel.com/2020/03/25/advice-on-handling-contract-cancellations-for-photographers/](https://petapixel.com/2020/03/25/advice-on-handling-contract-cancellations-for-photographers/).

Kyle Jahner, <u>Mercedes Fight with Muralists Test Building Copyright Bounds</u>, Bloomberg Law (April 23, 2019, 11:35 AM), [https://news.bloomberglaw.com/ip-law/mercedes-fight-with-muralists-tests-building-copyright-bounds](https://news.bloomberglaw.com/ip-law/mercedes-fight-with-muralists-tests-building-copyright-bounds).

Greg Mocker, <u>Pictures of Art Structure at Hudson Yards Become Subject of Controversy</u>, Scripps Media, Inc. (March 20, 2019, 11:48 PM), [https://www.pix11.com/2019/03/20/pictures-of-art-structure-at-hudson-yards-become-subject-of-controversy/](https://www.pix11.com/2019/03/20/pictures-of-art-structure-at-hudson-yards-become-subject-of-controversy/).

Kyle Jahner, <u>Nike 'Jumpman' Logo Takes Center Court in Photo Copyright Fight</u>, Bloomberg Law (December 17, 2018, 10:06 AM), [https://news.bloomberglaw.com/ip-law/nike-jumpman-logo-takes-center-court-in-photo-copyright-fight](https://news.bloomberglaw.com/ip-law/nike-jumpman-logo-takes-center-court-in-photo-copyright-fight).

<u>Photogs Ask 9th Circ. To Rethink Nike's 'Jumpman' IP Win</u>, Law360 (April 25, 2018, 7:52 PM), [https://www.law360.com/articles/1037386/photogs-ask-9th-circ-to-rethink-nike-s-jumpman-ip-win](https://www.law360.com/articles/1037386/photogs-ask-9th-circ-to-rethink-nike-s-jumpman-ip-win).

Brenda Sapino Jefferys, <u>Art Law May Be the Next Big Thing In Texas</u>, Texas Lawyer (May 1, 2017, 4:00 AM), https://www.law.com/texaslawyer/almID/1202784994164/Art-Law-May-Be-the-Next-Big-Thing-in-Texas/?slreturn=20200814143351.

# Appendix 2
# Materials Considered

# Materials Considered

| Type | Description | Reference |
|---|---|---|
| Complaint | Plaintiff's First Amended Complaint. | N/A |
| Answer | Defendant's Answer to Plaintiff's Amended Complaint. | N/A |
| Opinion | Courts Opinion and Order on Defendant's Motion to Dismiss. (June 1, 2020) | Docket Document No. 35 |
| Opinion | Court's Opinion and Order on Defendant's Motion for Partial Reconsideration. (October 19, 2020) | Docket Document No. 41 |
| Documents Produced | Documents Produced by Plaintiff. | Bates No. MCGUCKEN000 001-105 |
| Documents Produced | Documents Produced by Defendant. | Bates No. NEWS000001-304 |
| Discovery | Defendant's Objections and Responses to Plaintiff's First Set of Requests for Production of Documents. | N/A |
| Discovery | Defendant's Responses and Objections to Plaintiff's First Set of Requests for Admission. | N/A |
| Discovery | Defendant's Answers and Objections to Plaintiff's First Set of Interrogatories. | N/A |
| Discovery | Defendant's Answers and Objections to Plaintiff's Second Set of Interrogatories. | N/A |
| Discovery | Defendant's Responses and Objections to Plaintiff's Second Set of Requests for Admission. | N/A |
| Memorandum | Defendant's Memorandum of Law in Support of Its Motion to Dismiss Plaintiff's Amended Complaint. | Docket Document No. 21 |
| Declaration | Declaration of Nancy E. Wolff. | Docket Document No. 22 to 22-10 |
| Motion | Plaintiff's Opposition to Defendant's Motion to Dismiss. | Docket Document No. 26 |
| Declaration | Declaration of Scott Allen Burroughs. | Docket Document No. 27 to 27-6 |
| Motion | Plaintiff's Supplemental Opposition to Defendant's Motion to Dismiss | Docket Document No. 28-1 |
| Memorandum | Defendant's Reply Memorandum of Law in Further Support of Its Motion to Dismiss Plaintiff's Amended Complaint. | Docket Document No. 34 |
| Memorandum | Defendant's Memorandum of Law in Support of Its Motion for Reargument and Reconsideration. | Docket Document No. 37 |

| Motion | Plaintiff's Opposition to Defendant's Motion for Reconsideration. | Docket Document No. 39 |
|---|---|---|
| Memorandum | Defendant's Reply Memorandum of Law in Further Support of Its Motion for Reargument and Reconsideration. | Docket Document No. 40 |
| Notice | Amended Notice of Deposition of Newsweek Digital LLC's Person Most Qualified | N/A |
| Deposition Transcript | Deposition of James Etherington-Smith | N/A |
| Deposition Transcript | Deposition of Diane Rice | N/A |
| Book | AMERICAN SOCIETY OF MEDIA PHOTOGRAPHERS, <u>Professional Business Practices in Photography</u> (7th ed. 2008). | N/A |
| Website | ELIOTT MCGUCKEN FINE ART PHOTOGRAPHY, https://www.emcgucken.com/ (last visited April 1, 2021). | N/A |
| Website | INSTAGRAM BY THE NUMBERS: STATS, DEMOGRAPHICS & FUN FACTS, https://www.omnicoreagency.com/instagram-statistics/ (last visited April 1, 2021). | N/A |
| Website | FACEBOOK FOR BUSINESS, https://www.facebook.com/business/marketing/instagram# (last visited April 1, 2021). | N/A |
| Website | Instagram by the Numbers: Stats, Demographics & Fun Facts. https://www.omnicoreagency.com/instagram-statistics/ (last visited April 1, 2021). | N/A |
| Website | SOCIAL MEDIA FACT SHEET, https://www.pewresearch.org/internet/fact-sheet/social-media/ (last visited April 1, 2021). | N/A |
| Website | AMERICAN SOCIETY OF MEDIA PHOTOGRAPHERS. http://www.asmp.org (last visited April 1, 2021). | N/A |

# Appendix 3
# Subject Photograph



## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 1, 2021, I caused to be served a true and correct copy of the

foregoing **PLAINTIFF'S RULE 26(a)(2) INITIAL EXPERT DISCLOSURES** on

Defendant's counsel of record via email, as follows:

Nancy Wolff
NWolff@cdas.com

Sara Gates
SGates@cdas.com

*Attorneys for Defendant Newsweek Digital LLC*

Date: April 1, 2021          By: _____

                                           Scott Alan Burroughs, Esq.
                                           Laura M. Zaharia, Esq.
                                           DONIGER / BURROUGHS
                                           Attorneys for Plaintiff