**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| ELLIOT MCGUCKEN, an individual,<br><br>Plaintiff,<br><br>v.<br><br>NEWSWEEK LLC, a New York Limited<br>Liability Company; and DOES 1-10, inclusive,<br><br>Defendants. | Civil Action No.: 1:19-cv-09617-KPF |

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S CROSS-MOTION AND REPLY MEMORANDUM IN FURTHER SUPPORT OF HIS MOTION FOR SUMMARY ADJUDICATION

i

## TABLE OF CONTENTS

I.    MCGUCKEN'S MOTION SHOULD BE GRANTED…………………………………...1

II.    ARGUMENT……………………………………………………………………………...1

    A.  Newsweek's display of Subject Photograph violated McGucken's exclusive display right……………………………………………………………………1

    B.  Newsweek's remaining dictionary arguments are unavailing……………………5

    C.  Newsweek concedes it displayed McGucken's photograph………………………8

    D.  Newsweek created an unauthorized derivative from McGucken's artwork………8

    E.  Newsweek has not provided any evidence of a sub-license………………………9

    F.  Instagram's public-statement rejects Newsweek's position and is admissible…..10

    G.  Instagram's terms make clear that no sub-license existed or exists……………...12

    H.  There was no implied license……………………………………………………16

    I.   There is no "industry standard" defense to copyright infringement……………..18

    J.   Newsweek cannot establish fair use……………………………………………..20

          1.  Purpose and character……………………………………………………21

               a.  The Subject Photograph, as depicted in the Instagram Post, is not the story……………………………………………………...21

               b.  Newsweek failed to transform the Subject Photograph…………23

               c.  Newsweek concedes commercial use…………………………...24

               d.  Newsweek acted in bad faith……………………………………24

          2.  Nature of the work………………………………………………………24

          3.  Amount used………………………………………………………………26

4.  Market effect…………………………………………………………26

K.  Newsweek's infringement was willful………………………………………28

III.    SUMMARY ADJUDICATION IN FAVOR OF MCGUCKEN IS PROPER………...29

PLAINTIFF'S OPPOSITION TO DEFENDANT'S CROSS-MOTION AND REPLY MEMORANDUM IN
FURTHER SUPPORT OF HIS MOTION FOR SUMMARY ADJUDICATION

# TABLE OF AUTHORITIES

Page(s)

Cases

*Am. Broad. Cos. V. Aereo, Inc.*,
   134 S. Ct. 2498 ................................................................................................................ 2
*Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*,
   992 F.3d 99 (2d Cir. 2021) ....................................................................................... 21, 27
*Associated Press v. Meltwater U.S. Holdings, Inc.*,
   931 F. Supp. 2d 537 (S.D.N.Y. 2013) .................................................................................. 3
*Atari Games Corp. v. Nintendo of Am. Inc.*,
   975 F.2d 832 (Fed. Cir. 1992) ........................................................................................... 7
*Boesen v. United Sports Publ'ns, Ltd.*,
   2020 WL 6393010 (E.D.N.Y. Nov. 2, 2020) ..................................................................... 22
*BWP Media USA, Inc. v. Gossip Cop Media, LLC*,
   87 F. Supp. 3d 499 (S.D.N.Y. 2015) ................................................................................. 21
*Campbell v. Acuff-Rose Music, Inc.*,
   510 U.S. 569 (1994) .......................................................................................................... 27
*Cont'l Indus. Grp., Inc. v. Altunkilic*,
   2020 WL 3884312 (S.D.N.Y. July 1, 2020) ...................................................................... 10
*Effects Assocs., Inc. v. Cohen*,
   908 F.2d 555 (9th Cir.1990) ............................................................................................. 16
*EMI Christian Music Grp., Inc. v. MP3tunes, LLC*,
   844 F.3d 79 (2d Cir. 2016) ............................................................................................... 18
*Flo & Eddie, Inc. v. Sirius XM Radio Inc.*,
   80 F. Supp. 3d 535 (S.D.N.Y. 2015) ................................................................................. 17
*Gardner v. Nike, Inc.*,
   279 F.3d 774 (9th Cir. 2002) ............................................................................................ 16
*Goldman v. Breitbart News Network, LLC*,
   302 F. Supp. 3d 585 (S.D.N.Y. 2018) ....................................................................... 2, 3, 4
*Google LLC v. Oracle Am., Inc.*,
   141 S. Ct. 1183 (2021)....................................................................................................... 21
*Graham v. James*,
   144 F.3d 229 (2d Cir. 1998) ....................................................................................... 14, 15
*Hamil Am. Inc. v. GFI*,
   193 F.3d 92 (2d Cir. 1999) ............................................................................................... 28
*Jose Luis Pelaez, Inc. v. McGraw-Hill Glob. Educ. Holdings LLC*,
   399 F. Supp. 3d 120 (S.D.N.Y. 2019) ............................................................................... 17
*Leader's Institute, LLC v. Jackson*,
   2017 WL 5629514 (N.D. Tex. Nov. 22, 2017) ................................................................ 4, 5
*Mathieson v. Associated Press*,
   1992 WL 164447 (S.D.N.Y. June 25, 1992) ..................................................................... 25

*Matthew Bender & Co. v. W. Pub. Co.*,
  158 F.3d 693 (2d Cir. 1998) ................................................................. 5, 8
*Matthew Bender & Co., Inc. v. West Publ'g Co.*,
  158 F.3d 674 (2d Cir.1998) ..................................................................... 9
*McGucken v. Newsweek LLC*,
  464 F. Supp. 3d 594 (S.D.N.Y. 2020) ............................................... 22, 27
*Michael Grecco Prods., Inc. v. Valuewalk, LLC*,
  345 F. Supp. 3d 482 (S.D.N.Y. 2018) ..................................................... 26
*Miller v. Glenn Miller Prods., Inc.*,
  454 F.3d 975 (9th Cir. 2006) ................................................................. 16
*Mourabit v. Klein*,
  816 F. App'x 574 (2d Cir. 2020) ............................................................... 6
*Muench Photography, Inc. v. McGraw-Hill Glob. Educ. Holdings, LLC*,
  367 F. Supp. 3d 82 (S.D.N.Y. 2019) ....................................................... 15
*N. Jersey Media Grp. Inc. v. Pirro*,
  74 F.Supp.3d 605 (S.D.N.Y. 2015) .......................................................... 25
*Nunez v. Caribbean Int'l News Corp.*,
  235 F.3d 18 (1st Cir. 2000) ............................................................... 22, 23
*Otto v. Hearst Commc'ns, Inc.*,
  345 F. Supp. 3d 412 (S.D.N.Y. 2018) ..................................................... 25
*Patrick Collins, Inc. v. John Doe 1*,
  945 F. Supp. 2d 367 (E.D.N.Y. 2013) ..................................................... 11
*PaySys Int'l, Inc. v. Atos Se, Worldline SA, Atos IT Servs. Ltd.*,
  226 F. Supp. 3d 206 (S.D.N.Y. 2016) ..................................................... 14
*Perfect 10, Inc. v. Amazon.com, Inc.*,
  508 F.3d 1146 (9th Cir. 2007) ................................................................. 1
*Psihoyos v. Pearson Educ., Inc.*,
  855 F.Supp.2d 103 (S.D.N.Y.2012) ........................................................ 17
*Regan Wood d/b/a Regan Wood Photography v. Oberserver Holdings, LLC; et al.*,
  2021 WL 2874100 (S.D.N.Y. July 8, 2021) .................................. 22, 26, 27
*Robinson v. Random House, Inc.*,
  877 F. Supp. 830 (S.D.N.Y. 1995) .......................................................... 25
*Sands v. What's Trending, Inc.*,
  2021 WL 694382 (S.D.N.Y. Feb. 23, 2021) ................................... 24, 26, 27
*Schering Corp. v. Pfizer Inc.*,
  189 F.3d 218 (2d Cir. 1999), as amended on reh'g ................................. 10
*Sheldon v. Metro Goldwyn Pictures Corp.*,
  81 F.2d 49 (2d Cir.) ............................................................................. 26
*SimplexGrinnell LP v. Integrated Sys. & Power, Inc.*,
  642 F.Supp.2d 206 (S.D.N.Y.2009) .......................................................... 9
*Sinclair v. Ziff Davis, LLC*,
  2020 WL 3450136 (S.D.N.Y. June 24, 2020) .......................................... 16

