**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ELLIOT MCGUCKEN, an individual, | Case No.:  1:19-cv-09617 (KPF) |
| Plaintiff, | |
| v. | |
| NEWSWEEK, LLC, | |
| Defendants. | |

Pursuant to Rule 56.1 of the Local Civil Rules of the Southern District of New York, Plaintiff Elliot McGucken ("McGucken") respectfully submits this response to Defendant Newsweek, LLC ("Newsweek")'s Statement of Material Facts in Support of its Cross-Motion for Summary Judgment.

1.      Plaintiff is a fine art photographer.  *See* Declaration of Sara Gates, dated June 21, 2021 ("Gates Decl."), Ex. A (Deposition Transcript of Elliot McGucken ("McGucken Tr.") at 32:11–13).

Plaintiff's Response to 1.      Plaintiff also licenses his photography. McGucken Decl. ¶8, Ex. 18. Without waiver, no objection.

2.      In March 2019, Plaintiff visited Death Valley National Park to take photographs during a multi-day trip.  See id. at 77:20–23, 84:7–12.

Plaintiff's Response to 2.      No objection.

3.      During that time, an ephemeral lake appeared for a short period of time in the desert-like landscape, and Plaintiff captured fine art photographs of the rare event.  *See* id. at 44:11–15, 78:2–14, 103:12–14, 139:10–1, 140:3–4, 140:14–19, 148:18–24, 149:1–7, 151:4–6.

Plaintiff's Response to 3.      No objection.

4.      Plaintiff also created a video of the Death Valley lake, which included still photography.  *See* id. at 114:25–115:9; Gates Decl. Ex. H.

Plaintiff's Response to 4.      No objection.

5.      A few days later, Plaintiff shared an album of photographs of the Death Valley lake to his public Facebook account.  *See id.* at 46:10–47:7, 81:20–82:1, 85:5–19; Gates Decl. Ex. E.

Plaintiff's Response to 5.      No objection.

6.      Plaintiff shared these photographs on Facebook to build his fine art brand and share the beauty of the Death Valley lake.  *See* McGucken Tr. at 80:22–24, 85:23–25.

Plaintiff's Response to 6.      No objection.

7.      Plaintiff also shared an album of high-resolution photographs of the Death Valley lake on one of his websites, www.mcgucken.com (the "Website").  *See id.* at 37:3–9, 90:20–91:25; Gates Decl. Ex. F.

Plaintiff's Response to 7.      No objection.

8.      Plaintiff posts high-resolution photographs to the Website because "people like seeing the detail of [his] work," and he wants people to see his photographs.  McGucken Tr. at 40:6–14, 41:4–9, 92:6–8.

Plaintiff's Response to 8.      Objection, Plaintiff wants people to see his photographs for the purpose of building his fine art business, which is further established by his licensing history. McGucken Decl. ¶8, Ex. 18.

9.      Plaintiff's Website provides an embed code by which users may copy the code in order to embed a slideshow of photographs on their website of choice, and this code was available for Plaintiff's Death Valley lake photographs.  *See* Gates Decl. Ex. G.

Plaintiff's Response to 9.      Objection, users with the consent of Plaintiff, may copy the code, subject to applicable copyright laws.

10.      Plaintiff also shared select photographs of the Death Valley lake to his Instagram account, "elliotmcgucken," where he posts landscape and nature photographs (the "Instagram Account").  *See* McGucken Tr. at 50:25–51:7, 51:13–16, 86:11–13, 87:21–88:19; Gates Decl. Ex.

Plaintiff's Response to 10.    No objection.

11.    Plaintiff's Instagram Account is "public," meaning that, under Instagram's terms and settings, posts on this account are available for public viewing and sharing. *See* McGucken Tr. at 50:25–51:7, 51:10–12, 88:24–89:9; Gates Decl. Ex. R.

Plaintiff's Response to 11.    No objection.

12.    By agreeing to Instagram's terms of use, when Plaintiff signed up for his account and continued to use it, Plaintiff authorized Instagram to grant users of its application programming interface ("API") a sublicense. *See* Gates Decl. Exs. Q, S.

