UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ELLIOT MCGUCKEN, | Case No: 1:19-cv-09617 (KPF) |
| *Plaintiff,* | |
| v. | |
| NEWSWEEK, LLC, | |
| *Defendant.* | |

**DEFENDANT NEWSWEEK DIGITAL LLC'S REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT**

Nancy E. Wolff
Sara Gates
COWAN, DEBAETS, ABRAHAMS
& SHEPPARD LLP
41 Madison Avenue, 38th Floor
New York, New York 10010
Tel.: (212) 974-7474
Fax: (212) 974-8474
nwolff@cdas.com
sgates@cdas.com

*Attorneys for Defendant
Newsweek Digital LLC*

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ...............................................................................................................................2

      I.      NEWSWEEK DID NOT INFRINGE PLAINTIFF'S DISPLAY
             OR DERIVATIVE RIGHTS UNDER THE COPYRIGHT ACT ..........................2

             A.      Newsweek Did Not Violate the Display Right .............................................2

             B.      Newsweek Did Not Create a Derivative Work.............................................8

      II.     NEWSWEEK HAD A LICENSE TO EMBED THE INSTAGRAM POST ..........9

             A.      The Post-Filing Statement of an Unidentified
                     Facebook Spokesperson Is Hearsay and
                     Should Not Be Considered by This Court ....................................................9

             B.      Plaintiff's Citations to Covenants in Instagram's Terms
                     Do Not Rebut the Existence of a License to Newsweek ..........................10

              C.      Newsweek's Use of the Embed Code Is Not
                     Outside the Scope of the License by Instagram.........................................12

              D.      The Court May Also Find an Implied License ..........................................13

      III.    NEWSWEEK'S USE OF THE INSTAGRAM POST WAS FAIR USE .............15

      IV.    PLAINTIFF HAS NOT ESTABLISHED WILLFUL INFRINGEMENT............19

CONCLUSION...........................................................................................................................20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Broad. Companies, Inc. v. Aereo, Inc.*,
   573 U.S. 431 (2014)...................................................................................................4–5

*Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*,
   992 F.3d 99 (2d Cir. 2021)............................................................................................16

*Associated Press v. Meltwater U.S. Holdings, Inc.*,
   931 F. Supp. 2d 537 (S.D.N.Y. 2013) ...........................................................................3

*Atari Games Corp. v. Nintendo of Am. Inc.*,
   975 F.2d 832 (Fed. Cir. 1992)........................................................................................6

*Authors Guild v. Google, Inc.*,
   804 F.3d 202 (2d Cir. 2015)............................................................................................8

*Blanch v. Koons*,
   467 F.3d 244 (2d Cir. 2006)..........................................................................................16

*Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*,
   769 F.2d 919 (2d Cir. 1985)..........................................................................................10

*BWP Media USA, Inc. v. Gossip Cop Media, LLC*,
   87 F. Supp. 3d 499 (S.D.N.Y. 2015) ............................................................................15

*BWP Media USA Inc. v. Polyvore, Inc.*,
   922 F.3d 42 (2d Cir. 2019)..........................................................................................5, 8

*Campbell v. Acuff-Rose Music, Inc.*,
   510 U.S. 569 (1994)................................................................................................17, 19

*Cont'l Indus. Grp., Inc. v. Altunkilic*,
   No. 14-CV-790 (AT) (JLC), 2020 WL 3884312 (S.D.N.Y. July 1, 2020)...........................10

*Flo & Eddie, Inc. v. Sirius XM Radio Inc.*,
   80 F. Supp. 3d 535 (S.D.N.Y. 2015) ............................................................................14

*Fogerty v. Fantasy, Inc.*,
   510 U.S. 517 (1994)......................................................................................................19

*Goldman v. Breitbart News Network, LLC*,
   302 F. Supp. 3d 585 (S.D.N.Y. 2018) ...........................................................................3

*Google LLC v. Oracle Am., Inc.*,
   141 S. Ct. 1183 (2021) .................................................................................................17, 19

*Grady v. Iacullo*,
   No. 13-CV-00624 (RM) (KMT), 2016 WL 1559134 (D. Colo. Apr. 18, 2016) ......................4

*Graham v. James*,
   144 F.3d 229 (2d Cir. 1998).........................................................................................11

*Leader's Inst., LLC v. Jackson*,
   No. 3:14-CV-3572-B, 2017 WL 5629514 (N.D. Tex. Nov. 22, 2017)....................................5

*Live Face on Web, LLC v. Biblio Holdings LLC*,
   No. 15-CV-4848 (NRB), 2016 WL 4766344 (S.D.N.Y. Sept. 13, 2016)................................4

*Marano v. Metro. Museum of Art*,
   844 F. App'x 436 (2d Cir. 2021) .................................................................................17–18

*Maraschiello v. City of Buffalo Police Dep't*,
   709 F.3d 87 (2d Cir. 2013)..............................................................................................9

*Matthew Bender & Co. v. W. Pub. Co.*,
   158 F.3d 693 (2d Cir. 1998)...........................................................................................6

*McGucken v. Newsweek LLC*,
   464 F. Supp. 3d 594 (S.D.N.Y. 2020) ...............................................................................9

*N. Jersey Media Grp. Inc. v. Pirro*,
   74 F. Supp. 3d 605 (S.D.N.Y. 2015) ...............................................................................18

*Nakada + Assocs., Inc. v. City of El Monte*,
   No. EDCV 16-1467 (GW) (SPx), 2017 WL 2469977 (C.D. Cal. June 2, 2017)....................4

*New York Times Co. v. Tasini*,
   533 U.S. 483 (2001).........................................................................................................4

*PaySys Int'l, Inc. v. Atos Se, Worldline SA, Atos IT Servs. Ltd.*,
   226 F. Supp. 3d 206 (S.D.N.Y. 2016) .............................................................................11

*Perfect 10, Inc. v. Amazon.com, Inc.*,
   508 F.3d 1146 (9th Cir. 2007) .........................................................................................3