PLAINTIFF'S OPPOSITION TO DEFENDANT'S CROSS-MOTION AND REPLY MEMORANDUM IN
FURTHER SUPPORT OF HIS MOTION FOR SUMMARY ADJUDICATION

*SmithKline Beecham Consumer Healthcare, L.P. v. Watson Pharm., Inc.*,
   211 F.3d 21 (2d Cir.2000) ............................................................................. 16
*Solid Oak Sketches, LLC v. 2K Games, Inc.*,
   449 F. Supp. 3d 333 (S.D.N.Y. 2020) ........................................................... 17
*Unicolors, Inc. v. Urb. Outfitters, Inc.*,
   853 F.3d 980 (9th Cir. 2017) ......................................................................... 28
*VHT, Inc. v. Zillow Grp., Inc.*,
   918 F.3d 723 (9th Cir.) ..................................................................................... 2
*Waldman Publ'g Corp. v. Landoll, Inc.*,
   43 F.3d 775 (2d Cir.1994) ................................................................................ 9
*Walsh v. Townsquare Media, Inc.*,
   464 F. Supp. 3d 570 (S.D.N.Y. 2020) ........................................................... 22
*Ward v. Nat'l Geographic Soc.*,
   208 F. Supp. 2d 429 (S.D.N.Y. 2002) ........................................................... 16

## Statutes

17 U.S.C. § 101 ...................................................................................... 2, 5, 6, 9
17 U.S.C. § 106 ............................................................................................ 8, 9
17 U.S.C. § 106(2) ........................................................................................... 8
17 U.S.C. § 106(2)&(5) ................................................................................... 1
17 U.S.C. § 106(5) ........................................................................................... 2

## Rules

Fed.R.Evid. 807 ............................................................................................ 10

PLAINTIFF'S OPPOSITION TO DEFENDANT'S CROSS-MOTION AND REPLY MEMORANDUM IN
FURTHER SUPPORT OF HIS MOTION FOR SUMMARY ADJUDICATION

<u>**OPPOSITION TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**</u>

<u>**AND REPLY MEMORANDUM IN SUPPORT OF MOTION**</u>

**I.    MCGUCKEN'S MOTION SHOULD BE GRANTED**

It is now uncontroverted that Newsweek displayed McGucken's photography on its website amongst advertising and did so without McGucken's consent. Newsweek's proffered arguments against a finding of infringement, the majority of which are cribbed from a Ninth Circuit decision addressing readily distinguishable facts, have been roundly rejected and never adopted by any court in this Circuit and are all meritless. It is respectfully submitted that Newsweek's motion should be denied and McGucken's motion should be granted.

**II.    ARGUMENT**

None of Newsweek's arguments create a question of fact as to its liability for copyright infringement. It should therefore be found, as a matter of law, that Newsweek violated McGucken's exclusive right to display his copyrighted work and to create derivatives therefrom. See 17 U.S.C. § 106(2)&(5).

**A.    Newsweek's display of Subject Photograph violated McGucken's exclusive display right**

It is beyond dispute that Newsweek displayed McGucken's photograph on its commercial website. Newsweek's tortures the definitions of the words "display", "copy", "material object", and "fixed" in an attempt to invoke the dubious "server test" that was announced in *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007) back in 2007 – when the internet, if not an infant, was still a toddler – and has since been rejected or simply ignored.

Count this Circuit as one that has rejected *Perfect 10*'s "server test": "[f]our courts in this District have discussed the Server Test and *Perfect 10*'s holding; **none adopted the Server Test**

**for the display right**." *Goldman v. Breitbart News Network, LLC*, 302 F. Supp. 3d 585, 591 (S.D.N.Y. 2018)(emphasis added).

This rejection of the "server test" is not surprising in this context. As the copyright owner of his photography, McGucken enjoys the exclusive right "to display the copyrighted work publicly." 17 U.S.C. § 106(5). To "display" a work means "to show a copy of it, either directly or by means of a film, slide, television image, **or any other device or process**[.]" 17 U.S.C. § 101 (emphasis added). To "display" a work "publicly" means "to transmit or otherwise communicate a performance or display of the work […] to the public, **by means of any device or process, whether the members of the public capable of receiving the performance or display receive it in the same place or in separate places and at the same time or at different times**." Id. (emphasis added). This "by means of any device or process" language is extraordinarily broad, so broad that "the Copyright Office notes that the outer limits of the public display right have yet to be defined." *VHT, Inc. v. Zillow Grp., Inc*., 918 F.3d 723, 736 (9th Cir.), cert. denied, 140 S. Ct. 122, 205 L. Ed. 2d 41 (2019), citing U.S. COPYRIGHT OFFICE, THE MAKING AVAILABLE RIGHT IN THE UNITED STATES 47–51 (Feb. 2016), https://www.copyright.gov/docs/making_available/makingavailable-right.pdf.  This breadth dooms Newsweek's argument that the "process" by which they displayed McGucken's photography is somehow not within the purview of the Copyright Act's definition of "display."

Newsweek's contrary arguments are irreconcilable with the Supreme Court's explanation in *Am. Broad. Cos. V. Aereo, Inc.*, 134 S. Ct. 2498 that the Copyright Act is not concerned with the "behind-the-scenes way" that content is delivered, "invisibl[y]" to the recipient (134 S. Ct. 2498, 2507-08 (2014)), and such technical considerations are "not adequate to place [the defendant's] activities outside the scope of the act[.]" Id. at 2511; see also *N.Y. Times co. v.*

*Tasini*, 499 (2001) (to determine whether a work is infringed under the Copyright Act, a court must "focus on the [work] as presented to, and perceptible by" the public).

And even if *Perfect 10* was properly decided back in 2007, Newsweek ignores numerous important distinctions. In *Perfect 10* the small "thumbnail images" that populated the search result pages at issue would "automatically pop up when **a user** type[d] in a search term[,]" and they would pop up surrounded by numerous other thumbnail images. *Goldman,* 302 F. Supp. 3d at 590 (emphasis added). Here, Newsweek does not operate a search page and is not accused of infringement on the basis of it displaying a page full of multiple, small, low-resolution, thumbnail issues that "automatically" appeared on its site due to the acts of a "user" of its site. Instead, Newsweek displayed a full-size, full-resolution copy of McGucken's photograph with certain accompanying and insubstantial text. And, crucially, the full-size copy of McGucken's photograph was displayed by Newsweek as a result of volitional acts taken by Newsweek and **not** a user of the site. Thus, "even if the Server Test is rightfully applied in a case such as *Perfect 10*, or another case in which the user takes a volitional action of his own to display an image, it is inappropriate in cases such as those here, where the user takes no action to 'display' the image." *Goldman,* 302 F. Supp. 3d at 593.

Moreover, "[b]y emphasizing the small size and low resolution of the thumbnails, the Ninth Circuit relied on the fact that the thumbnails could not substitute adequately for the copyrighted works." *Associated Press v. Meltwater U.S. Holdings, Inc.*, 931 F. Supp. 2d 537, 556 (S.D.N.Y. 2013)(discussing *Perfect 10*). Here, it is clear that Newsweek's display of a full-size, verbatim copy of McGucken's photograph is infringement.