Plaintiff's Response to 12.    Objection. Instagram's terms do not provide a sub-license to third parties and Instagram provided no sub-license here. Instagram has publicly stated that no sublicenses are granted to sites like Newsweek for the use of its users, and that the consent of the artists must be obtained before exploiting their work. (Burroughs Decl. ¶6; Exs. 8-11). The use of API does not amount to any sublicensing agreement from Instagram or otherwise. Instagram's terms concerning the use of API at most represent an agreement for future negotiations, which would not be enforceable under New York Law. (*Id.*; *Barcroft Media, Ltd. v. Coed Media Grp., LLC*, 297 F. Supp. 3d 339, 350 (S.D.N.Y. 2017) (citing *Joseph Martin, Jr., Delicatessen, Inc. v. Schumacher*, 52 N.Y.2d 105, 436 N.Y.S.2d 247, 417 N.E.2d 541, 543 (1981)).

13.    Instagram compresses images uploaded, so the posted photographs appear as cropped, lower-resolution versions on Instagram. *See* McGucken Tr. at 55:5–14, 88:9–11.

Plaintiff's Response to 13.    Objection, the resolution of the Instagram photography is the same as on Newsweek's site.

14.    Plaintiff posted the photograph at issue to his Instagram Account to share his art and build his fine art brand. *See* McGucken Tr. at 56:3–14, 88:20–23.

Plaintiff's Response to 14.    No objection.

15.    The Instagram post at issue showed a lower-resolution of Plaintiff's photograph, alongside factual information and Instagram markings, including (1) a username, (2) a geographic location, (3) links/directions to view the profile or view more on Instagram, (4) the

number of likes, (5) a short descriptive caption, (6) a link to another Instagram account, (7) 28 hashtags of words and short phrases, and (8) other features inherent in Instagram's functionality (the "Instagram Post"). *See* Gates Decl. Ex. L at NEWS000005

Plaintiff's Response to 15.     Objection as to "low resolution" and "Instagram markings" and "other features inherent in Instagram's functionality" as vague and ambiguous. Plaintiff further objects to the extent that this statement implies that any aspect of Instagram's interface or the publishing of any of Plaintiff's photographs on Instagram represents anything other than the plaintiff's original and protected photography as properly registered with the U.S. Copyright Office. *See* McGucken Memorandum in Support of his Motion for Summary Adjudication at 1.

16.     Plaintiff did not place any requirements or restrictions on the use of the photograph in the Instagram Post. *See* McGucken Tr. at 89:11–18; Gates Decl. Ex. L at NEWS000005.

Plaintiff's Response to 16.     Objection.  By publishing his original photography to Instagram, Plaintiff was protected by Instagram's terms, which require consent of the artist to use the material elsewhere, and placed the requirements and restrictions to the use of the photograph as are granted under Section 106 of the Copyright Act, including the exclusive rights to public display and authorization to allow copying, display, and use of the copyrighted work. 17 U.S.C. § 106. Additionally, by publishing the photograph on Instagram, Plaintiff placed the restrictions inherent to Instagram's Platform Policy, Terms, and Community Guidelines, which explicitly include the requirement to obtain the necessary licensing and consent from a user before exploiting their content. Burroughs Decl. ¶6; Exs. 8-11.

17.     Plaintiff was the only person who captured the photographs of the Death Valley lake. *See* McGucken Tr. at 31:24–32:1.

Plaintiff's Response to 17.     Objection to the extent that others were able to capture photographs of the lake. Newsweek itself hosted such audiovisual material before removing same, which may have been the result of a separate act of infringement.

18.     Plaintiff requested and received information from the National Parks Service regarding the size of the Death Valley lake.  *See* McGucken Tr. at 150:15–151:3.

Plaintiff's Response to 18.     No objection.

19.     Many news outlets including SFGate, Smithsonian.com, Accuweather, Live Science, PetaPixel, Atlas Obscura, the National Parks Conservation Association, The Daily Mail, Express Digest, The Los Angeles Times, IFL Science, Hartford Courant, The Independent, and Science Alert reported on the Death Valley lake and used one or multiple of Plaintiff's photographs of the natural phenomenon.  *See* Gates Decl. Ex. W.

Plaintiff's Response to 19.     No objection.

20.     Plaintiff provided links to his photographs on Facebook and on his Website and details regarding the Death Valley lake to numerous news outlets.  *See* McGucken Tr. at 99:12–14, 101:6–102:22, 111:23–112:8, 113:3–13, 123:2–10, 131:1–18, 136:6–137:1, 164:4–12.