*Sands v. What's Trending, Inc.*,
   No. 20-CIV-2735 (GBD) (KHP), 2021 WL 694382 (S.D.N.Y. Feb. 23, 2021)....................19

*Sinclair v. Ziff Davis, LLC*,
    No. 18-CV-790 (KMW), 2020 WL 3450136 (S.D.N.Y. June 24, 2020) ...............................13

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
    464 U.S. 417 (1984).........................................................................................................16

*Totally Her Media, LLC v. BWP Media USA, Inc.*,
    No. 13-CV-08379 (PLAx), 2015 WL 12659912 (C.D. Cal. Mar. 24, 2015)...........................4

*Wood v. Observer Holdings*,
    No. 20 CIV. 07878 (LLS), 2021 WL 2874100 (S.D.N.Y. July 8, 2021)..........................17, 19

**Statutes & Rules**

17 U.S.C. § 101 ...................................................................................................................8

Fed. R. Evid. 801 ...............................................................................................................10

Fed. R. Evid. 807 ...............................................................................................................10

**Legislative History**

H.R. Rep. 94-1476 (1975)..................................................................................................6, 8

S. Rep. 94-473 (1975) ..........................................................................................................6

**Other Sources**

Defendants' Amended Counterclaims Against Plaintiffs,
    *Leader's Inst., LLC v. Jackson*, Case No. 3:14-cv-03572 (Apr. 3, 2017), ECF No. 168 ..........5

Motion to Dismiss, *Hunley v. Instagram, LLC*,
    No. 3:21-cv-03778 (N.D. Cal. July 16, 2021), ECF No. 16 .............................................2–3, 7

U.S. Copyright Office, *The Making Available Right in the United States*
    (Feb. 2016),
    https://www.copyright.gov/docs/making_available/making-available-right.pdf .....................7

Newsweek respectfully submits this reply memorandum of law in further support of its cross-motion, pursuant to Fed. R. Civ. P. 56, for summary judgment against Plaintiff.[1]

## PRELIMINARY STATEMENT

Plaintiff's opposition to Newsweek's cross-motion (the "Opposition" or "Opp.") is rife with mischaracterizations and insincere readings of the text of the Copyright Act and case law. Plaintiff tries to mislead the Court with his argument that use of embed code is an unauthorized display, but this position—which Instagram also opposes—hinges on a fundamental misunderstanding of how embedding works. When a user clicks a link for a digital Newsweek article, the user's computer requests the webpage, and Newsweek's servers respond by providing an HTML file for that article. However, the HTML file may instruct the webpage to incorporate content that must be fetched separately, such as from another server controlled by a different company. If the article references content from Instagram, for example, a unique embed code generated by Instagram is included within the HTML instructions, which then directs the user's browser to retrieve the content from Instagram's servers. The embed code causes the user's browser to load a separate Instagram webpage in a window within Newsweek's webpage where readers view the Instagram content from Instagram's servers. The use of embed code, which is not a "copy" capable of containing a copyrighted work, is not a public display but merely instructions on how to find the content, the same way it would not be a public display to provide someone with directions for how to see an artwork by Marc Chagall on display on the walls of the Metropolitan Museum of Art. In a last-ditch effort, Plaintiff argues that Newsweek violated his right to create derivative works, even though Plaintiff readily admits that Newsweek's use was "identical" and incapable of being derivative.

---

[1] Unless otherwise indicated, capitalized terms shall bear the same meaning ascribed to them in Newsweek's prior brief. *See* Dkt. No. 65 ("Newsweek Brief" or "News Br.").

Separate and apart from the display right, there is also ample basis for this Court to find that Instagram granted Newsweek a license to embed the Instagram Post, either through the license for its "Platform," which is broadly defined to include APIs, code, and content, or through its delivery of the unique embed code upon user request, and its demonstrated intent to make public Instagram posts widely available for sharing on other webpages through embedding. The Court may also find that Newsweek's use of the embed code was fair, as a matter of law, given that Plaintiff was the source or originator of the news, and Newsweek's use serves several public benefits by enriching the general public through its access and by providing news readers, who value truthfulness and transparency, with the direct source of the news.  For these reasons, the Court should grant summary judgment to Newsweek.

## **ARGUMENT**

## I.    NEWSWEEK DID NOT INFRINGE PLAINTIFF'S DISPLAY     OR DERIVATIVE RIGHTS UNDER THE COPYRIGHT ACT

### A.    Newsweek Did Not Violate the Display Right

In opposing Newsweek's cross-motion, Plaintiff takes aim at *Perfect 10*—the only appellate court decision on the server test.  Plaintiff would have this Court believe that the server test, which was adopted more than a decade ago in 2007, is not good law, but this is a fallacy. Though some district courts have scrutinized its application under markedly different facts, no court has overruled the server test, and it remains the only appellate test concerning framing or embedding.  Newsweek was entitled to rely on the server test and use the embed tool that Instagram—a company based in the Ninth Circuit—has offered since 2013 and encouraged publishers to use.  As evident from Instagram's recent court filing, Instagram too has relied on the server test to allow third parties to embed Instagram posts on other web pages.  *See* Motion to Dismiss, *Hunley v. Instagram, LLC*, No. 3:21-cv-03778 (N.D. Cal. July 16, 2021), ECF No. 16.

Plaintiff's characterization of *Perfect 10* is incredibly disingenuous. *See* Opp. at 3.  *First*, Plaintiff focuses on only one part of the decision (which Newsweek has not relied upon) to argue that the instant case is different because it concerns a full-size image.  While the *Perfect 10* court found that Google's use of thumbnail images, which were stored on Google's servers, was a display, it reached the opposite conclusion for full-size images, which were stored on third-party servers.  *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1160 (9th Cir. 2007).  By focusing on the size and resolution of the images, Plaintiff completely overlooks this key distinction.[2] *Second*, Plaintiff places undue emphasis on the acts of the "user," cribbing a point from *Goldman*, even though the *Goldman* court tacitly acknowledged that the role of the user was not considered by the Ninth Circuit.  *See Goldman v. Breitbart News Network, LLC*, 302 F. Supp. 3d 585, 596 (S.D.N.Y. 2018).  *Third*, Plaintiff argues that Newsweek is not a search engine, but as even the *Goldman* court recognizes, the Ninth Circuit did not cabin its decision in the context of search engines.  *See Goldman*, 302 F. Supp. 3d at 595.  Google's operation of a search engine had nothing to do with the Ninth Circuit's conclusion, based on the text of the Copyright Act, that Google could be held liable for infringing content hosted on its servers but could *not* be held liable for content hosted elsewhere.  *See Perfect 10*, 508 F.3d at 1159–61.