Newsweek itself even concedes that *Perfect 10* "focused only on the Ninth Circuit's decision regarding Google's storage of thumbnail images and did not address in-line linking or

framing[.]" Thus, even Newsweek admits that the server test has never been applied outside of the search engine context.

Other courts have noted that *Perfect 10* is limited to search results returning third-party images, and not a display on an infringer's first-party website: "unlike Google, [plaintiffs' website] did not merely provide a link by which users could access [defendant's] content but instead displayed [defendant's] content as if it were its own." *The Leader's Institute, LLC v. Jackson,* 2017 WL 5629514 at *11 (N.D. Tex. Nov. 22, 2017). Indeed, the Court in the *Leader's Institute* case went so far as to explain: "to the extent Perfect 10 [case] makes actual possession of a copy a necessary condition to violating a copyright owner's exclusive right to display her copyrighted works, the Court respectfully disagrees with the Ninth Circuit." The text of the Copyright Act does not make actual possession of a work a "prerequisite for infringement." Id.

And Newsweek's attempt to distinguish the leading case on this question, *Goldman v. Breitbart News Network, LLC,* 302 F. Supp. 3d 585 (S.D.N.Y. 2018), fails. Per Newsweek, "the Goldman decision [] overlooked that the text of the Copyright Act requires an actual copy (i.e., a 'material object . . . in which a work is fixed') and transmission by the defendant", contending that "for there to be a violation of the display right, there must be a 'material object' shown." (Cross-Mot., p. 10.) But, as discussed below, this construction is not only false but Newsweek's display of McGucken's photograph meets these definitions.

Newsweek further contends that "[p]rovision of HTML instructions, which do not embody the work, does not meet this statutory requirement." Id. But this is irrelevant, for the reasons set forth in *Goldman* and elsewhere. See*, e.g., The Leader's Institute, LLC,* 2017 WL 5629514 at *10 (addressing whether plaintiffs infringed defendant's exclusive display rights by "framing" defendant's websites and rejecting *Perfect 10*, holding that by "framing the defendant's copyrighted works, the plaintiffs impermissibly displayed the works to the public.").

PLAINTIFF'S OPPOSITION TO DEFENDANT'S CROSS-MOTION AND REPLY MEMORANDUM IN
SUPPORT OF HIS MOTION FOR SUMMARY ADJUDICATION

And as noted previously, here, "[u]nlike Google, [plaintiffs' website] did not merely provide a link by which users could access [defendant's] content but instead displayed [defendant's] content as if it were its own." Id. at *11. Newsweek's display of McGucken's photography to its viewers violated McGucken's exclusive display right.

### B.    Newsweek's remaining dictionary arguments are unavailing

Newsweek's argument that certain definitions in Section 101 of the Copyright Act excuse its infringement is meritless. For example, the full definition of "copy," which Newsweek conveniently elides, notes that it is a "material object[] in which a work is fixed **by any method now known or later developed, and from which the work can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device**. The term 'copies' include the material object, other than a phonorecord, in which the work is <u>**first**</u> fixed." 17 U.S.C. §101(emphasis added).  Clearly, McGucken fixed his photograph when he created same using his camera, and Newsweek's display of McGucken's photograph could be "perceived" by Newsweek's viewers.

Newsweek does no better with "fixed" because "[a] work is 'fixed' in a tangible medium of expression when its embodiment in a copy or phonorecord, by or under the authority of the author, <u>**is sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated for a period of more than transitory duration**</u>. A work consisting of sounds, images, or both, that are being transmitted, is 'fixed' for purposes of this title <u>**if a fixation of the work is being made simultaneously with its transmission**</u>." Id. And it is axiomatic that a work can be fixated "with the aid of a machine." *Matthew Bender & Co. v. W. Pub. Co.*, 158 F.3d 693, 702 (2d Cir. 1998). Again, it cannot be disputed McGucken fixed his photograph by capturing it with his camera, and that said work could be "perceived" by Newsweek viewers.

While there is no statutory definition for "material object" in Section 101, Newsweek's argument that it must mean a "tangible or physical object" is frivolous, as courts routinely find infringement in cases involving digital reproduction. Here, McGucken "fixed" the work at issue when he created it and made a digital copy, which Newsweek then copied and displayed on its website. This is infringement.

While Newsweek acknowledges that there is no statutory definition for "material object," it notes that this phrase is included with several categories covered under the Copyright Act, such as audiovisual works and literary works. But notably, "material object" is **excluded** from the definition of "pictorial, graphic, and sculptural works" which "include two-dimensional and three-dimensional works of fine, graphic, and applied art, photographs, prints and art reproductions[.]" 17 U.S.C. § 101. Accordingly, photographs, regardless of whether they are in physical or digital format, constitute material objects, which undoubtedly satisfy the definition of "fixed." See *Mourabit v. Klein*, 816 F. App'x 574, 579 (2d Cir. 2020) (holding that the subject "was fixed in the Photograph"); see also 17 U.S.C. §§ 101, 102 (explaining that copyright protection in certain works subsists in the original work of authorship "regardless of the nature of the material objects ... in which they are embodied"). The Subject Photograph, and Newsweek's display of McGucken's photograph, even if through an embedding process, was infringement.

Newsweek omits crucial portions of these definitions in its analysis concerning its exploitation and display of McGucken's artwork. The definitions of "display", "copy", and "fixed" must be considered in their entirety in determining what constitutes a "material object" and whether Newsweek displayed McGucken's proprietary work.

Here, the Subject Photograph, as displayed on McGucken's Instagram account, was a copy of a copyrighted work, which was fixed in a tangible medium of expression through McGucken's camera, digital file, and the Instagram account. Indeed, McGucken's photograph

and the Instagram post featuring the said photograph are "material objects" or "tangible mediums of expression" capable of being perceived and reproduced.[1] This is terminal to Newsweek's argument.

It is also notable that Newsweek's own evidence establishes that it indeed did "fix" a "copy" of the Instagram code relevant to McGucken's photograph in its proprietary CMS (or Content Management System). See Gates Decl. Ex. L at NEWS000009, pgs 3-5. Newsweek's CMS is the infrastructure underlying Newsweek's page and into which Newsweek fixed the code necessary to display the McGucken photograph on Newsweek's website.

Newsweek claims that "the embed code does not support a finding that it constitutes a 'material object' in which Plaintiff's work is fixed to support a violation of the display right." (Cross-Mot., p. 7.) But this argument misses the mark. Newsweek's violations of Section 106 of the Copyright Act arise from Newsweek's unlawful display of an unauthorized derivative work on its own site, and there is no requirement that the "process" by which that unauthorized work is displayed include the type of "material object" claimed by Newsweek.

Even if it did, McGucken's photograph, the Instagram post featuring said Photograph, and the Instagram embed code were copied and reproduced on Newsweek's CMS, and the Subject Photograph was displayed on Newsweek's public-facing website, all of which establishes fixation. Thus, Newsweek publicly displayed a "copy" of the Subject Photograph by transmitting or communicating the Subject Photograph to its audience.

Moreover, "the relevant statutory wording refers to material objects in which 'a work' readable by technology 'is fixed[.]'" See *Matthew Bender & Co., Inc. v. W. Pub. Co.*, 158 F.3d

---

[1] And the code that Newsweek copied from Instagram and reproduced on its own website also meets these definitions, though, notably "while these ones and zeros represent the configuration of machine readable software, the ones and zeros convey little, if any, information to the normal unaided observer." *Atari Games Corp. v. Nintendo of Am. Inc*., 975 F.2d 832, 844 (Fed. Cir. 1992). Thus, it was Newsweek's volitional act in adding this code to its website that resulted in the McGucken photograph being displayed on Newsweek's site.

693, 703 (2d Cir.1998). Here, Newsweek used a technological process to "fix" or make "sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated for a period of more than transitory duration" the McGucken photograph on Newsweek's website. Thus, Newsweek communicated and displayed McGucken's work to its audience. The relevant definitions all demonstrate that Newsweek displayed McGucken's photograph in violation of his copyrights.