Plaintiff's Response to 20.     No objection.

21.     In many instances, Plaintiff permitted the outlet to select as many of the photographs as it wanted to use for no licensing fee for various reasons, including because he "enjoyed the website," wanted to be published for "promotional purposes," considered the use an "honor," or thought the website "aligned with [his] fine art brand."  *See* McGucken Tr. at 99:3–11, 108:2–4, 112:2–4, 123:11–20, 131:7–24, 137:3–10.

Plaintiff's Response to 21.     No objection.

22.     Plaintiff also provided a link to the video of the Death Valley lake, which he posted to YouTube, and permitted several outlets to use the YouTube video without payment of a licensing or syndication fee.  *See* McGucken Tr. at 116:1–7, 117:4–10, 163:3–5.

Plaintiff's Response to 22.     No objection.

23.     Plaintiff only received a license fee in two instances.  *See* McGucken Tr. at 155:4–10, 157:25–158:12, 164:1–3.

Plaintiff's Response to 23.     Objection, Plaintiff did not "only" receive a license fee in two instances. In addition to a licensing fee, Plaintiff received other benefits, including branding opportunities and exposure from prestigious publications. McGucken Decl. ¶8, Ex. 18.

24.     In mid-March 2019, a writer for Newsweek reached out to Plaintiff via Instagram to request permission to upload one of his Death Valley photographs to Newsweek's website in connection with an article about the temporary lake and Plaintiff's happenstance to capture the rare event.  See Declaration of Elliot McGucken ("McGucken Decl.") Ex. 3; Gates Decl. Ex. B (Deposition Transcript of Diane Rice ("Rice Tr.")) at 166:25–167:24; Ex. C (Deposition Transcript of James Etherington-Smith ("E-S Tr.")) at 79:3–11.

Plaintiff's Response to 24.     Objection as to the characterization of Newsweek's request. A reporter from Newsweek left a comment on the Plaintiff's Instagram post featuring the photograph, stating "I wondered if you'd be happy for us to upload this image on our site?" McGucken Decl. Ex. 3. The comment contained no actual evidence of the commentor's employment with Newsweek, never mentioned permission, and said nothing regarding the "Plaintiff's happenstance to capture the rare event." *Id.*

25.     Plaintiff did not respond.  *See* McGucken Tr. at 177:22–178:9.

Plaintiff's Response to 25.     No objection.

26.     The Newsweek writer also reached out to several experts to question them regarding the science behind the photographed event.  *See* Gates Decl. Ex. M; E-S Tr. at 79:3–11.

Plaintiff's Response to 26.     No objection, though the evidence cited does not support the claimed fact.

27.     As Plaintiff did not respond, the Newsweek writer requested the embed code for Plaintiff's Instagram Post from Instagram, and copied the code into Newsweek's content management system ("CMS"), the back end of its website.  *See* Gates Decl. Ex. L, Rice Tr. at 37:21–38:11, 132:5–11, 134:2–6.

Plaintiff's Response to 27.     Objection. Newsweek did not request the embedded code for Plaintiff's photograph from Instagram, and in fact has admitted that in the entire process of exploiting Plaintiff's copyrighted work that is never communicated directly Instagram or its owner on any issue regarding the use of the photograph. Burroughs Decl. ¶¶7, 12, Ex. 13 209:2-8.

28.     Instagram makes the embed code for public Instagram posts available through its API. *See* Gates Decl. Exs. R, S, T, U.

Plaintiff's Response to 28.     Objection. Instagram makes the embed code or public Instagram posts available through its API subject to Instagram's terms and conditions, which require that third parties obtain consent before using an embed process to exploit user content. Burroughs Decl. Exs. 8-11.