Whether the result of blatant mischaracterizations or sloppy drafting, Plaintiff additionally claims that Newsweek "concedes" a point regarding the focus of *Perfect 10* by utterly misquoting a line from the Newsweek Brief regarding the Federal Circuit's reliance on only a portion of the *Perfect 10* decision in *APL Microscopic, LLC v. United States*.  *Compare* Opp. at 3–4, *with* News Br. at 9.  Plaintiff misrepresents this language to argue that the server test has never been applied outside the search engine context.  This statement is wholly

---

[2] Plaintiff's citation to *Associated Press v. Meltwater U.S. Holdings, Inc.*, 931 F. Supp. 2d 537 (S.D.N.Y. 2013) is inapposite as the court was discussing *Perfect 10*'s holding on fair use.

inaccurate, as numerous courts have considered the server test outside this context.  *See, e.g.*, *Nakada + Assocs., Inc. v. City of El Monte*, No. EDCV 16-1467 (GW) (SPx), 2017 WL 2469977, at \*4 (C.D. Cal. June 2, 2017) (holding website's linking to videos hosted elsewhere does not violate display right); *Live Face on Web, LLC v. Biblio Holdings LLC*, No. 15-CV-4848 (NRB), 2016 WL 4766344, at \*4–5 (S.D.N.Y. Sept. 13, 2016) (acknowledging that *Perfect 10*'s reasoning can apply to website operator); *Grady v. Iacullo*, No. 13-CV-00624 (RM) (KMT), 2016 WL 1559134, at \*6–7 (D. Colo. Apr. 18, 2016) (applying *Perfect 10*'s holding to individual defendant); *Totally Her Media, LLC v. BWP Media USA, Inc.*, No. 13-CV-08379 (PLAx), 2015 WL 12659912, at \*1, \*11 (C.D. Cal. Mar. 24, 2015) (finding website's linking to photos stored on third-party sites precluded claim for direct infringement claim).

To temper the weight of the server test, Plaintiff also claims that Newsweek's position is irreconcilable with *Aereo*'s explanation that the Copyright Act is not concerned with the "behind-the-scenes way" that content is delivered (Opp. at 2), but this is a flawed reading.[3]  The factual and legal issues before the Court in *Aereo* were strikingly different, as *Aereo* involved a system of thousands of miniature antennas that captured and stored broadcast TV signals and allowed subscribers to view the signals over the Internet.  *See Am. Broad. Companies, Inc. v. Aereo, Inc.*, 573 U.S. 431, 436–37 (2014).  Notably, the content was saved on Aereo's hard drive, not a third-party server such as Instagram's servers, and Aereo itself, not a third party like Instagram, was responsible for the transmission of the copies to its users.  *Id.* at 436, 444.  On those dissimilar facts, the court handed down a "limited holding" cabined to the specific

---

[3] Plaintiff's reading of *Tasini* is likewise inaccurate, as the Court stated that it "focus[es] on the Articles as presented to, and perceptible by, the user of the Databases," in determining whether articles were reproduced and distributed "as part of" a "revision" of collective works, as permitted under 17 U.S.C. § 201(c)—not in determining whether a work is infringed, as Plaintiff asserts.  *See New York Times Co. v. Tasini*, 533 U.S. 483, 499 (2001).

technology at issue before the court, declaiming any application of the decision to different kinds of technologies. *Id.* at 449; *see also BWP Media USA Inc. v. Polyvore, Inc.*, 922 F.3d 42, 49 (2d Cir. 2019) (Walker, J., concurring) ("[I]t is plain that *Aereo* . . . is confined to the discrete area of television rebroadcasting . . . ."). Plaintiff's attempt to stretch *Aereo*—which furthermore concerned the performance right—beyond the limitations of its holding fails.

Plaintiff's continued reliance on *Leader's Institute*, a case in the Northern District of Texas is also misplaced. Plaintiff claims that "other courts have noted that *Perfect 10* is limited to search results returning third-party images," (Opp. at 4), citing *Leader's Institute*, but the court does not state this. *See Leader's Inst., LLC v. Jackson*, No. 3:14-CV-3572-B, 2017 WL 5629514, at *11 (N.D. Tex. Nov. 22, 2017). Rather, the court found that *Perfect 10*'s reasoning did not apply to the particular facts because plaintiffs did not merely provide a link to access another website displaying an image, as Google did, but showed the *entirety* of a copyrighted website under plaintiffs' domain names. *See id.* at *3, *10–11. Essentially, plaintiffs scraped content and data from the defendants' website and published it under domain names registered by plaintiffs. Defendants' Amended Counterclaims Against Plaintiffs ¶¶ 50–51, *Leader's Inst., LLC v. Jackson*, Case No. 3:14-cv-03572 (Apr. 3, 2017), ECF No. 168. This is vastly different from the type of embedding or framing at issue in either this case or in *Perfect 10*.