### C.     Newsweek concedes it displayed McGucken's photograph

Newsweek admitted at deposition that it displayed McGucken's photograph on its website and that it was perceivable by Newsweek's viewers. Burroughs Decl., Ex. 14, 15:2-6; Ex. 13, 122:7-13, 134:7-9, 134:24-135:3 135:16-20, 201:9-17. Newsweek attempts to extinguish this undisputed, crucial testimony by arguing that its witnesses are non-lawyers and that its answers cannot be considered "a conclusory finding on one of the ultimate legal conclusions in the case." (Cross-Mot., p. 12.) But the opposite is true. Newsweek's lawyers' arguments are just that – arguments – and do not constitute evidence. The evidence, as provided by Newsweek's witnesses, conclusively establishes that Newsweek displayed McGucken's photograph.

McGucken has submitted additional evidence of this clear display, including screenshots reflecting Newsweek's display of McGucken's photography on Newsweek's website. Burroughs Decl., Exs. 3 & 4. This establishes a violation of his exclusive Section 106 display right.

### D.     Newsweek created an unauthorized derivative from McGucken's artwork

Under 17 U.S.C. § 106, McGucken also enjoys the exclusive right "to prepare derivative works based upon [his] copyrighted work." 17 U.S.C. § 106(2). A "derivative work" is defined as "a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or any other form in which a work may be recast,

transformed, or adapted." 17 U.S.C. § 101. In "order to qualify for protection as a derivative work" the putative derivative must "display sufficient originality so as to amount to an original work of authorship.'" *SimplexGrinnell LP v. Integrated Sys. & Power, Inc.*, 642 F.Supp.2d 206, 210–11 (S.D.N.Y.2009) (second omission in original) (quoting *Matthew Bender & Co., Inc. v. West Publ'g Co.*, 158 F.3d 674, 680 (2d Cir.1998)). The test for determining whether a work is derivative, although requiring a "variation that is more than merely trivial," is "concededly a low threshold." *Waldman Publ'g Corp. v. Landoll, Inc.*, 43 F.3d 775, 782 (2d Cir.1994).

Here, while the Newsweek article at issue, aside from McGucken's photograph, evinces very little in the way of creativity or originality, it may also qualify as a derivative work given the low threshold. So owing, Newsweek violated McGucken's exclusive Section 106 right to create derivative works from his original work when it created the infringing article.

### E.  Newsweek has not provided any evidence of a sub-license

In deciding Newsweek's motion to dismiss, this Court considered Instagram's Terms and Conditions and found that "none of them expressly grants a sublicense to those who embed publicly posted content. Nor can the Court find, on the pleadings, evidence of a possible implied sublicense." See Dkt. #35, p. 10. It is thus law of the case that nothing in Instagram's Terms of Service by themselves evidence the existence of a license in this case, and that Newsweek bears the burden of establishing a license. Yet Newsweek again advances arguments that were previously rejected while failing to introduce any evidence in that regard.

Newsweek's Cross-Motion presents no more evidence in support of its license defense than it had at the pleading stage.  It fails to cite to any communication with Instagram (or any other party) in which any license (let alone a license related to McGucken's photograph) is even discussed, and offers no other evidence to establish that Instagram granted Newsweek a

sublicense to display McGucken's photograph on its website. Absent such evidence, Newsweek's claim that it holds a perpetual sublicense to use McGucken's photography fails.

### F.     Instagram's public statement rejects Newsweek's position and is admissible

As set forth in the next section, Instagram's terms make clear Newsweek had to obtain permission to use McGucken's work, either from Instagram or from the copyright holder. But even if that were ambiguous (it is not), Instagram has publicly rejected Newsweek's position concerning embedding and the existence of a sub-license. Newsweek argues that Instagram's public stance, as described in the *Ars Technica* article (Burroughs Decl., Ex. 8), is hearsay, but this evidence is admissible under the "residual" exception to the hearsay rule. Fed.R.Evid. 807.

The residual exception to the hearsay rule provides that "a hearsay statement is not excluded by the rule against hearsay even if the statement is not admissible under a hearsay exception in Rule 803 or 804" if "(1) the statement is supported by sufficient guarantees of trustworthiness—after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement; and (2) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts." *Cont'l Indus. Grp., Inc. v. Altunkilic*, No. 14-CV-790 (AT) (JLC), 2020 WL 3884312, at *5 (S.D.N.Y. July 1, 2020), citing Fed.R.Evid. 807. Thus, "under this exception, the evidence must […] fulfill five requirements: trustworthiness, materiality, probative importance, the interests of justice and notice." *Schering Corp. v. Pfizer Inc.*, 189 F.3d 218, 231 (2d Cir. 1999), as amended on reh'g (Sept. 29, 1999) (citations and quotations omitted). Here, the *Ars Technica* article satisfies all five requirements.

The *Ars Technica* article is a trustworthy source. Indeed, *Ars Technica* has been in operation since 1998 and has been described as "a trusted, go-to source for news, reviews, and information about scientific advancements, technological breakthroughs, video gaming, tech

policy, gadgetry, software, hardware, and everything in between." See COLUMBIA JOURNALISM REVIEW, Ars Technica,  https://www.cjr.org/news_startups_guide/2011/06/ars-technica.php/, last visited July 9, 2021. Additionally, *Ars Technica* "operates as Condé Nast's only 100% digitally native editorial publication." See ARS TECHNICA, About Us, https://arstechnica.com/about-us/, last visited July 8, 2021. And federal district courts have previously relied on *Ars Technica*. See *Patrick Collins, Inc. v. John Doe 1*, 945 F. Supp. 2d 367, 372 (E.D.N.Y. 2013) (noting "the issue presented here has been the subject of a lively debate in many respects, both in the judicial system and across the internet" and citing to Ars Technica.) And Newsweek has not and cannot assert otherwise.

Moreover, the statements made by Instagram are material as to whether its terms provide a sub-license to third parties. As Instagram has indicated, "[w]hile [Instagram's] terms allow [Instagram] to grant a sub-license, [Instagram] do[es] not grant one for [its] embeds API. […] [Instagram's] platform policies require third parties to have the necessary rights from applicable rights holders. This includes ensuring they have a license to share this content, if a license is required by law." Burroughs Decl., Ex. 8. Given Newsweek's position that it received a sub-license from Instagram through its embedding API, Instagram's clarification is material to the parties' understanding of Instagram's policies. The materiality requirement is thus satisfied.

And contrary to Newsweek's assertions, Instagram's position regarding its terms is of probative importance to the parties' claims and defenses. Newsweek argues that the *Ars Technica* article should not be credited by the court because Instagram's "statements serve only to indicate Instagram's intent to change what it permits (which it did)." But this is false. Instagram's language in the *Ars Technica* article does not indicate that it is implementing new terms to address this position. Instead, Instagram is simply and unequivocally stating that its existing terms do not grant companies like Newsweek a sub-license. It also emphasizes that, as

McGucken contends, Instagram's policies require third parties to obtain permission before using an embedding process to display content on Instagram. The third factor thus weighs in favor of the residual exception.

Newsweek has also had notice of the existence of this article since at least June 30, 2020, when McGucken cited it in his Opposition to Newsweek's Motion for Reconsideration. (Dkt. #39, p. 8.) Newsweek had the opportunity to take discovery on this subject and certainly could have taken Instagram's deposition. But it declined to do so. And Instagram has not released any other statements regarding this topic. Because Newsweek declined the opportunity to obtain further discovery as to *Ars Technica* and Instagram, this factor also favors the residual exception.