29.     The embed code provided by Instagram for Plaintiff's Instagram Post is:

```
<blockquote class="instagram-media" data-instgrm-captioned data-instgrm-
permalink="https://www.instagram.com/p/Bu-
VGhzlRSN/?utm_source=ig_embed&amp;utm_campaign=loading" data-instgrm-version="13"
style=" background:#FFF; border:0; border-radius:3px; box-shadow:0 0 1px 0 rgba(0,0,0,0.5),0
1px 10px 0 rgba(0,0,0,0.15); margin: 1px; max-width:540px; min-width:326px; padding:0;
width:99.375%; width:-webkit-calc(100% - 2px); width:calc(100% - 2px);"><div
style="padding:16px;"> <a href="https://www.instagram.com/p/Bu-
VGhzlRSN/?utm_source=ig_embed&amp;utm_campaign=loading" style="
background:#FFFFFF; line-height:0; padding:0 0; text-align:center; text-decoration:none;
width:100%;" target="_blank"> <div style=" display: flex; flex-direction: row; align-items:
center;"> <div style="background-color: #F4F4F4; border-radius: 50%; flex-grow: 0; height:
40px; margin-right: 14px; width: 40px;"></div> <div style="display: flex; flex-direction:
column; flex-grow: 1; justify-content: center;"> <div style=" background-color: #F4F4F4;
border-radius: 4px; flex-grow: 0; height: 14px; margin-bottom: 6px; width: 100px;"></div> <div
style=" background-color: #F4F4F4; border-radius: 4px; flex-grow: 0; height: 14px; width:
60px;"></div></div></div><div style="padding: 19% 0;"></div> <div style="display:block;
height:50px; margin:0 auto 12px; width:50px;"><svg width="50px" height="50px" viewBox="0
0 60 60" version="1.1" xmlns="https://www.w3.org/2000/svg"
xmlns:xlink="https://www.w3.org/1999/xlink"><g stroke="none" stroke-width="1" fill="none"
fill-rule="evenodd"><g transform="translate(-511.000000, -20.000000)"
fill="#000000"><g><path d="M556.869,30.41 C554.814,30.41 553.148,32.076 553.148,34.131
C553.148,36.186 554.814,37.852 556.869,37.852 C558.924,37.852 560.59,36.186
560.59,34.131 C560.59,32.076 558.924,30.41 556.869,30.41 M541,60.657 C535.114,60.657
530.342,55.887 530.342,50 C530.342,44.114 535.114,39.342 541,39.342 C546.887,39.342
551.658,44.114 551.658,50 C551.658,55.887 546.887,60.657 541,60.657 M541,33.886
```