Plaintiff's obvious misconstructions of the text of the Copyright Act and circular arguments also fail to support his position. While Plaintiff recognizes that the Court must consider all of the relevant statutory definitions in their entireties, in construing the definition of "display," he fails to duly consider the definition of "copies," which carries critical importance in the analysis of whether Newsweek violated the display right or only provided HTML directions. Plaintiff makes the nonsensical argument that a material object does not refer to a tangible or

physical object, even though Congress clearly envisioned that the term concerns a "tangible object." *See* S. Rep. 94-473, at 52 (1975); H.R. Rep. 94-1476, at 53 (1975).  Plaintiff also spends considerable effort arguing a non-issue—whether the photograph is "fixed"—when the inquiry is whether the *embed code* is a "copy" or whether it is merely instructions to where the copy is located (*i.e.*, Instagram's servers).  Plaintiff only addresses whether the embed code meets the statutory definitions in a footnote, indicating what little weight Plaintiff gives to a critical question in this case.  Opp. at 7 n.1.  Yet, even Plaintiff's minimal argument on this point is unsound, as Plaintiff relies only on an inapposite Federal Circuit case regarding reverse engineering software code from a computer chip, which did not address whether a copyrighted work can be fixed in embed code.  *See Atari Games Corp. v. Nintendo of Am. Inc.*, 975 F.2d 832, 844 (Fed. Cir. 1992).  Moreover, contrary to Plaintiff's assertion, *Matthew Bender & Co. v. West Publishing Co.*, actually lends support to Newsweek's position as it elucidates the fixation requirement within the definition of "copies," pointing out that it includes "reproductions of copyrighted works contained on media such as floppy disks, hard drives, and magnetic tapes." 158 F.3d 693, 703 (2d Cir. 1998).  While the Second Circuit was considering CD-ROM discs, it considered a work to be embodied in a material object, such as a disk, hard drive, or tape, where it is "contained" or "stored."  *Id.*  Embed code is hardly analogous to a disk or a hard drive, as a copyrighted work cannot be *stored* in lines of code, the only purpose of which is to point to the location the work.  The use of embed code to direct readers' Internet browsers to Instagram's servers is more like providing someone with directions to view a photograph in a museum.  The person would still need to go to the museum to view the work.

Additionally, Plaintiff focuses too heavily on the "any device or process" language within the definitions of "display" and "publicly," and does not identify any credible support for his

argument regarding the breadth of the language.  His only citation is to a Ninth Circuit case discussing the plaintiff's "make available for display" theory, which the court rejects, relying upon a Copyright Office report that analyzes whether the "making available right" set out in the WIPO Internet Treaties is covered by U.S. copyright law.  *See* Opp. at 2 (citing *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 736 (9th Cir. 2019)).  As the Copyright Office recognizes, the display right "protects against the unauthorized **uploading** of a copyrighted image for display to the public online."  U.S. Copyright Office, *The Making Available Right in the United States* at 47–49 (Feb. 2016), https://www.copyright.gov/docs/making_available/making-available-right.pdf (emphasis added).  The report does not address the breadth of "any device or process" but does acknowledge that the server test may bar infringement claims.  *See id.*

Critically, Plaintiff also fails to rebut the argument that Newsweek did not publicly display the Instagram Post because Newsweek did not transmit it.  Plaintiff merely makes the conclusory assertion that Newsweek transmitted the Instagram Post but does not cite any support for his position, likely because it is apparent, based on how embedding works, that Instagram displayed the Instagram Post.  Opp. at 7.  As Instagram explained in its recent court filing:

> Instagram's embed code links a user's browser to content on Instagram's servers the same way Google's image search linked a user's browser to content on third-party servers. . . . [T]hird-party websites like Buzzfeed and Time deliver HTML instructions from their servers to the user's browser, the user's browser fetches the Instagram post from Instagram's server, then the user's browser generates the webpage on the user's screen for viewing.

Motion to Dismiss at 9, No. 3:21-cv-03778, ECF No. 16.  As a result, Instagram notes, "the only possible direct infringer with respect to copyrighted content contained in an embedded post would be Instagram because its servers host and transmit the accused content."  *Id.* at 9 n.4.  This conclusion is in line with courts' acknowledgement that volitional conduct is a requirement for direct infringement liability.  *See BWP Media USA Inc. v. Polyvore, Inc.*, 922 F.3d at 49, 62

(Walker, J. & Newman, J., concurring) (citing cases).

Finally, Plaintiff attempts to mislead the Court by arguing that Newsweek witnesses confirmed that Newsweek violated the display right by answering questions, using their own definitions of "display," completely separate and unmoored from the text of the Copyright Act. Opp. at 8; Rice Tr. 135:3–15; E-S Tr. at 15:2–4.  These answers do not support a legal conclusion regarding the construction of the Copyright Act.

**B.     Newsweek Did Not Create a Derivative Work**

Plaintiff also, for the first time, raises the absurd argument that the Newsweek article qualifies as a derivative work, even though he readily admits that Newsweek used an "identical" or "verbatim" photograph.  *See* P. Mot. at 6, 19–20; Dkt. No. 56 ¶ 7; Opp. at 3.  The Copyright Act specifies that a derivative work must contain "editorial revisions, annotations, elaborations, or other modifications . . . ."  17 U.S.C. § 101; *see also* H.R. Rep. 94-1476, at 57 (discussing how "compilations" and "derivative works" represent different concepts, and a derivative work "requires a process of recasting, transforming, or adapting one or more preexisting works").  As the Second Circuit recognized, this definition "strongly implies" that derivative works:

> re-present the protected aspects of the original work, *i.e.*, its expressive content, converted into an altered form, such as the conversion of a novel into a film, the translation of a writing into a different language, the reproduction of a painting in the form of a poster or post card, recreation of a cartoon character in the form of a three-dimensional plush toy, adaptation of a musical composition for different instruments, or other similar conversions.

*Authors Guild v. Google, Inc.*, 804 F.3d 202, 225 (2d Cir. 2015).  Plaintiff has not identified any conversions or alterations of the Instagram Post that would implicate his derivative right, nor could he since Newsweek only copied the embed code, providing a window into Plaintiff's Instagram Post on Instagram.  *See* Opp. at 8–9.  Plaintiff cannot have it both ways and argue that Newsweek used an identical copy and also modified the photograph.  A finding of a violation of

8

Plaintiff's right to create derivative works in this instance would swallow the reproduction right. The Court should not be persuaded by Plaintiff's attempt to manufacture an additional violation.