Finally, it is in the interests of justice to consider the *Ars Technica* article because Newsweek's position is in direct contravention to Instagram's position and the spirit of the Copyright Act. Newsweek alleges that "there is no broad threat, as Plaintiff warns […] because Instagram has since changed its terms and its policy" – but that is false. (Cross-Mot., pp. 22-23.) Instagram did not change its policy on the embedding – it simply reiterated that, as noted in its other terms, third parties need permission from content owners to embed their works. Moreover, as Newsweek's witnesses have testified, Newsweek continues to use an embedding process to exploit Instagram users' work without receiving permission from Instagram content creators. Burroughs Decl. ¶12, Ex. 14, 30:7-31:3 ("Q. And that's your process even today at Newsweek; correct? A. Yes. We -- yeah, we do that."). Given Newsweek's continuing and routine infringement of artists' rights, it is in the interests of justice to consider the *Ars Technica* article.

### G.   Instagram's terms make clear that no sub-license existed or exists

While Newsweek concedes that "User Content is owned by users and not by Instagram," it still persists in its argument that Instagram "does not require licensees to first obtain consent from users to use their content." This is not only foreclosed by the doctrine of "law of the case,"

given this Court's findings at the pleading stage, but is demonstrably false given the unambiguous terms instructing third parties to obtain permission to use Instagram content from other users.

Newsweek claims that "Plaintiff cites only two cherry-picked provisions in Instagram's terms in an attempt to argue that the terms do no authorize Newsweek's copying" and focuses on two terms: "[t]his agreement does not give rights to any third parties'" and do "not 'sell, lease, or sublicense the Instagram Platform or any data derived from the Platform." Even if this were true – it isn't – it would still establish that Newsweek was required to obtain express permission to use the photograph at issue. But Newsweek fails to acknowledge **at least six** additional terms on the following page of McGucken's motion, which clearly establish that permission is needed from content owners, including:

> • Comply with any requirements or restrictions imposed on usage of Instagram user photos and videos ("User Content") by their respective owners. **<u>You are solely responsible for making use of User Content in compliance with owners' requirements or restrictions</u>**. (A, 11) (emphasis added).

> • <u>Obtain a person's consent before including their User Content in any ad.</u> (A, 13) (emphasis added).

> • Comply with all applicable laws or regulations. <u>Don't provide or promote content that violates any rights of any person, including but not limited to intellectual property rights, rights of privacy, or rights of personality.</u> (A, 35) (emphasis added).

> • <u>You represent and warrant that you own or have secured all rights necessary to display, distribute and deliver all content in your app or website.</u> To the extent your users are able to share content from your app or website on or through Instagram, <u>you represent and warrant that you own or have secured all necessary rights for them to do so in accordance with Instagram's available functionality.</u> (D, 9) (emphasis added).

> • <u>You represent and warrant that you satisfy all licensing</u>, reporting, and payout <u>obligations to third parties in connection with your app or website.</u> (D, 10) (emphasis added).

PLAINTIFF'S OPPOSITION TO DEFENDANT'S CROSS-MOTION AND REPLY MEMORANDUM IN
SUPPORT OF HIS MOTION FOR SUMMARY ADJUDICATION

• You are responsible for obtaining the necessary rights from all applicable rights holders to grant this license. (D, 13) (emphasis added).

Similar guidance is also highlighted in Instagram's Community Guidelines, which instruct third-party users to "**[s]hare only photos and videos that you've taken or have the right to share** […] and **don't post anything you've copied or collected from the Internet that you don't have the right to post.**" (Community Guidelines, *The Long*.) (emphasis added). As noted previously, these terms clearly establish that Newsweek had the burden of obtaining permission from McGucken to exploit his Subject Photograph. Newsweek failed to do so.

Newsweek next claims that McGucken relies on "inoperative terms" in disputing whether Instagram's terms granted Newsweek permission to embed McGucken's photography but fails to indicate which terms are allegedly inoperative.

Newsweek's distinction between condition and covenant similarly fails most notably because the language cited are conditions. Even when a license has issued, which is not the case here, infringement will still be found when "the licensee's alleged infringement is outside the scope of the license" or "the licensee failed to satisfy a condition precedent to the license, such that the license is invalid[.]" *PaySys Int'l, Inc. v. Atos Se, Worldline SA, Atos IT Servs. Ltd.*, 226 F. Supp. 3d 206, 215 (S.D.N.Y. 2016), citing *Graham v. James*, 144 F.3d 229, 235–38 (2d Cir. 1998). Here, the "scope" of the claimed license included only works for which the putative licensee obtained the artist's consent. And obtaining such consent was a "condition precedent" to any rights under the putative license, as clearly, a requirement that one who seeks to use an artist's content obtain that artist's consent should be construed as a condition. Newsweek's use of McGucken's photography was thus an infringement even if there was a license (there wasn't).

According to Newsweek, the portions of Instagram's policies cited by McGucken "all concern the acceptability of behavior in using Instagram's platform, rather than conditions that must occur prior to use, they do not qualify as conditions to give rise to a copyright infringement

claim." (Cross-Mot., p. 17.) Yet, Newsweek is claiming a wide-ranging license based in part on these very same terms and to the extent it is claiming benefits under the language must also comply with the obligations.

Newsweek, for example, argues that the "Platform Policy" provides it with a sublicense because the policy states that the platform may "**help broadcasters and publishers discover content, get digital rights to media, and share media using web embeds**." *Id.* (emphasis Newsweek's.) (Cross-Mot., p. 15.) But this description is just that, a description. To the extent that Newsweek is arguing that it provides a license, it must comply with the requirements attendant to that language.

Newsweek also argues that the Policy's statement that the "Platform" is "licensed" to Instagram API embed users, somehow conveys a license to McGucken's photography. It does not. This language, if anything, indicates that Newsweek may use the Instagram platform, and has nothing to do with the use of McGucken's photography. Should Newsweek want to use McGucken's photography, it would first have to obtain his consent, or, arguably, Instagram's consent. It did neither. Newsweek cannot have it both ways – claiming a license through the Instagram terms and policies and then claiming that they do not need to satisfy the same terms and policies.

Newsweek cites *Muench Photography, Inc. v. McGraw-Hill Glob. Educ. Holdings, LLC*, 367 F. Supp. 3d 82 (S.D.N.Y. 2019) but this case provides it no succor. It is easily distinguishable because in that that case, which concerned missed royalty payments, "not only did the agreement permit the usage, but this was the whole point of the contract." *Muench Photography, Inc. v. McGraw-Hill Glob. Educ. Holdings, LLC*, 367 F. Supp. 3d 82, 92 (S.D.N.Y. 2019). Here, the agreement did not permit the usage, and the breach was not a missed payment but the failure to obtain the artist's consent.

Similarly, Newsweek's assertion that *Vian v. Carey* is inapposite because "it concerned the formation of a contract, which is not a question before the Court in this action" is incorrect. Newsweek's argument concerns the formation of a license, which is a type of contract.

And Newsweek challenges McGucken's reliance on *Ward* to establish that the law requires "explicit consent" in order for a sublicense to accrue. Yet, *Ward* is the very same case relied on by the *Sinclair v. Ziff Davis, LLC* court in rejecting the very argument Newsweek advances here for lack of "explicit consent." No. 18-CV-790 (KMW), 2020 WL 3450136, at *1 (S.D.N.Y. June 24, 2020)(court must give "full force to the requirement that a license must convey the licensor's 'explicit consent' to use a copyrighted work"), citing *Ward v. Nat'l Geographic Soc*., 208 F. Supp. 2d 429, 442–43 (S.D.N.Y. 2002) (Kaplan, J.), quoting *Gardner v. Nike, Inc*., 279 F.3d 774, 781 (9th Cir. 2002).[2] Here, it is undisputed that Instagram did not provide a sub-license to Newsweek and even if it had, Newsweek failed to comply with the conditions and terms necessary to effectuate the license. McGucken's motion should be granted.