C532.1,33.886 524.886,41.1 524.886,50 C524.886,58.899 532.1,66.113 541,66.113
C549.9,66.113 557.115,58.899 557.115,50 C557.115,41.1 549.9,33.886 541,33.886
M565.378,62.101 C565.244,65.022 564.756,66.606 564.346,67.663 C563.803,69.06
563.154,70.057 562.106,71.106 C561.058,72.155 560.06,72.803 558.662,73.347
C557.607,73.757 556.021,74.244 553.102,74.378 C549.944,74.521 548.997,74.552 541,74.552
C533.003,74.552 532.056,74.521 528.898,74.378 C525.979,74.244 524.393,73.757
523.338,73.347 C521.94,72.803 520.942,72.155 519.894,71.106 C518.846,70.057
518.197,69.06 517.654,67.663 C517.244,66.606 516.755,65.022 516.623,62.101
C516.479,58.943 516.448,57.996 516.448,50 C516.448,42.003 516.479,41.056 516.623,37.899
C516.755,34.978 517.244,33.391 517.654,32.338 C518.197,30.938 518.846,29.942
519.894,28.894 C520.942,27.846 521.94,27.196 523.338,26.654 C524.393,26.244
525.979,25.756 528.898,25.623 C532.057,25.479 533.004,25.448 541,25.448 C548.997,25.448
549.943,25.479 553.102,25.623 C556.021,25.756 557.607,26.244 558.662,26.654
C560.06,27.196 561.058,27.846 562.106,28.894 C563.154,29.942 563.803,30.938
564.346,32.338 C564.756,33.391 565.244,34.978 565.378,37.899 C565.522,41.056
565.552,42.003 565.552,50 C565.552,57.996 565.522,58.943 565.378,62.101 M570.82,37.631
C570.674,34.438 570.167,32.258 569.425,30.349 C568.659,28.377 567.633,26.702
565.965,25.035 C564.297,23.368 562.623,22.342 560.652,21.575 C558.743,20.834
556.562,20.326 553.369,20.18 C550.169,20.033 549.148,20 541,20 C532.853,20
531.831,20.033 528.631,20.18 C525.438,20.326 523.257,20.834 521.349,21.575
C519.376,22.342 517.703,23.368 516.035,25.035 C514.368,26.702 513.342,28.377
512.574,30.349 C511.834,32.258 511.326,34.438 511.181,37.631 C511.035,40.831 511,41.851
511,50 C511,58.147 511.035,59.17 511.181,62.369 C511.326,65.562 511.834,67.743
512.574,69.651 C513.342,71.625 514.368,73.296 516.035,74.965 C517.703,76.634
519.376,77.658 521.349,78.425 C523.257,79.167 525.438,79.673 528.631,79.82
C531.831,79.965 532.853,80.001 541,80.001 C549.148,80.001 550.169,79.965 553.369,79.82
C556.562,79.673 558.743,79.167 560.652,78.425 C562.623,77.658 564.297,76.634
565.965,74.965 C567.633,73.296 568.659,71.625 569.425,69.651 C570.167,67.743
570.674,65.562 570.82,62.369 C570.966,59.17 571,58.147 571,50 C571,41.851 570.966,40.831
570.82,37.631"></path></g></g></g></svg></div><div style="padding-top: 8px;"> <div
style=" color:#3897f0; font-family:Arial,sans-serif; font-size:14px; font-style:normal; font-
weight:550; line-height:18px;"> View this post on Instagram</div></div><div style="padding:
12.5% 0;"></div> <div style=" display: flex; flex-direction: row; margin-bottom: 14px; align-
items: center;"><div> <div style="background-color: #F4F4F4; border-radius: 50%; height:
12.5px; width: 12.5px; transform: translateX(0px) translateY(7px);"></div> <div
style="background-color: #F4F4F4; height: 12.5px; transform: rotate(-45deg) translateX(3px)
translateY(1px); width: 12.5px; flex-grow: 0; margin-right: 14px; margin-left: 2px;"></div>
<div style="background-color: #F4F4F4; border-radius: 50%; height: 12.5px; width: 12.5px;
transform: translateX(9px) translateY(-18px);"></div></div><div style="margin-left: 8px;">
<div style=" background-color: #F4F4F4; border-radius: 50%; flex-grow: 0; height: 20px; width:
20px;"></div> <div style=" width: 0; height: 0; border-top: 2px solid transparent; border-left:
6px solid #f4f4f4; border-bottom: 2px solid transparent; transform: translateX(16px) translateY(-
4px) rotate(30deg)"></div></div><div style="margin-left: auto;"> <div style=" width: 0px;
border-top: 8px solid #F4F4F4; border-right: 8px solid transparent; transform:
translateY(16px);"></div> <div style=" background-color: #F4F4F4; flex-grow: 0; height: 12px;
width: 16px; transform: translateY(-4px);"></div> <div style=" width: 0; height: 0; border-top:

8px solid #F4F4F4; border-left: 8px solid transparent; transform: translateY(-4px) translateX(8px);"></div></div></div> <div style="display: flex; flex-direction: column; flex-grow: 1; justify-content: center; margin-bottom: 24px;"> <div style=" background-color: #F4F4F4; border-radius: 4px; flex-grow: 0; height: 14px; margin-bottom: 6px; width: 224px;"></div> <div style=" background-color: #F4F4F4; border-radius: 4px; flex-grow: 0; height: 14px; width: 144px;"></div></div></a><p style=" color:#c9c8cd; font-family:Arial,sans-serif; font-size:14px; line-height:17px; margin-bottom:0; margin-top:8px; overflow:hidden; padding:8px 0 7px; text-align:center; text-overflow:ellipsis; white-space:nowrap;"><a href="https://www.instagram.com/p/Bu-VGhzlRSN/?utm_source=ig_embed&amp;utm_campaign=loading" style=" color:#c9c8cd; font-family:Arial,sans-serif; font-size:14px; font-style:normal; font-weight:normal; line-height:17px; text-decoration:none;" target="_blank">A post shared by Elliot McGucken 45EPIC (@elliotmcgucken)</a></p></div></blockquote> <script async src="//www.instagram.com/embed.js"></script>

See Gates Decl. ¶ 13; see also Ex. J at NEWS000148.

Plaintiff's Response to 29.    No objection.

30.    When Newsweek copied and used the embed code, it did so pursuant to Instagram's terms, and specifically, Instagram's Platform Policy.  See Gates Decl. Exs. J, S.