## II.     NEWSWEEK HAD A LICENSE TO EMBED THE INSTAGRAM POST

As a threshold matter, Plaintiff does not dispute that he granted a license to Instagram. Plaintiff, however, asserts without support that it is the "law of the case" that Instagram's terms do not grant a sublicense to Newsweek, so the Court must not consider this issue now.  Opp. at 9. This is blatantly false.  As the Court previously noted, "it may be possible to read Instagram's various terms and policies to grant a sublicense to embedders . . . ."  *McGucken v. Newsweek LLC*, 464 F. Supp. 3d 594, 604 (S.D.N.Y. 2020).  The Court declined to do so on a motion to dismiss, citing its limited review and obligation to "draw all reasonable inferences in Plaintiff's favor."  *Id.* (internal citation omitted).  However, the Court is not barred from considering this issue now.  *See Maraschiello v. City of Buffalo Police Dep't*, 709 F.3d 87, 97 (2d Cir. 2013).

Contrary to Plaintiff's conclusory assertion, there is a wealth of evidence for the Court to consider in reference to this defense.  Plaintiff draws the unsubstantiated conclusion that because Newsweek has not offered any email correspondence with Instagram, there is no evidence of an express license.  But direct communications are hardly the only way to establish the existence of a license.  Given the specific circumstances, including how Instagram publicly communicates with publishers and broadly authorizes them to use its platform, and the way its platform and embedding works, one would not expect Instagram to *directly* correspond with publishers.

### A.     The Post-Filing Statement of an Unidentified Facebook Spokesperson Is Hearsay and Should Not Be Considered by This Court

Plaintiff relies heavily on a statement of an unidentified Facebook spokesperson, quoted in a June 4, 2020 post on arstechnica.com, well after this litigation commenced.  But this statement is hearsay, as it is being offered by Plaintiff for the truth of the matter, and is not

admissible here as Plaintiff has made no showing that admissible evidence will be available at trial.  *See* Fed. R. Evid. 801(c); *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 924 (2d Cir. 1985).  Plaintiff argues, for the first time, that the residual exception applies because the *Ars Technica* post satisfies the requirements.  Opp. at 10–11.  But the hearsay upon which Plaintiff seeks to rely is not the post itself, but a quoted statement attributed to an unidentified "Facebook company spokesperson."  *See* Burroughs Decl. Ex. 8.

Under the current rule, as amended in 2019—rather than the outdated standard that Plaintiff applies—Plaintiff has not shown that this statement is supported by sufficient guarantees of trustworthiness; the statement was not submitted under oath, subject to cross-examination and penalty of perjury, and the witness is not named, so it is impossible to verify the identity, character, or motivation of the witness, including whether the person is authorized to speak on behalf of Facebook.  *See* Fed. R. Evid. 807; *cf. Cont'l Indus. Grp., Inc. v. Altunkilic*, No. 14-CV-790 (AT) (JLC), 2020 WL 3884312, at *6 & n.7 (S.D.N.Y. July 1, 2020) (finding statements in affidavit, procured under oath and subject to prosecution for perjury, were properly considered under the residual exception).  Additionally, Plaintiff has not shown that he, as the proponent of the statement, has made any reasonable efforts to obtain corroborating evidence from Instagram, such as seeking information from Instagram during discovery.  *See* Opp. at 10–12.  As such, it would be improper for the Court to consider the statement.

B. **Plaintiff's Citations to Covenants in Instagram's Terms Do Not Rebut the Existence of a License to Newsweek**

Plaintiff argues that no license was granted by Instagram because Newsweek was required to obtain express permission to use the photograph.  Opp. at 13.  But, as detailed in the Newsweek Brief, the six terms and "guidance" in Instagram's Community Guidelines that Plaintiff relies upon are not *conditions* of a copyright license because users like Newsweek are

not obliged to perform or meet these conditions before the license to the Platform is granted. *See* News Br. at 16–18. Put differently, the grant of the license to the Platform is not conditioned upon satisfaction of any of the general terms cited by Plaintiff. *Graham v. James*, 144 F.3d 229, 236–27 (2d Cir. 1998) (citing 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 10.15[A], at 10–120). Breach of a covenant would only give rise to a breach of contract claim by Instagram, not a claim for copyright infringement by Plaintiff. *See id.* Plaintiff's attempt to avoid this eventuality is wholly insufficient, as he merely proclaims that "the language cited are conditions" without support for this unwarranted conclusion. Opp. at 14.[4]

In any event, Newsweek did not breach any of the covenants cited by Plaintiff. *First*, Plaintiff did not place any requirements or restrictions on the use of his photograph, such as in the caption of his Instagram Post, and permitted embedding through his public Instagram account. *See* Gates Decl. Ex. L at NEWS000005; McGucken Tr. at 89:11–14; Dkt. No. 72 ¶¶ 11, 16. *Second*, Newsweek used the embed code in an editorial article, not an ad, which Plaintiff acknowledges when he describes Newsweek's use of his Instagram Post "alongside" advertisements. *See* Gates Decl. Ex. K; Rice Tr. at 33:25, 172:20–173:6; P. Mot. at 22–23; Opp. at 28. *Third*, Newsweek used the embed code with the reasonable belief that it was not in violation of any intellectual property rights. *See* E-S Tr. at 32:12–33:4, 34:8–18; Rice Tr. at 128:4–8, 193:9–15, 208:11–24. *Fourth*, the two representation and warranty provisions that Plaintiff cites refer to the operations of third-party apps and websites, not use of the Instagram Platform. For example, section D.9 refers to content on third-party websites, referring to sharing

---

[4] *PaySys International, Inc. v. Atos Se, Worldline SA, Atos IT Services Ltd.*, 226 F. Supp. 3d 206 (S.D.N.Y. 2016), does not help his argument, and in fact, supports the finding that the provisions cited by Plaintiffs constitute contractual covenants. There, the court considered whether a notice and order provision in an agreement that permitted software licensing constituted a condition or a covenant, finding that there was no triable issue as to the nature of the provision since it plainly constituted a covenant, which comported with the presumption against conditions. *Id.* at 226.

content "from your app or website on or through Instagram," not vice versa.  Gates Decl. Ex. S at NEWS000160.  Notably, these provisions do not use the defined term "User Content."  *See id.*  As such, they do not concern Newsweek's use of the Instagram Platform, including the embed code.  *Fifth*, the license referred to in section D.13 is a separate license granted by *users* to Instagram, therefore it is irrelevant to Plaintiff's argument regarding the license granted by Instagram to Newsweek.  Gates Decl. Ex. S at NEWS000161.  Finally, the section in the Community Guidelines refers to "post[ing] on Instagram," as Plaintiff did, not embedding an Instagram Post, as Newsweek did, so it is likewise irrelevant.  *See* Burroughs Decl. Ex. 11.