### H.     There was no implied license

Newsweek's implied license argument is simply wrong. Sublicenses arise in only the narrowest of circumstances – when the plaintiff "created a work at [another's] request and handed it over, intending that [the other] copy and distribute it." *SmithKline Beecham Consumer Healthcare, L.P. v. Watson Pharm., Inc.*, 211 F.3d 21, 25 (2d Cir.2000), quoting *Effects Assocs., Inc. v. Cohen*, 908 F.2d 555, 558 (9th Cir.1990). Newsweek bears the burden of proof in establishing the foregoing and the "burden is not easy to meet." *Flo & Eddie, Inc. v. Sirius XM Radio Inc.*, 80 F. Supp. 3d 535, 539 (S.D.N.Y. 2015).

---

[2] This rule applies with extra vigor when addressing sub-license.  In such cases, a licensee may not sublicense those rights to third parties "without express permission from the original licensor." *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 978 (9th Cir. 2006)(citation omitted).

Here, there is no evidence that Newsweek requested that McGucken create the photography at issue and no evidence that McGucken "handed it over" to Newsweek intending that they display the work. And there is no evidence that Instagram created any code to "hand over" to Newsweek at Newsweek's request.

And notably, "mere acquiescence is insufficient to establish an implied license." *Flo & Eddie, Inc. v. Sirius XM Radio Inc.*, 80 F. Supp. 3d 535, 539 (S.D.N.Y. 2015), citing *Psihoyos v. Pearson Educ., Inc.*, 855 F.Supp.2d 103, 121 (S.D.N.Y.2012). Indeed, to establish an implied license, Newsweek would still have to produce "evidence of a meeting of the minds between the licensor and licensee such that it is fair to infer that the licensor intended to grant a nonexclusive license." Id. (citation omitted). It cannot do so.

Newsweek relies on *Solid Oak Sketches, LLC v. 2K Games, Inc.*, 449 F. Supp. 3d 333 (S.D.N.Y. 2020) and *Jose Luis Pelaez, Inc. v. McGraw-Hill Glob. Educ. Holdings LLC*, 399 F. Supp. 3d 120 (S.D.N.Y. 2019) to  support of its argument but while these cases discuss implied licensure, none of them found an implied license on the facts at issue here.

Newsweek claims that it "requested the embed code for the Instagram Post when it clicked on the 'Embed' button among the options in connection with the Instagram Post, available on Instagram's Platform. See Gates Decl. Ex. J at NEWS000150. And in response to this request, Instagram created and delivered a unique embed code that, using HTML instructions, would direct a website reading the instructions to the Instagram Post." This description is as irrelevant as it is misleading. Newsweek would have had to make a request to McGucken – and not Instagram – to even be able to argue that an implied license might exist. And Newsweek made no "request," it simply pressed a button to obtain code. It did not reach out to Instagram or McGucken to request permission to display the artwork at issue. The availability of code, which as indicated by Instagram, is subject to Instagram's policies instructing third

parties to obtain permission, does not create a request or an implied sub-license. And Newsweek violated these policies. Because there was no request, there was no delivery or intent

And the totality of the parties' conduct under the *Jose Luis Pelaez, Inc.* test also demonstrates that Newsweek did not have an implied sub-license. Here, McGucken did not grant Newsweek a license or a sub-license. And Instagram, through the policies described previously, instructed Newsweek, as a user of its platform, to obtain permission from other Instagram users before exploiting their content in any way. Thus, an implied sub-license could not possibly exist.

Newsweek's attempt to shift the blame to Instagram falls flat, particularly in light of Instagram's clear policies and Instagram's statement indicating that permission is needed to embed Instagram content from Instagram users. Newsweek asserts that "Instagram not only knew that it was making public posts available for use through its platform but was wholly responsible for technologically facilitating and encouraging the use, through its terms and public statements, and continued to permit such use throughout 2019 without any objection." (Cross-Mot., p. 21.) But again, Newsweek fails to recognize that this use is subject to obtaining consent from Instagram account holders before exploiting their content. Newsweek has thus failed to demonstrate the existence of any kind of sub-license.

## I.     There is no "industry standard" defense to copyright infringement

Newsweek contends that it followed industry standard by using an embedding process to display McGucken's work, but industry standard has never been recognized as a defense to copyright infringement. To the contrary, "[c]opyright infringement is a strict liability offense in the sense that a plaintiff is not required to prove unlawful intent or culpability[.]" *EMI Christian Music Grp., Inc. v. MP3tunes, LLC*, 844 F.3d 79, 89 (2d Cir. 2016). Here, even if exploiting the art of third parties without consent in a commercial context is industry standard (it isn't and there

is no credible evidence establishing as much in the record), Newsweek cannot argue that their infringement is excused because others are doing it too.

Indeed, Newsweek fails to cite any authority establishing that industry standard, as Newsweek alleges, is a viable defense to copyright infringement. And that is because no such defense exists. Newsweek's claims regarding industry standard are thus irrelevant.

Newsweek emphasizes that "[b]oth of Newsweek's witnesses[…] have considerable experience in the media industry," yet neither witness provided specific publications or media entities that also use an embedding process to display copyrighted material without permission. Indeed, Newsweek has failed to introduce **any** evidence reflecting that other news publications adhere to these alleged standards, relying instead only on its own "experience." Newsweek's rebuttal expert report also fails to include any citation to other publications, media companies, or entities that allegedly follow the "industry standard" asserted by Newsweek, despite the assertion that its retained expert "has served as in-house counsel for numerous media companies and has decades of experience in the media industry." (Cross-Mot., pp. 21-22.)[3]

Conversely, McGucken has produced evidence that industry standard is to seek permission from a copyright owner. And as Thomas Maddrey, a photography industry expert, has testified, publications who contacted McGucken seeking permission from him to use his artwork followed industry standard. Maddrey further emphasized that "[i]t is a core tenant of the industry of visual creators, and photographers specifically, that copyright, licensing, and permission is sacrosanct." Burroughs Decl., Ex. 15, p. 9. As such, the industry standard is for

---

[3] Notably, Newsweek cites to pages 8 and 9 of the Oberlander report, but the links on which its rebuttal expert relies are either inoperative or do not address Instagram embedding. Indeed, the Kenny Novak article includes a disclaimer stating "I'm not a lawyer and I have not contacted a lawyer to write this article. I could always be wrong, so don't construe anything I say as legal advice. If you're in a situation where there could be actual legal action taken against you, consult with a real copyright lawyer before relying on a blog post some dude you don't know writes on the internet." Kenny Novak, Is It Legal to Embed YouTube Videos in a Blog Post?, Blogpros (Dec. 6, 2018), https://blogpros.com/blog/2018/12/legal-embed-youtube-blog.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S CROSS-MOTION AND REPLY MEMORANDUM IN SUPPORT OF HIS MOTION FOR SUMMARY ADJUDICATION

publications to obtain licenses before exploiting an artist's work and even if it wasn't there is no such defense to infringement.

**J.      Newsweek cannot establish fair use**

The court previously rejected Newsweek's fair use defense at the motion to dismiss stage and the evidence, as now developed, further establishes that this position is hollow. Indeed, at deposition, Newsweek confirmed that its "fair use" argument is a post-facto lawyer-driven position, and that it did not even consider whether the use of McGucken's photograph was fair use at the time they displayed same to viewers. Burroughs Decl. ¶12, Ex. 14, 49:7-13 ("Q. Are you aware of any steps that Newsweek takes, other than what you've already mentioned, to ensure that it's not violating the rights of third-party artists? A: I'm not aware of any additional steps that might be taken")("fair use" had not been previously mentioned); see also Gates Decl., Ex. B, 150:1-151:22 ("Q: So as far as you know, there's no one at Newsweek whose job is to review these articles to make sure they're not violating a photographer's rights before they go up on the site, correct? A: We have educated writers [sic] that if they saw a problem with a story, I'm sure they would flag it. And if the writer is following our guidelines, they shouldn't be violating copyrights.").