Plaintiff's Response to 30.    Objection. Newsweek's copying and use of the embedded code was directly and explicitly in violation of Instagram's terms and Platform Policy. Instagram states directly that its "Terms of Use do not allow posting content that violates someone else's intellectual property rights, including copyright and trademark" and its Platform Policy, Terms, and Community guidelines collectively require that sites lie Newsweek acquire another's consent and all necessary licenses and permissions before exploiting their content, including that third party users " [s]hare only photos and videos that you've taken or have the right to share [...] and don't post anything you've copied or collected from the Internet that you don't have the right to post." See Burroughs Decl. ¶6; Exs. 8-11. Newsweek obtained no permission, consent, or license before exploiting Plaintiff's content. McGucken Decl. ¶5.

31.    The Newsweek article described the 10-mile-long lake, first reported and captured by Plaintiff, Plaintiff's photography of the event, and the scientific explanation for the natural phenomenon.  See Gates Decl. Ex. K.

Plaintiff's Response to 31.     Objection, the Newsweek article did not describe Plaintiff's photography of the event. McGucken Decl. Ex. 4.

32.     The Newsweek article included Plaintiff's full Instagram Post, embedded using the code provided by Instagram.  *See* id.; Ex. L.

Plaintiff's Response to 32.     No objection.

33.     Neither the Instagram Post, nor Plaintiff's photograph were hosted in Newsweek's CMS or on Newsweek's servers.  *See* Gates Decl. Ex. L, E-S Tr. at 135:18–21, 135:25–136:2, 143:4–11; Rice Tr. at 146:16–20.

Plaintiff's Response to 33.     Objection, the Instagram Post and Plaintiff's photograph were made available on Newsweek's website through Newsweek's CMS. McGucken Decl. Ex. 4. And a copy was published on Newsweek's CMS. Id.; Defendant's Exhibit L.

34.      The Newsweek article included a photograph licensed from Getty Images of Death Valley, which was hosted in Newsweek's CMS.  *See* Gates Decl. Ex. K; Rice Tr. at 146:16–20.

Plaintiff's Response to 34:     No objection.

35.     The Getty Images photograph appeared as the lead image in social media posts for the article, such as on Facebook.  *See* Gates Decl. Ex. N.

Plaintiff's Response to 35:     Objection, "lead image" is vague. Additionally, the Getty Image was "a 2017 photograph of Death Valley National Park (the '2017 Photograph') [] use[d] as a source of comparison to the lake Plaintiff discovered". *See* Newsweek's Motion to Dismiss, Dkt. #21, p. 11.

36.     Ultimately, the article did not generate much interest, receiving only 5,427 page views, amounting to nominal advertising revenue for the article.  *See* Gates Decl. Ex. O; E-S Tr. at 166:21–168:15.

Plaintiff's Response to 36.     Objection, the relative failure of the infringing Article was not the fault of McGucken and was more likely the result of Newsweek publishing an article comprised of material it had copied from third-party sites. *See* McGucken Decl. Ex. 4.

37.     Plaintiff filed this action in October 2019.  Dkt. No. 1.

Plaintiff's Response to 37:     No objection.

38.     Plaintiff amended his complaint on January 24, 2020.  Dkt. No. 17.

Plaintiff's Response to 38.     No objection.

39.     Newsweek moved to dismiss.  Dkt. Nos. 20–22.

Plaintiff's Response to 39.     No objection.

40.     The Court granted Newsweek's motion to dismiss in part and dismissed

Plaintiff's secondary liability claim for vicarious and/or contributory copyright infringement.

Dkt. No. 35.

Plaintiff's Response to 40.     No objection.

41.     Newsweek filed its answer on November 9, 2020, in which it asserted numerous

affirmative defenses including non-actionable infringement by virtue of embedding, license

(whether express or implied), fair use, and innocent and non-willful infringement.  Dkt. No. 42

Plaintiff's Response to 41.     No objection.


                                        Respectfully submitted,


Date: July 9, 2021                 By: */s/ Scott Alan Burroughs*
                                        Scott Alan Burroughs, Esq.
                                        Laura M. Zaharia, Esq.
                                        DONIGER / BURROUGHS
                                        231 Norman Avenue, Suite 413
                                        Brooklyn, New York 11222
                                        (310) 590 – 1820
                                        scott@donigerlawfirm.com
                                        Attorneys for Plaintiff