### C.    Newsweek's Use of the Embed Code Is Not Outside the Scope of the License by Instagram

To the extent that Plaintiff argues that Newsweek's use of the embed code is not within the scope of the license by Instagram, this argument is unsupported by the language of the Platform Policy.  Instagram's license is explicit.  The Platform Policy states:

> Licensed Uses and Restrictions: The Instagram Platform is owned by Instagram and is licensed to you on a worldwide (except as limited below), non-exclusive, non-sublicenseable basis in accordance with these terms. Your license to the Instagram Platform continues until it is terminated by either party. Please note that User Content is owned by users and not by Instagram. All rights not expressly granted to you are reserved by Instagram.

Gates Decl. Ex. S at NEWS000160.  To understand this license, it is necessary to also read it in conjunction with the Platform Policy's definition of "Platform," which is broadly defined to include "APIs, SDKs, plugins, code, specifications, documentation, technology, and services (such as content) that enable others, including . . . website operators, to retrieve data from Instagram . . . ."  *Id.* at NEWS000157.  As evident from these provisions, the broad license granted to users includes Instagram's embed feature and code.  The license does not include any conditions or qualifications on the use of the embed code.  And while the license points out that

Instagram does not *own* "User Content" (which makes sense), it does not exclude User Content from the license or place any conditions on the use of User Content within the Platform.

Plaintiff makes the conclusory argument that the scope of the license included "only works for which the putative licensee obtained the artist's consent," but does not identify any *condition* within the license that requires this. Opp. at 14. Plaintiff's focus on contractual *covenants* in Instagram's terms does not support his claim for infringement. Additionally, Plaintiff's continued reliance on *Ward*, based on the *Sinclair* court's citation to it on a motion to dismiss, is of no import. *See* Opp. at 16. Notably, the *Sinclair* court was focused on one line in the preamble of the Platform Policy and does not appear to have considered the license provision, cited in full above. *See Sinclair v. Ziff Davis, LLC*, No. 18-CV-790 (KMW), 2020 WL 3450136, at *1 (S.D.N.Y. June 24, 2020). Given the court's obligations on a Rule 12(b)(6) motion, the *Sinclair* court found that it could not dismiss the case at that stage. *See id.* at *1–2.

### D. The Court May Also Find an Implied License

To rebut Newsweek's arguments that an implied license exists, Plaintiff contends that he did not create the photograph at Newsweek's request. Opp. at 17. But the implied license at issue is between Instagram and Newsweek, not Plaintiff, so this assertion (which is unsupported) is irrelevant. Plaintiff then changes positions and contends that there is no evidence that Instagram created any code to deliver to Newsweek, even though this is unequivocally how Instagram's embed feature works. *Id.* As shown in screenshots, users interested in embedding a post from a public profile must click on the settings on a particular photograph and click on the "Embed" option to request the code from Instagram.[5] *See* Gates Decl. Ex. J. Instagram then

---

[5] Plaintiff takes issue with the nature of Newsweek's request, claiming that clicking a button does not qualify as a request, without citing any support for this position. Opp. at 17. Plaintiff's argument is implausible, especially in the online environment where requests, licenses, and

provides an embed code for the express purpose of allowing the requesting user to "Copy Embed Code," and states that by using the embed, the user agrees to Instagram's Platform Policy. *See id.* The requesting user may then "copy" the embed code using Instagram's button. *See id.*

Contrary to Plaintiff's overtures, Newsweek is not arguing that Instagram merely acquiesced to Newsweek's use of the embed code. *See* Opp. at 17. This is not a situation, like *Flo & Eddie, Inc. v. Sirius XM Radio Inc.*,[6] where Newsweek undertook its own technical measures to capture the embed code, used the embed code on its website since March 2019, and Instagram failed to object to it. Instagram's offering of an embed code for public posts is a critical component of its functionality, and Instagram announced the service and encouraged publishers to use it. Gates Decl. Ex. D at 7–10, S, T, U. If Instagram intended for publishers to obtain *express* permission from the original poster in every instance, it would have required this as an aspect of its functionality. Instead, Instagram provided the embed code for public posts and allowed publishers like Newsweek to use it without any explicit warnings or disclaimers.

Plaintiff curiously argues that industry standard is not a defense to copyright infringement, but Newsweek has not asserted that it is. *Compare* Opp. at 18–19, 28, *with* News Br. at 21–22. Newsweek only cited the custom and practice in the media industry to request and use the embed code provided by Instagram as further evidence of the relevant course of conduct and Instagram's intention to grant an implied license to publishers like Newsweek. *See* News Br. at 21–22. Plaintiff's attempts to undercut this evidence are feeble. *First*, Plaintiff contends that Newsweek has not provided a list of all the media companies that use embedding (Opp. at 19), despite the relevant testimony of its witnesses, who both have rich experience in the media

---

purchases may be made with the click of a button.
[6] The Court found no implied license based on mere acquiescence where Sirius played a sound recording for years without objection by the artists. 80 F. Supp. 3d 535, 539 (S.D.N.Y. 2015).

industry, and the comprehensive report of Newsweek's rebuttal expert, who has held in-house counsel positions at Univision Communications, Inc., Gizmodo Media Group, LLC, First Look Media Works, and *The New Yorker*, *Forbes*, and *NBC*.   Gates Decl. Ex. D at 2–3 & App'x A. Plaintiff claims in a footnote that certain links in Ms. Oberlander's report are inoperative (Opp. at 19 n.3), but blatantly ignores the numerous examples she provided of specific articles that incorporate public post from Instagram through embedding.   *See* Gates Decl. Ex. D at 11 n.13. *Second*, Plaintiff argues that he has produced evidence that the industry standard is to seek permission; however, Plaintiff confuses the operative industry.  Opp. at 19.  Plaintiff's expert is a purported "photography industry expert," but the implied license at issue concerns a license between Instagram and a media company.  It is unclear then how Mr. Maddrey's testimony is at all relevant to the question at hand, as he does not have the expertise to opine on the media industry standard for publishers.  *See* Burroughs Decl. Ex. 15.