Newsweek, cognizant of the fragility of its position, and in a massive swerve from its previous stance, now argues that "fair use" should apply because it did not exploit McGucken's photography at all. But Newsweek's statement strains credulity: "Newsweek did not use Plaintiff's photograph, which Plaintiff claims is covered by the copyright registration, but, rather, used the code offered by Instagram to permit the embedding of Plaintiff's Instagram Post." (Cross-Mot., p. 22.) This is a transparent attempt to invoke the recent *Google LLC v. Oracle Am., Inc.*, 141 S. Ct. 1183, 1196–97 (2021) decision, which addressed one technology company's use of another's source code, and avoid the recent decision in *Andy Warhol Found. for the Visual*

*Arts, Inc. v. Goldsmith*, 992 F.3d 99, 110 (2d Cir. 2021), which addressed photography. But it is completely nonsensical as McGucken is claiming that Newsweek violated his exclusive display and derivative rights by displaying his photograph on its website without consent.

McGucken makes no copyright claim whatsoever for the use of his copyrighted code. Newsweek recognizes as much. After suddenly claiming that this case now turns on the use of computer code, it quickly shifts its argument to address cases involving photography and, in doing so, essentially makes the same arguments this court rejected at the motion to dismiss stage without any further evidence in support of its position.  If anything, the evidence is worse, as Newsweek admitted that it did not even consider "fair use" when displaying the McGucken photograph.

 Newsweek fails to recognize that its copying and pasting of this code was the very act that enabled Newsweek's display of the Subject Photograph on its website. And as this court has previously held, "the only two pieces of evidence needed to decide the question of fair use" are the original version and the allegedly infringing work. *BWP Media USA, Inc. v. Gossip Cop Media, LLC*, 87 F. Supp. 3d 499, 505 (S.D.N.Y. 2015). Comparing the two here makes clear that Newsweek cannot establish that the "fair use" defense applies. The relevant factors do not excuse Newsweek's infringement as a "fair use."

### 1.     Purpose and character

The first factor weighs against Newsweek for several reasons.

### a.     The McGucken photograph is not the story

Neither McGucken's Photograph nor the Instagram Post is the story, as Newsweek alleges. McGucken's photograph is instead used by Newsweek solely as an illustrative aid, a type of use that cannot be "fair." In addressing this argument, "what is important in the consideration of fair use is whether defendants ['] imbued the plaintiffs' photographs with new

meaning by transforming them from their original intent ... into the *subject* of a news story.[']
*Regan Wood d/b/a Regan Wood Photography v. Oberserver Holdings, LLC; et al.,* No. 20 CIV.
07878 (LLS), 2021 WL 2874100, at *4 (S.D.N.Y. July 8, 2021)(emphasis in original), citing
*McGucken v. Newsweek LLC,* 464 F. Supp. 3d 594, 606 (S.D.N.Y. 2020). Here, Newsweek did
not imbue the McGucken photograph with new meaning, it simply copied the work and used it
as intended by McGucken and his licensees. And, as a matter of law, the McGucken photograph
was the "subject" of the infringing Newsweek article.

The facts are readily distinguishable from Newsweek's cited authority. In *Boesen v.
United Sports Publ'ns, Ltd.*, No. 20-CV-1552 (ARR) (SIL), 2020 WL 6393010, at *4 (E.D.N.Y.
Nov. 2, 2020), reconsideration denied, No. 20-CV-1552 (ARR) (SIL), 2020 WL 7625222
(E.D.N.Y. Dec. 22, 2020), for example, defendant's article reported on a tennis player's
retirement announcement **that occurred on Instagram**.

Similarly, in *Walsh v. Townsquare Media, Inc.*, 464 F. Supp. 3d 570, 581 (S.D.N.Y.
2020), defendant publication published an article reporting on celebrity rapper Cardi B's
**Instagram post announcing that her lipstick collaboration with Tom Ford had sold out**.

Finally, in *Nunez v. Caribbean Int'l News Corp.*, 235 F.3d 18 (1st Cir. 2000), which this
court previously rejected, the media defendants published modeling photographs taken by
plaintiff of Joyce Giraud, the 1997 Miss Universe Puerto Rico, where she appeared naked or
nearly naked. The plaintiff had shot the photographs for Giraud's modeling portfolio, and the
media defendants published the photographs to report on the controversy concerning Giraud. The
First Circuit held that defendants' use of the photographs transformed the works from their
original purpose, furthering a modeling portfolio, to news reporting. Id. at 23.

But unlike the cases on which Newsweek relies, here, neither McGucken's photograph
nor his Instagram post is the story. Instead, the story concerns a natural phenomenon that

appeared in Death Valley. Newsweek's contention that "there would be no news to report" without McGucken's image is simply false. Indeed, the Newsweek Article describing the ephemeral lake remains online, even after Newsweek removed McGucken's photograph several months after this case was filed. This clearly demonstrates that the story can be told without McGucken's photograph.

Moreover, Newsweek included other references, however insubstantial, in the infringing article. As Newsweek itself claims, the article includes "commentary from experts to explain how such a phenomenon could have occurred." (Cross-Motion, p. 25.) This commentary, which was apparently also taken from third parties, describes the occurrence of the phenomenon, which is the actual story, as opposed to McGucken's photograph or Instagram post. Given the distinctions in case law, the fact that the infringing article remains online, with the commentary from others describing the ephemeral lake and without McGucken's photography, it is clear that McGucken's photograph is not the story. Newsweek simply exploited McGucken's photograph to illustrate its Death Valley Lake story without his consent. This was not "fair use."

     **b.**    **Newsweek failed to transform McGucken's photograph**

Newsweek claims that it transformed McGucken's photograph but refers only to its addition of text around the McGucken photograph, text that does not comment or criticize the McGucken photograph and most of which was copied or paraphrased from third party sites. Newsweek also ignores the fact that McGucken licensed the same photograph to *SF Gate* for the same purpose Newsweek used the photograph, and without paying the customary fee.

Newsweek's use of the McGucken photograph as an illustrative aid for its article thus cannot be considered transformative. As noted above, the story itself was the natural phenomenon. Newsweek did not provide any commentary regarding McGucken's photograph or

Instagram post and instead provided commentary on the lake depicted in McGucken's photograph. Thus, Newsweek's display of the photograph constitutes a non-transformative use.

### c.     Newsweek concedes commercial use

Newsweek claims that the infringing article incorporating McGucken's photograph "performed well below normal expectations for a typical article," yet concedes that it earned "revenue from advertisements on the web page for the article." (Cross-Mot., p. 26.) But, the commerciality question is binary and asks whether the use was for profit or not. Here it is undisputed that the use was for profit, which militates against fair use. And, it should be said, the relative failure of the infringing Article was not the fault of McGucken and was more likely the result of Newsweek publishing an article comprised of material it had copied from third-party sites as opposed to reporting itself. There is simply no question that Newsweek used McGucken's photograph for commercial purposes, namely, "to provide topical content in order to attract readers." *Sands v. What's Trending, Inc.*, 2021 WL 694382, at *3 (S.D.N.Y. Feb. 23, 2021). This factor must weigh against Newsweek.

### d.     Newsweek acted in bad faith

McGucken did not provide authorization to Newsweek to display his work yet Newsweek did so anyway, and continued to display the infringing work even after this case was filed. Newsweek's misconduct in its exploitation of McGucken's work militates against a "fair use" finding.

### 2.     Nature of the work

McGucken's photograph is highly creative. The fact that Newsweek may have added insubstantial commentary copied from third parties to the page on which the photograph appeared does not make the use fair. The fact that McGucken's photograph appeared in connection with McGucken's Instagram username and accompanying information is entirely

irrelevant to both the fair use analysis and whether the photograph is entitled to copyright protection, particularly because McGucken's photograph is registered. If anything, this makes the infringement **less** fair because it establishes that Newsweek did not just display McGucken's photograph without his consent but displayed his original text as well. And Newsweek fails to cite to any authority establishing that this information has any impact on the "nature" of the work.