## III.   NEWSWEEK'S USE OF THE INSTAGRAM POST WAS FAIR USE

Plaintiff argues that because the Court did not grant Newsweek's motion to dismiss on fair use grounds, it should not do so at this stage, completely ignoring the fact that an entirely different standard applies.[7]  In his Opposition, Plaintiff adds little to his prior arguments.

**Purpose and Character**.   Plaintiff continues his refrain that Newsweek used the Instagram Post as an "illustrative aid," and merely dismisses the fact that Plaintiff was the source of the news, arguing that the article remains online.  Opp. at 21–23.  Yet the continued existence

---

[7] Plaintiff cites *BWP Media USA, Inc. v. Gossip Cop Media, LLC*, for the proposition that only two pieces of evidence need to be considered to decide fair use (Opp. at 21), but this is a blatant mischaracterization of the decision.   This Court in *BWP* noted that the Second Circuit has approvingly cited a Seventh Circuit decision on fair use, which determined that "in certain circumstances" a court may consider only the original work and allegedly infringing work on a Rule 12(b)(6) or Rule 12(c) motion.   87 F. Supp. 3d 499, 505 (S.D.N.Y. 2015) (citing *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012)).

of the article does not demonstrate that Plaintiff was not the *source* of the news.  As evident from a review of all the other news articles, Plaintiff was the origin of the news story.  Gates Decl. Ex. W.  Without his photographs and description of the natural phenomenon, there would have been no news to report in the first place.  *See id.*  Much like the other decisions involving Instagram embeds, Plaintiff chose to post on Instagram, and because he was the source of the news, his Instagram Post was the story.  *See* News Br. at 24.  Newsweek used the embed code to provide the HTML directions to Plaintiff's Instagram Post, evidencing a paradigmatic example of fair use.  *Cf. Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 478 (1984) (Blackmun, J., dissenting) (recognizing that the commonly recognized examples of fair use stated in the preamble "reflect[] a common theme: each is a *productive* use, resulting in some added benefit to the public beyond that produced by the first author's work").  Unlike *Goldman*, where the photograph appeared seamlessly in the webpage, Newsweek's use maintained all the Instagram markings to provide a window to the source of the news.  Consideration of this context is critical.  *See Blanch v. Koons*, 467 F.3d 244, 251 (2d Cir. 2006) ("As the words of section 107 indicate, the determination of fair use is an open-ended and context-sensitive inquiry.").

Plaintiff also argues that Newsweek did not directly comment on or criticize the photograph, but as the Second Circuit has recognized on numerous occasions, specific commentary on the original work is not necessary for a fair use finding.  *See Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 992 F.3d 99, 110 (2d Cir. 2021).  Newsweek's article included specific detail on Plaintiff's perception of the phenomenon that he captured, and he alone reported, and commentary from experts—which, as emails show, was the product of first-hand reporting—thereby adding additional meaning to the Instagram Post.  *See* Gates Decl. Ex. M.  Moreover, Plaintiff does not dispute that he captured and posted the photograph for an

entirely different purpose: fine art photography. Rather, he contends that Newsweek's use was no different than *SFGate*'s. Opp. at 23. While *SFGate*'s use is hardly comparable as it used 30 of Plaintiff's photographs in a slideshow placed at the top of the story, the context of *SFGate*'s use is not at issue here. Gates Decl. Ex. W at MCGUCKEN000003.[8]  The relevant inquiry is whether Newsweek's use was for a further purpose or different character. *Google LLC v. Oracle Am., Inc.*, 141 S. Ct. 1183, 1202 (2021). As Plaintiff's stated purpose was for fine art, Newsweek's use of the Instagram Post because it was the source of the news supports a finding of fair use. *See* McGucken Tr. at 140:3–4, 145:9–10, 149:3–7, 152:16–17; E-S Tr. at 113:4–12; *see also Marano v. Metro. Museum of Art*, 844 F. App'x 436, 438 (2d Cir. 2021) (relying on the photographer's "stated purpose" in contrast to the defendant's purpose to find fair use).

Plaintiff contends that commercial use should weigh against Newsweek, by concluding that Newsweek used the Instagram Post to attract readers. Opp. at 24. But Plaintiff ignores the fact that the Instagram Post was not the lead image for the article (such as on social media)—it could not be because Newsweek only used the embed code—and was not even the first visual in the article. Gates Decl. Ex. K, N; Rice Tr. at 213:17–23. The commercial use inquiry is not so "binary" as to completely disregard the circumstances of the use. Opp. at 24; *see Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 585 (1994) (noting that the commercial character of a work and the weight of this consideration varies with the context). This factor favors fair use.

**Nature of the Work**. Plaintiff's declaration that his work is highly creative does not require the Court to rule against fair use. *See Marano*, 844 F. App'x at 439 (finding determination that the photograph was a creative work of art to be of limited usefulness).

---

[8] *SFGate*'s use is more similar to the Observer's use of 13 images to offer a peek inside Beyonce and Jay-Z's new house in *Wood v. Observer Holdings*, No. 20 CIV. 07878 (LLS), 2021 WL 2874100, at *1–2 (S.D.N.Y. July 8, 2021).