Newsweek claims that the Subject Photograph is "a record of a factual natural event" but, even if true, it does not minimize the creative element of McGucken's photography. In any event, "an author's expression of historical facts is protected by the Copyright Act." *Robinson v. Random House, Inc.*, 877 F. Supp. 830, 836 (S.D.N.Y. 1995), modified, No. 93 CIV. 3108 (LAP), 1995 WL 502525 (S.D.N.Y. Mar. 26, 1995). And "[a] photograph's informational purpose 'does not negate a finding of imaginativeness or creativity.'" *Otto v. Hearst Commc'ns, Inc.*, 345 F. Supp. 412, 430 (S.D.N.Y. 2018), quoting *Mathieson v. Associated Press*, No. 90-cv-6945 (LMM), 1992 WL 164447, at *6 (S.D.N.Y. June 25, 1992).

Here, McGucken traveled to Death Valley at his own expense and selected specific equipment, lighting, aperture, composition, and angles to create the photograph at issue. His creative choices support the second factor and do not weigh in favor of Newsweek. See *N. Jersey Media Grp. Inc. v. Pirro*, 74 F.Supp.3d 605, 620 (S.D.N.Y. 2015) (finding that the second factor favored fair use only where the defendant "did not create the scene or stage his subjects—to the contrary, he plainly acknowledged that the photograph 'just happened.'"). And the fact that McGucken made his artwork available online does not weigh against him or work to minimize the creativity of his photography. His work is highly creative and this factor favors the artist.

### 3.    Amount used

Newsweek also concedes that it used the entirety of McGucken's photograph. This third factor must thus weigh against Newsweek. See *Sands,* 2021 WL 694382 at *3 (holding that the third factor "cuts against a finding of fair use" when "Defendant reproduced the Photograph in its entirety.) Nevertheless, Newsweek contends that it "used the Instagram Post because Plaintiff was the source of the news" and that it "could not have taken any less of the Instagram Post, without making it useless to the article." (Cross-Mot., pp. 29-30.) But as noted above, neither the Subject Photograph nor the Instagram Post were the news. And, as Judge Learned Hand said, "[n]o plagiarist can excuse the wrong by showing how much of his work he did not pirate." *Sheldon v. Metro Goldwyn Pictures Corp*., 81 F.2d 49, 56 (2d Cir.), *cert. denied*, 298 U.S. 669, 56 S.Ct. 835, 80 L.Ed. 1392 (1936).

Indeed, when an infringer uses "the photo in its entirety without substantial changes to the purpose of using the photo, the third factor weighs against a finding of fair use." *Michael Grecco Prods., Inc. v. Valuewalk, LLC*, 345 F. Supp. 3d 482, 508 (S.D.N.Y. 2018). Newsweek claims that this case is distinguishable because "both parties captured and used the image for biographical purposes" while here, "Newsweek's purpose was distinct from Plaintiff's stated purpose in capturing the photographs for fine art." (Cross-Mot., p. 30.) But as previously noted, McGucken also licenses his work and indeed licensed the Subject Photograph and others to *SF Gate* and additional entities, who published the work for the very same reasons as Newsweek. McGucken Decl. ¶8. Thus, Newsweek did not exploit the Subject Photograph for a distinct purpose and this factor favors the artist.

### 4.    Market effect

Newsweek has not established that its infringement did not result in market harm. "The burden is on defendants to prove there is no market usurpation." *Regan Wood Photography*,

2021 WL 2874100, at *5, citing *Andy Warhol Found.*, 992 F.3d at 121. And, there is a presumption of market harm "when a commercial use amounts to mere duplication of the entirety of an original." Id., citing *McGucken*, 464 F. Supp. 3d at 609, quoting *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 591 (1994)). That presumption should apply here because "defendants' use of the photograph was arguably commercial and wholly duplicative." Id.

Indeed, when an infringer's use is 'non-transformative and for commercial purposes,' the presumption of market harm applies. *Sands,* 2021 WL 694382, at *4. As noted above, Newsweek's use of the Subject Photograph was not transformative and for commercial purposes. The presumption of market harm thus applies.

Newsweek alleges that its "use directed viewed back to Plaintiff's Instagram account, where he promotes his art, and thereby provided Plaintiff with further viewers and engagement, which may translate into potential purchasers of his fine art prints." (Cross-Mot., p. 31.) But this is irrelevant as it was done without McGucken's consent and does not excuse infringement.

As reflected in McGucken's licensing history (McGucken Decl. ¶8), McGucken is in the business of licensing his photography in addition to selling his fine art prints. And Newsweek's unauthorized use of McGucken's photography could certainly destroy the licensing market.

Finally, if the court were to deem Newsweek's use to be fair, such a finding "would allow other companies to do the same, effectively destroying Plaintiff's business and the freelance photography market, as a whole." *Sands*, 2021 WL 694382, at *4. Newsweek cannot carry its burden in establishing that its use without payment of McGucken's photography did not damage McGucken's right to monetize his work. Nor did Newsweek carry its burden in establishing that the use of photographers' work on websites without consent or payment would damage the market as a whole. As such, this most important of factors favors McGucken.

In light of the above, Newsweek's "fair use" defense must be rejected.

**K.      Newsweek's infringement was willful**

Newsweek has not established that its infringement was not willful. The standard for

willful infringement is simply whether the defendant copied the work without consent and "had

knowledge that its conduct represented infringement or perhaps recklessly disregarded the

possibility[.]" *Hamil Am. Inc. v. GFI*, 193 F.3d 92, 97 (2d Cir. 1999). As noted above,

Newsweek has offered no credible evidence concerning whether embedding is an accepted

industry standard. But even if it had, there is no case law indicating that industry standard is a

viable defense to copyright infringement.

Newsweek accessed the Subject Photograph and did not obtain authorization from

McGucken to exploit his proprietary artwork. Newsweek nevertheless published the Subject

Photograph alongside advertising on its commercial website, in willful disregard for

McGucken's rights. Finally, Newsweek, a sophisticated publisher, is chargeable with the

knowledge that a commercial publication cannot misappropriate the creative work of others

without consent.

And while Newsweek may have a policy that addresses certain intellectual property

matters, it failed to maintain a copyright agent as required by the Digital Millennium Copyright

Act and, even more problematic and as Newsweek concedes, "Newsweek's witness who drafted

the policy confirmed that Newsweek did not have a written policy on embedding." (Cross-Mot.,

p. 33.) This alone constitutes the "mere recklessness" that suffices for a finding of willfulness.

*See Unicolors, Inc. v. Urb. Outfitters, Inc*., 853 F.3d 980, 992 (9th Cir. 2017)("a party may act

recklessly by refusing, as a matter of policy, to even investigate or attempt to determine whether

particular designs are subject to copyright protections.").

**III.     SUMMARY ADJUDICATION IN FAVOR OF MCGUCKEN IS PROPER**

For the foregoing reasons, it is respectfully requested that Newsweek's cross-motion for summary judgment be denied and that summary judgment be entered in favor of McGucken on the issues for which summary adjudication is sought. The case can then proceed to trial on the limited issue of damages.

Respectfully submitted,

Dated: July 9, 2021                    By:          */s/ Scott Alan Burroughs*
Brooklyn, New York                                  Scott Alan Burroughs, Esq.
                                                    Laura M. Zaharia, Esq.
                                                    DONIGER / BURROUGHS
                                                    231 Norman Avenue, Suite 413
                                                    Brooklyn, New York 11222
                                                    (310) 590-1820
                                                    *Attorneys for Plaintiff*