Although Plaintiff declares that he made creative choices, he does not argue that he created or staged the phenomenon.  *See* Opp. at 25.  No photographer could.  Plaintiff only captured a natural event before him, and then chose to make his work widely available online (including the ability to embed his work from his own website).  This factor tips in favor of fair use.  *See N. Jersey Media Grp. Inc. v. Pirro*, 74 F. Supp. 3d 605, 620 (S.D.N.Y. 2015) (finding photograph capturing an event to be informational even if it involved "great artistry").

**Amount Used**.  Plaintiff again argues that this factor must weigh against Newsweek, focusing only on the photograph, while ignoring the obvious differences between the underlying high-resolution photograph and the Instagram Post, which showed a cropped lower-resolution version and contained Instagram's markings and factual elements.  *See* Opp. at 26; News Br. at 29–30.  Plaintiff also tries to sidestep Newsweek's arguments regarding the necessity of its use by concluding that the Instagram Post was not the news.  Opp. at 26.  But this conclusion is unsupported.  *See supra* p. 15–17; News Br. at 28–30.  Additionally, Plaintiff's assertion that he licensed his photographs to *SFGate* and others does not affect the purpose and necessity of *Newsweek*'s use.  Opp. at 26.  Because Newsweek used the embed code to provide directions to the source, which provided a window into Instagram, this factor favors fair use.

**Market Effect**.  Plaintiff's hyperbolic arguments of market harm should not sway the Court to find this factor weighs in his favor.  Plaintiff's claim that Newsweek's use could "destroy" this market (Opp. at 27) is incredibly misleading as Plaintiff largely handed out his photographs of Death Valley for free and indicated that, as a fine art photographer, he is not interested in an editorial licensing market.  *See* McGucken Tr. at 25:21–26:5, 26:23–24, 27:7–19, 31:14–16, 32:11–13, 63:24–64:21, 84:19–25, 99:8–11, 108:2–4, 112:2–4, 123:11–13, 131:19–20, 137:3–5.  Plaintiff asks the Court to ignore these pertinent facts and instead adopt a broad

presumption of market harm.[9]   However, the presumption does not apply here because there is

no mere duplication of Plaintiff's fine art photography for purely commercial purposes.  *See*

News Br. at 30–32; *see also Campbell*, 510 U.S. at 591 (1994) ("No 'presumption' or inference

of market harm that might find support in *Sony* is applicable to a case involving something

*beyond* mere duplication for commercial purposes." (emphasis added)).  This is not a case in

which a defendant copied a plaintiff's high-resolution fine art photography in order to sell it.

As the Supreme Court recognized, courts "must take into account the public benefits the

copying will likely produce."  *Google*, 141 S. Ct. at 1206.  Contrary to Plaintiff's assertion,

Newsweek's use of the embed code, which provided a window into Plaintiff's Instagram

account, is very relevant.  Opp. at 27.  Plaintiff testified regarding the importance of sharing and

promoting his art, including through Instagram.  *See* McGucken Tr. at 56:3–14, 88:20–23.

Newsweek did not take a screenshot of Plaintiff's photograph but provided directions on how

readers can view Plaintiff's photography.  This does not only benefit Plaintiff, by drawing more

eyes to his Instagram account, but also serves important public benefits by enriching the public.

*See Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 527 (1994) ("[C]opyright law ultimately serves the

purpose of enriching the general public through access to creative works . . . .").  The public's

interest in truthful and transparent news reporting should also not be ignored, as Newsweek

directed its readers to the source of the news.  This factor also favors fair use.

## IV.   PLAINTIFF HAS NOT ESTABLISHED WILLFUL INFRINGEMENT

Finally, Plaintiff spends little effort in his Opposition on this point, even though it is his

burden to prove, relying primarily on conclusory arguments that Newsweek willfully disregarded

---

[9] Plaintiff's citations to *Wood* and *Sands* may both be distinguished because the decisions were on a motion to dismiss where the courts were obligated to accept the allegations in the pleadings as true.  *See Wood*, 2021 WL 2874100, at \*5; *Sands v. What's Trending, Inc.*, No. 20-CIV-2735 (GBD) (KHP), 2021 WL 694382, at \*4 (S.D.N.Y. Feb. 23, 2021).

Plaintiff's rights.  Opp. at 28.  Plaintiff alleges for the first time that Newsweek failed to maintain a Digital Millennium Copyright Act ("DMCA") agent but does not explain why this is relevant when Newsweek has not raised a DMCA defense.  *See* Opp. at 28; Dkt. No. 42.  In any event, as Ms. Rice testified, Newsweek has a process for responding to copyright notices.  *See* Rice Tr. at 60:1–17.  Additionally, Plaintiff argues that it is "problematic" that Newsweek did not have a written policy on embedding.  Opp. at 28.  Plaintiff equates this with "mere recklessness," citing an off-point Ninth Circuit case regarding fabric designs.  *Id.*  But Newsweek's decision to follow media industry standards and practices on embedding does not support willfulness.  *See* Rice Tr. at 78:16–24, 85:25–86:12, 87:5–10, 87:18–23, 89:15–24, 207:3–10.  Accordingly, Plaintiff has failed to carry his burden to demonstrate willfulness.

## CONCLUSION

For the reasons stated herein and in the Newsweek Brief, Newsweek respectfully requests that the Court deny Plaintiff's motion and grant Newsweek's cross-motion.

Respectfully Submitted,

Dated:  New York, New York
July 23, 2021

COWAN, DeBAETS, ABRAHAMS &
SHEPPARD LLP

By:    /s/ Nancy E. Wolff
Nancy E. Wolff
Sara Gates
41 Madison Avenue, 38th Floor
New York, New York 10010
Tel.: (212) 974-7474
Fax: (212) 974-8474
nwolff@cdas.com
sgates@cdas.com

*Attorneys for Defendant Newsweek
Digital LLC*

20

### CERTIFICATE OF SERVICE

I, Nancy E. Wolff, hereby certify that a true and correct complete copy of the foregoing Defendant Newsweek Digital LLC's Reply Memorandum of Law in Further Support of Its Cross-Motion for Summary Judgment has been served on all counsel of record via the Court's CM/ECF service.

    /s/ Nancy Wolff    
Nancy E. Wolff
